# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### BENTON DIVISION

| | | |
|---|---|---|
| Marion HealthCare, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No:  12-CV-00871-WDS-PMF |
| | ) | |
| Southern Illinois Healthcare, and | ) | Judge William D. Stiehl |
| Health Care Service Corporation, d/b/a | ) | |
| BlueCross and BlueShield of Illinois, | ) | Magistrate Judge Frazier |
| | ) | |
| Defendants. | ) | |

## HEALTH CARE SERVICE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Dated:  November 16, 2012

Helen E. Witt, P.C.
James H. Mutchnik, P.C.
Scott M. Edenfield
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Fax:  (312) 862-2200

*Attorneys for Defendant Health Care Service Corporation, a Mutual Legal Reserve Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTS ALLEGED ............................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.     THE COMPLAINT DOES NOT STATE ANY CLAIM AGAINST BCBSIL. ................ 4

     A.     Applicable Legal Standard....................................................................... 4

     B.     Plaintiff's Clayton Act Claims In Counts II (Exclusive Dealing), VII (Tying) And X (Price Discrimination) Of The Amended Complaint Should Be Dismissed With Prejudice Because The Clayton Act Does Not Apply To Services.................................................................................... 5

     C.     Count II Of The Amended Complaint Should Be Dismissed Because Plaintiff Has Failed To Adequately Plead A Relevant Market Or Substantial Foreclosure.............................................................................. 7

            1.     Exclusive dealing is not per se illegal and such claims are viewed with skepticism by the courts.................................................... 7

            2.     At least two of the required elements for an exclusive dealing claim are not sufficiently pled.................................................... 8

                  a.     The alleged relevant markets are deficient as a matter of law and cannot support Plaintiff's exclusive dealing claim............ 8

                  b.     Plaintiff's allegations of foreclosure are fatally flawed................. 9

     D.     Count VII Is Likewise Incurably Deficient. ........................................... 10

     E.     Plaintiff's Companion Claims Under The Illinois Antitrust Act Fail For The Same Reasons As Its Sherman Act Claims. ................................... 13

     F.     Count XI Fails To State A Tortious Interference Claim Under Illinois Law. ........................................................................................................ 13

II.     THE COURT SHOULD DECLINE TO EXERCISE PENDENT JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS. ......................................................... 16

CONCLUSION................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................. 4, 5, 9, 11

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
  603 F. Supp. 1077 (S.D. Ind. 1985) *aff'd*, 784 F.2d 1325 (7th Cir. 1986) .............................. 12

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
  784 F.2d 1325, 1340 (7th Cir. 1986) .................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................. 4, 5, 9, 10

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ............................................................ 5

*Compliance Mktg., Inc. v. Drugtest, Inc.*,
  No. 09-CV-01241-JLK, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ......................... 8

*Connaughton v. Gertz*,
  418 N.E.2d 858 (Ill. App. Ct. 1981) .................................................. 15

*Crawford v. Countrywide Home Loans, Inc.*,
  647 F.3d 642 (7th Cir. 2011) ............................................................ 5

*CTUnify, Inc. v. Nortel Networks, Inc.*,
  115 F. App'x 831 (6th Cir. 2004) ....................................................... 6

*Curt Bullock Builders, Inc. v. H.S.S. Development, Inc.*,
  586 N.E.2d 1284 (Ill. App. Ct. 1992) ................................................. 15

*D.E. Rogers Assocs., Inc. v. Gardner-Denver Co.*,
  718 F.2d 1431 (6th Cir. 1984) ......................................................... 12

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
  No. 88 C 0644, 1993 WL 338985 (N.D. Ill. Sept. 1, 1993), *modified on reconsideration*, No.
  88-0644, 1995 WL 12297 (N.D. Ill. Jan. 11, 1995), *aff'd*, 73 F.3d 756 (7th Cir. 1996) .... 12, 13

*E-One, Inc. v. Oshkosh Truck Corp.*,
  No. 06CV1391, 2006 WL 3320441 (N.D. Ill. Nov. 13, 2006) ............................. 13

*Ex parte Blue Cross and Blue Shield of Ala.*,
  773 So. 2d 475 (Ala. 2000) .......................................................... 15, 16

*Fellhauer v. City of Geneva*,
  568 N.E.2d 870 (Ill. 1991) ............................................................ 14

## <u>TABLE OF AUTHORITIES (CONT.)</u>

<u>Page(s)</u>

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Properties P'ship,*
    898 N.E.2d 1051 (Ill. App. Ct. 2007)................................................................................ 15

*FTC v. Lab. Corp. of Am.,*
    No. SACV 10-1873 AG MLGX, 2011 WL 3100372 (C.D. Cal. Mar. 11, 2011)....................... 9

*Gadda v. State Bar of Cal.,*
    511 F.3d 933 (9th Cir. 2007)............................................................................................ 5

*Goodloe v. Nat'l Wholesale Co.,*
    No. 03 C 7176, 2004 WL 1631728 (N.D. Ill. July 19, 2004) ................................................ 6

*Highland Capital, Inc. v. Franklin Nat'l Bank,*
    350 F.3d 558 (6th Cir. 2003)........................................................................................... 11

*Howell v. N. Cent. Coll.,*
    320 F. Supp. 2d 717 (N.D. Ill. 2004) ................................................................................ 5

*Ill. Tool Works Inc. v. Indep. Ink, Inc.,*
    547 U.S. 28 (2006) ............................................................................................... 11, 12

*Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc.,*
    283 F. Supp. 2d 579 (D.P.R. 2003) ........................................................................... 11, 12

*Little Rock Cardiology Clinic PA v. Baptist Health,*
    591 F.3d 591 (8th Cir. 2009)............................................................................................ 9

*Malaker v. Cincinnati Ins. Co.,*
    No. 09 C 1140, 2011 WL 1337095 (N.D. Ill. Apr. 7, 2011) ................................................ 5

*Midwest Gas Servs., Inc. v. Indiana Gas Co.,*
    317 F.3d 703 (7th Cir. 2003)............................................................................................ 1

*Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.,*
    676 S.E.2d 428 (Ga. Ct. App. 2009) ................................................................................ 15

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.,*
    485 F. Supp. 2d 387 (S.D.N.Y. 2007) ............................................................................... 12

*Quist v. Board of Trustees of Cmty. College Dist. No. 525,*
    629 N.E.2d 807 (Ill. App. Ct. 1994) ................................................................................ 14

*Reifert v. S. Cent. Wis. MLS Corp.,*
    450 F.3d 312 (7th Cir. 2006)..................................................................................... 11, 12

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.,*
    381 F.3d 717 (7th Cir. 2004)........................................................................................ 8, 9

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC,*
    532 F.3d 963 (9th Cir. 2008)........................................................................................... 12

## <u>TABLE OF AUTHORITIES (CONT.)</u>

<u>Page(s)</u>

*Roots P'ship v. Lands' End, Inc.,*
  965 F.2d 1411 (7th Cir. 1992)................................................................. 5

*Shavrnoch v. Clark Oil & Refining Corp.,*
  26 F.2d 291, 294 (6th Cir. 1984)........................................................... 12

*Sheridan v. Marathon Petroleum Co.,*
  530 F.3d 590 (7th Cir. 2008).................................................................. 13

*SmithKline Beecham Corp. v. Apotex Corp.,*
  383 F. Supp. 2d 686 (E.D. Pa. 2004) .................................................... 10

*State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.,*
  935 F.2d 1469 (7th Cir. 1991)........................................................... 11, 13

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.,*
  373 F.3d 57 (1st Cir. 2004) ........................................................ 7, 8, 9, 10

*Tampa Elec. Co. v. Nashville Coal Co.,*
  365 U.S. 320 (1961) ................................................................................. 8

*Tri-State Broad. Co. v. United Press Int'l Inc.,*
  369 F.2d 268 (5th Cir. 1966).................................................................... 7

*United States v. Grinnell Corp.,*
  384 U.S. 563 (1966) ............................................................................... 12

*Williams v. Shell Oil Co.,*
  18 F.3d 396 (7th Cir. 1994)............................................................... 15, 16

*Young v. Conn. Mut. Life Ins. Co.,*
  No. 90 C 254, 1990 WL 125496 (N.D. Ill. Aug. 17, 1990) .............. 14, 15

### <u>STATUTES</u>

15 U.S.C. § 13(a) ...................................................................................... 6

15 U.S.C. § 14........................................................................................... 6

28 U.S.C. § 1367(c)(3)............................................................................ 16

740 ILCS § 10/3(4) ................................................................................. 13

### <u>OTHER AUTHORITIES</u>

14 Phillip E. Areeda & Herbert Hovenkamp,
  *Antitrust Law* ¶ 2314 (3d ed. 2012)....................................................... 6

9 Phillip E. Areeda & Herbert Hovenkamp,
  *Antitrust Law* ¶ 1719b (3d ed. 2011)..................................................... 13

iv

## <u>INTRODUCTION</u>

Rather than respond to BlueCross and BlueShield of Illinois' ("BCBSIL") motion to dismiss, Marion HealthCare, LLC ("Plaintiff" or "Marion") withdrew its initial Complaint and attempted to replead its claims against BCBSIL.  But redressing its original allegations can't save its claims.  Plaintiff's claims against BCBSIL remain fatally deficient and should be dismissed with prejudice.

Plaintiff, a surgical outpatient service provider that opened for business in 2004, believes it would be getting more patients, expanding more rapidly, and earning more profits if it were a BCBSIL "in-network" provider.[1]  Marion blames its failure to do better financially on an alleged agreement with a local provider (Southern Illinois Healthcare ("SIH")) to be the exclusive in-network provider of inpatient hospital and outpatient surgical services to BCBSIL plan members. On that basis, Marion claims that BCBSIL somehow:  (a) violated Section 1 of the Sherman Act, Section 3 of the Clayton Act and the Illinois Antitrust Act by supposedly foreclosing Marion from the outpatient surgical services market, while ignoring some of the largest payors — Medicare and Medicaid — to which Marion sells those services; (b) violated Section 1 of the Sherman Act, Section 3 of the Clayton Act, and the Illinois Antitrust Act, via a supposed tie of inpatient hospital and outpatient surgical services even though BCBSIL does not participate in the alleged tying and tied services; (c) violated Section 2 of the Clayton Act via "price discrimination" in the payment for those services notwithstanding that the reach of Section 2 of the Clayton Act applies only to goods; and (d) tortiously interfered with Plaintiff's expected relationship with physicians and patients in violation of Illinois law, even though these same

---

[1]   Disappointment over failure to earn expected profits neither constitutes antitrust injury nor confers antitrust standing.  *See Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[F]ailure to realize expected profits due to competition is not an antitrust injury.").  Accordingly, the very premise on which Plaintiff bases its claims is flawed from the start.

physicians and patients had contracts with BCBSIL related to the very same services.  As was true with its original complaint, not one of Plaintiff's claims against BCBSIL is viable.

Plaintiff has not met, and cannot meet, the statutory prerequisites for stating the claims it has pled against BCBSIL.  As an initial matter, all of Plaintiff's claims under Sections 2 and 3 of the Clayton Act must be dismissed with prejudice.  These sections apply to goods, not services; they cannot be a basis for suit here.  Second, Plaintiff cannot proceed with antitrust claims against BCBSIL based on alleged relevant markets that have been improperly pled.  Plaintiff cannot simply wish away government payors to whom it can and does supply its services.  Its failure to include these alternative purchasers in its defined markets is fatal to its claims.  Third, BCBSIL cannot be liable under Section 1 of the Sherman Act or the Illinois Antitrust Act for "tying" the sale of services it does not provide in markets where it does not compete.  Fourth, BCBSIL cannot, as a matter of law, be liable for tortiously interfering with *its own* business relationship with a third party, even if that third party also had a prospective relationship with Marion.  Finally, given that Plaintiff's federal claims against BCBSIL are fatally (and irreparably) deficient, its state law claims should be dismissed for the additional reason that this Court lacks independent jurisdiction to hear them.

BCBSIL laid bare the many deficiencies in Plaintiff's original claims against it (which included Plaintiff's current tying, price discrimination and tortious interference claims) and detailed why these deficiencies were incurable in its initial motion to dismiss.  Plaintiff was thus put on notice that its claims could not stand and should have dropped them from its Amended Complaint.  It did the opposite, pushing forward on claims that lacked any basis.  Plaintiff should not be given a third bite at the apple.  Its claims against BCBSIL should be dismissed with prejudice.

## FACTS ALLEGED[2]

Plaintiff Marion purports to offer outpatient surgical services to its patients.   (Am. Compl. ¶ 38.)   Marion opened for business in 2004 and competes with other providers of outpatient surgery services in Williamson and Jackson Counties, Illinois.   (*Id.*)   Marion does not offer inpatient services and does not compete in the alleged market for inpatient hospital services.[3]   (*See id.*)

In Williamson and Jackson Counties, health care insurance coverage is provided to patients and prospective patients by managed-care organizations, rental networks, self-funded plans, and government payors.   (*Id*. ¶ 17.)   Marion does not offer insurance or health care coverage of any kind, and thus does not compete with commercial, government, or other payors to provide such coverage in those counties.   (*See id.* ¶ 37.)

Defendant BCBSIL provides various forms of health benefit plans to citizens of Illinois throughout the state, including in Williamson and Jackson Counties.   (*Id*. ¶ 9.)   When an employee or individual chooses to participate in a BCBSIL plan, that individual, or his employer, enters into a contract with BCBSIL to pay certain premiums in exchange for designated benefits.[4]   (*See id*. ¶ 6.)   Hospitals and doctors, including doctors that work with Marion, contract with BCBSIL to receive specific reimbursement from BCBSIL for services provided to plan participants.   (*Id*. ¶¶ 6, 19, 83.)   Via these contracts, BCBSIL creates provider networks, often

---

[2]   This statement of facts is based on the allegations of Marion's Amended Complaint (Dkt. 13), which BCBSILIL assumes to be true, as it must, only for purposes of this motion.

[3]   The Amended Complaint alleges that the relevant markets are the markets for inpatient hospital and outpatient surgical services sold to commercial health insurers.  (Am. Compl. ¶ 1.)  BCBSIL refers to the alleged relevant markets as "inpatient hospital services" and "outpatient surgical services" for shorthand.

[4]   BCBSIL also acts as an administrator for self-funded health benefit plans that utilize BCBSIL provider networks.

negotiating for discounts from providers in exchange for network participation.  (*See id.* ¶¶ 13, 19.)  BCBSIL plan participants generally pay higher out-of-pocket costs for inpatient hospital and outpatient surgical services provided by facilities that are not part of BCBSIL's provider network — *i.e.*, out-of-network providers.  (*Id.* ¶ 57.)

Marion alleges that BCBSIL entered into an agreement with SIH providing that SIH would be the in-network provider for BCBSIL for both inpatient and outpatient surgical services in Williamson and Jackson counties.  (*Id.* ¶¶ 40, 49.)  Marion further alleges that BCBSIL declined to contract with Marion as an in-network provider because of BCBSIL's contract with SIH.  (*Id.*)  And by declining to grant Marion in-network status, Marion contends that BCBSIL discriminated in price against Marion by allegedly setting lower allowable charges for reimbursement and higher co-payments and deductibles for BCBSIL plan participants that choose to use out-of-network providers.  (*Id.* ¶ 87.)  Plaintiff also alleges that BCBSIL informed its plan participants of Marion's out-of-network status and that they may be reimbursed based on a lower rate for procedures performed at Marion.  (*Id.* ¶ 160.)  Lastly, Marion contends that BCBSIL directed its in-network physicians to refrain from utilizing out-of-network Marion and threatened to terminate the physicians' contracts with BCBSIL if they did not do so.  (*Id.* ¶¶ 70, 83.)

## ARGUMENT

## I.     THE COMPLAINT DOES NOT STATE ANY CLAIM AGAINST BCBSIL.

### A.     Applicable Legal Standard.

To defeat a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.  Merely parroting the statutory language of the claims is insufficient; the complaint must provide "specific facts to ground" each legal claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  To survive, a "complaint must [state] sufficient facts to render [its] claims . . . complete."  *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 651 (7th Cir. 2011).

Dismissal of a complaint is proper where it "fails to allege an essential element of plaintiff's claim."  *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992).  When the deficiencies in a claim are incurable, even with amendment, the claim should be dismissed with prejudice.  *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007); *Malaker v. Cincinnati Ins. Co.*, No. 09 C 1140, 2011 WL 1337095, at *9 (N.D. Ill. Apr. 7, 2011); *Howell v. N. Cent. Coll.*, 320 F. Supp. 2d 717, 719–20 (N.D. Ill. 2004) ("[A] district court may deny a plaintiff leave to amend her complaint if . . . the amendment is futile.").

**B.    Plaintiff's Clayton Act Claims In Counts II (Exclusive Dealing), VII (Tying) And X (Price Discrimination) Of The Amended Complaint Should Be Dismissed With Prejudice Because The Clayton Act Does Not Apply To Services.**

Plaintiff attempts to bring three claims against BCBSIL under the Clayton Act:  Count II for exclusive dealing under Section 3 of the Clayton Act; Count VII for tying under Section 3 of the Clayton Act; and Count X for Price Discrimination Under Section 2 of the Clayton Act. None can survive, and all should be dismissed with prejudice. [5]

---

[5]    BCBSIL adopts and incorporates by references all arguments made in Defendant SIH's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint.

By their express terms, Sections 2 and 3 of the Clayton Act cover only goods, not services.  15 U.S.C. § 13(a) ("It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of *commodities* of like grade and quality . . . .") (emphasis added); 15 U.S.C. § 14 (proscribing tying and exclusive dealing with respect to "goods, wares, merchandise, machinery, supplies, or other commoditie*s*"); *see also* 14 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 2314 (3d ed. 2012).  Both the alleged relevant market for "inpatient hospital *services*" and the alleged relevant market for "outpatient surgical *services*" described in the Amended Complaint are services — not commodities.  As a result, Sections 2 and 3 of the Clayton Act are inapplicable.  (*See* Am. Compl. ¶ 1.)  *See, e.g., Goodloe v. Nat'l Wholesale Co.*, No. 03 C 7176, 2004 WL 1631728, at *9 (N.D. Ill. July 19, 2004) (Robinson Patman Act does not apply to services); *CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F. App'x 831, 836–37 (6th Cir. 2004) (tying a service does not constitute a violation of Section 3 of the Clayton Act).

BCBSIL notified Plaintiff of this incurable defect with its Clayton Act claims in its motion to dismiss the original complaint.  Instead of dropping these claims, Plaintiff attempts to sidestep the plain language of the Clayton Act by adding allegations in its Amended Complaint that the "prescription medications delivered intravenously," "various fixation devices," and "other products" that patients may receive during outpatient surgery constitute "goods or commodities."  This belated and superficial attempt to recast the facts can't breathe life into claims that were dead from the start.  As courts have recognized for over forty years, "[v]irtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles, and . . .  in such circumstances the dominant nature of the transaction must control in determining whether it falls within the provisions of the

[Clayton] Act." *Tri-State Broad. Co. v. United Press Int'l, Inc.*, 369 F.2d 268, 269–70 (5th Cir. 1966). Here, the "dominant nature of the transaction" is the provision of medical services, not the incidental supply of prescription drugs or fixation devices delivered during the course of such services. As such, black letter law dictates that the Clayton Act does not apply. *See, e.g., Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1340 (7th Cir. 1986) (medical services are not commodities under the Clayton Act). Accordingly, all claims that Plaintiff attempts to bring under the Clayton Act should be dismissed with prejudice.

**C.   Count II Of The Amended Complaint Should Be Dismissed Because Plaintiff Has Failed To Adequately Plead A Relevant Market Or Substantial Foreclosure.**

In Count II of its Amended Complaint, Marion asserts that BCBSIL and SIH entered into a contract "wherein SIH agreed to provide health care services to patients covered by BlueCross health insurance at discounted rates on the condition that BlueCross would purchase outpatient surgical services (with related goods) exclusively from SIH . . . ." (Am. Compl. ¶ 96.) According to Marion, this arrangement, through which BCBSIL secured lower prices on inpatient hospital and outpatient surgical services, constitutes unlawful exclusive dealing under Section 1 of the Sherman Act. But, like its other claims against BCBSIL, this claim must fail because Plaintiff has not pled, and cannot plead, its required elements.

**1.   Exclusive dealing is not *per se* illegal, and such claims are viewed with skepticism by the courts.**

Because vertical exclusive dealing agreements, like the one alleged here, "can achieve legitimate economic benefits (reduced cost, stable long-term supply, predictable prices), no presumption against such agreements exists today." *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.,* 373 F.3d 57, 65 (1st Cir. 2004). Given their capacity to enable markets to operate more efficiently and benefit consumers, such agreements are not subject to *per se*

treatment, but are instead subject to rule of reason analysis.  *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327 (1961); *Stop & Shop Supermarket,* 373 F.3d at 62.  "Indeed, courts tend to be skeptical of [exclusive dealing] claims because it is not in the long-term interest of the company that grants the 'exclusive deal' to drive out of business competitors of the grantee." *Stop & Shop Supermarket,* 373 F.3d at 66.

## 2. At least two of the required elements for an exclusive dealing claim are not sufficiently pled.

"In order to establish that an exclusive dealing arrangement is an unreasonable restraint on trade in violation of § 1, the Plaintiffs must plead a relevant market and that the agreement substantially forecloses their ability to compete in the relevant market." *Compliance Mktg., Inc. v. Drugtest, Inc.,* No. 09-CV-01241-JLK, 2010 WL 1416823, at *7 (D. Colo. Apr. 7, 2010) (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961)).  *See also Apani Sw., Inc. v. Coca-Cola Enters., Inc*., 300 F.3d 620, 625 (5th Cir. 2002) (to succeed in exclusive dealing claim, among other things, "the relevant product market must be identified by considering interchangeability and cross-elasticity of demand" and "a plaintiff must show that the 'competition foreclosed by the arrangement constitutes a substantial share of the relevant market.'") (internal citations omitted).  Here, Marion fails to sufficiently plead either of these required elements.

### a. The alleged relevant markets are deficient as a matter of law and cannot support Plaintiff's exclusive dealing claim.

An essential predicate to stating a viable exclusive dealing claim is the pleading of a properly defined relevant market.  *See Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 737–38 (7th Cir. 2004) ("[Defendant] must precisely establish a relevant market.  The relevant market has both a product and a geographic dimension.").  Where, as here, the product market alleged ignores alternative purchasers, a claim that competition has been substantially

8

foreclosed is simply not plausible.  *See, e.g., Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Stop & Shop Supermarket*, 373 F.3d at 66–67.

The relevant "markets" identified by Marion are deficient as a matter of law because they are limited to inpatient hospital and outpatient surgical services paid for by commercial insurers and exclude government payors to whom Marion can and does sell its services, namely, Medicare and Medicaid.  (Am. Compl. ¶¶ 18, 23.)  *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591 (8th Cir. 2009), considered exactly the question of whether medical services paid for via government insurance could properly be excluded from the relevant market in an exclusive dealing and monopolization case brought by providers and found that they could not.  Affirming the dismissal of the providers' claims with prejudice, the Eighth Circuit noted: "a market limited by how consumers pay for [medical] procedures . . . lacks support in both logic and law. . . . [The relevant question is] to whom might the [service providers] potentially provide medical service? . . . Patients able to pay their medical bill, regardless of the method of payment, are reasonably interchangeable from the [service provider's] perspective — the correct perspective from which to analyze the issue."  *Id*. at 597; *see also FTC v. Lab. Corp. of Am.*, No. SACV 10-1873 AG MLGX, 2011 WL 3100372, at *18 (C.D. Cal. Mar. 11, 2011) (affirmatively citing *Little Rock* and acknowledging:  "Courts routinely recognize that otherwise identical products are not in separate markets simply because consumers pay for those products in different ways").  This Court should likewise dismiss Plaintiff's exclusive dealing claims against BCBSIL.

### b.      Plaintiff's allegations of foreclosure are fatally flawed.

"[E]xclusive dealing arrangements violate antitrust laws only when they foreclose competition in a substantial share of the line of commerce at issue."  *Republic Tobacco Co.*, 381 F.3d at 737–38.  Even accepting Plaintiff's claims of foreclosure as true, all Plaintiff has done is

to assert that it has been foreclosed from effectively competing for a subgroup of possible patients — here, patients using commercial insurance that have selected BCBSIL as their provider.[6]  But this says nothing about the level of supposed foreclosure, if any, in a market that includes all payors.  *Stop & Shop Supermarket*, 373 F.3d at 67 ("[T]he concern in an ordinary exclusive dealing claim by a shut-out supplier is with the available market for the supplier. . . . To say that some sub-group of customers is foreclosed proves nothing by itself about the impact on [suppliers].").  Accordingly, Plaintiff's exclusive dealing claim should be dismissed for the additional reason that it has failed to adequately plead substantial foreclosure.

This defect, like the many other flaws with Plaintiff's claims against BCBSIL, is incurable.  Plaintiff admits in its complaint that it serves Medicare and Medicaid patients.  (Am. Compl. ¶¶ 67, 68.)  It thus cannot claim that it has been substantially foreclosed from a defined market for outpatient surgical services that includes government payors, and any attempt to do so would not be plausible.  *See Twombly*, 550 U.S. at 70.  Accordingly, this claim against BCBSIL should be dismissed with prejudice as well.

### D.      Count VII Is Likewise Incurably Deficient.

In Count VII of its Amended Complaint, Marion asserts that BCBSIL tied the provision of inpatient hospital and outpatient surgical services in purported violation of Section 1 of the Sherman Act by:  "entering into an agreement that tied discounts for coverage of SIH's inpatient

---

[6]    Plaintiff also fails to plead any facts suggesting that it has been foreclosed from competing for patients enrolled in commercial insurance plans other than BCBSIL's plans.  Nor does Plaintiff even plead that it is completely foreclosed from serving BCBSIL plan members, only that BCBSIL plan members that use Marion allegedly pay higher out-of-pocket costs than those who use SIH.  At base, Plaintiff is suing for lost profits, not substantial foreclosure.  Its supposed losses from being denied entry into the BCBSIL network do not present a viable predicate for an exclusive dealing claim.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 697 (E.D. Pa. 2004) (courts generally "dismiss complaints at the pleading stage when the only damages alleged [are] profits lost as a result of increased competition").

hospital services, . . . with exclusive contracting for in-network coverage of SIH's outpatient surgical services, . . . [and] thereby prohibiting BlueCross from contracting for in-network coverage with competing freestanding outpatient surgery centers in the region." (Am. Compl. ¶ 135.)  The facts Plaintiff alleges in support of this claim, even if taken as true, however, do not allow the Court to reasonably infer that BCBSIL is liable for tying. *Iqbal*, 566 U.S. at 678; *see also State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1479–80 (7th Cir. 1991) (Illinois Antitrust Act to be interpreted with reference to federal law).

A threshold requirement for a tying claim under Section 1 of the Sherman Act is that the defendant must have market power in the tying product. *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006) ("[I]n *all* cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.") (emphasis added); *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 316–17 (7th Cir. 2006) (same); *see also Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 565 (6th Cir. 2003) (noting that Sherman Act tying claims require a showing of market power in the tying product).

Plaintiff does not (and indeed cannot) allege that BCBSIL even *offers* the tying (inpatient hospital) or tied (outpatient surgical) services, let alone that BCBSIL has market power in either of those markets.[7]  Instead, Plaintiff asserts that BCBSIL is a "health insurance company" that provides its plan participants "health insurance coverage." (Am. Compl. ¶ 6.)  And while Plaintiff goes on at length about BCBSIL's alleged "dominant market share [in] the group health

---

[7]   Where the defendant is a *purchaser*, and not the *seller*, of the tying and tied services, as is the case with BCBSIL, a tying claim lacks facial plausibility and should be dismissed with prejudice. *Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc.*, 283 F. Supp. 2d 579, 592 (D.P.R. 2003) (dismissing tying claim against defendant with prejudice because defendant did not "receive a 'direct economic benefit' from the production, sale or performance of such products and services, but would instead be the party most prejudiced in the event of a tying arrangement, since [defendant was] the consumer of the products and services being tied").

insurance market" (*id.*), allegations that the defendant has market power in markets *other* than the one for the tying product are not sufficient to state a claim. *See, e.g., Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971–72 (9th Cir. 2008) (no tying claim where plaintiff fails to allege market power in tying market, even if plaintiff pleads that defendant has market power in some other adjacent market). Because BCBSIL "lacks market power in [the tying market for inpatient services], there can be no cognizable tying claim." *Id.*; *Ill. Tool Works*, 547 U.S. at 46; *Reifert*, 450 F. 3d at 316–17.[8]

Plaintiff has, therefore, failed to allege an essential element of its tying claim.[9] Because Plaintiff cannot plausibly plead that BCBSIL has market power in either the alleged tying or tied markets, amending this claim would be futile, and it should be dismissed with prejudice.

---

[8]   Defendant's market power in the tying and/or tied product markets is a required showing under both the rule of reason and *per se* standard. *See, e.g., Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, No. 88 C 0644, 1993 WL 338985, at *4 (N.D. Ill. Sept. 1, 1993), *modified on reconsideration*, No. 88-0644, 1995 WL 12297 (N.D. Ill. Jan. 11, 1995), *aff'd*, 73 F.3d 756 (7th Cir. 1996). Thus, the fact that Plaintiff pleads illegality under both the *per se* standard and, alternatively, the rule of reason, is unavailing. Moreover, the Seventh Circuit's analysis of tying claims has been essentially the same under both standards for the last twenty years. *Reifert*, 450 F.3d at 317 n.2 (Seventh Circuit has been incorporating the rule of reason into its tying analysis for over two decades and "the Supreme Court has not found occasion to disagree with this Circuit's approach"). Thus, regardless of how Plaintiff may try to recast its tying claim, that claim will still fail and should be dismissed with prejudice.

[9]   Count IX of the Amended Complaint alleges a Section 2 claim against SIH for monopolizing the market for outpatient surgical services. (*See* Am. Compl. ¶ 154–59.) Even though BCBSIL is not named in this Count, Marion nonetheless asserts under the same heading that BCBSIL engaged in acts constituting unlawful monopolization. (*See id.* ¶¶ 158–59.) Whatever Plaintiff's intent in including these assertions about BCBSIL in Count IX, BCBSIL cannot be liable for monopolizing the market for outpatient surgical services because it does not have market power in that market. *Shavrnoch v. Clark Oil & Refining Corp.*, 26 F.2d 291, 294 (6th Cir. 1984) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)) (Section 2 claim requires a showing of monopoly power in the relevant market); *D.E. Rogers Assocs., Inc. v. Gardner-Denver Co.*, 718 F.2d 1431, 1438 (6th Cir. 1984). Indeed, a firm "cannot monopolize a market in which it does not compete." *Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007); *Leopoldo Fontanillas*, 283 F. Supp. 2d at 591. As a Seventh Circuit court has previously recognized, "Blue Cross/Blue Shield cannot, as a matter of law, monopolize or attempt to monopolize the hospital services industry because Blue Cross/Blue Shield has never and does not now compete in that market." *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 603 F. Supp. 1077, 1087 (S.D. Ind. 1985) *aff'd*, 784 F.2d 1325 (7th Cir. 1986).

**E.     Plaintiff's Companion Claims Under The Illinois Antitrust Act Fail For The Same Reasons As Its Sherman Act Claims.**

In addition to its Federal antitrust claims, Plaintiff brings companion claims against BCBSIL for purported exclusive dealing in Count IV and tying in Count VIII under the Illinois Antitrust Act.  These claims fail for the same reasons as their federal counterparts.  Federal courts analyzing claims under the Illinois Antitrust Act routinely apply federal precedent to those claims.  *State of Ill., ex rel. Burris*, 935 F.2d at 1479–80; *see also Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, No. 88 C 0644, 1993 WL 338985, at *3–4, n.2 (N.D. Ill. Sept. 1, 1993), *modified on reconsideration*, No. 88-0644, 1995 WL 12297 (N.D. Ill. Jan. 11, 1995), *aff'd*, 73 F.3d 756 (7th Cir. 1996) (applying federal law to analysis of an Illinois state law tying claim); *E-One, Inc. v. Oshkosh Truck Corp.*, No. 06CV1391, 2006 WL 3320441, at *3 n.3 (N.D. Ill. Nov. 13, 2006) (applying federal law to analysis of an Illinois state law exclusive dealing claim).  Therefore, Plaintiff's exclusive dealing claim in Count IV and tying claim in Count VIII brought under the Illinois Antitrust Act should also be dismissed. [10]

**F.     Count XI Fails To State A Tortious Interference Claim Under Illinois Law.**

Count XI rests on allegations that BCBSIL improperly caused in-network physicians and plan participants, ***with whom BCBSIL had an existing, ongoing relationship***, not to use

---

[10]   Plaintiff may argue that its tying claim under the Illinois Antitrust Act can survive because the section of the Illinois Antitrust Act which was patterned after Section 3 of the Clayton Act expressly applies to services in addition to goods. 740 ILCS § 10/3(4) (prohibiting tying in the "sale of goods . . . or services").  Not so.  While the Illinois Antitrust Act may apply to services, Plaintiff's state-law tying claim against BCBSIL still cannot withstand a motion to dismiss.  Federal precedent — which drives construction of the Illinois Antitrust Act — makes clear that the standards for adjudicating tying claims under the Clayton and Sherman Acts are now recognized to be the same.  *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 592 (7th Cir. 2008); *see also* 9 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1719b (3d ed. 2011) ("A tying agreement is subject both to Sherman Act § 1 and to Clayton Act § 3.  Although their words differ, the two statutes apply a single substantive standard.").  Thus, Plaintiff's tying claim against BCBSIL under the Clayton Act could not survive a motion to dismiss even if that Act applied to services because the claim fails to plead market power in the tying market.  Plaintiff's sister claim under the Illinois Antitrust Act must fail for the same reason.

Marion's out-of-network surgical center.  Because a party may not tortiously interfere with its own relationships, even if another party may be affected, Count XI should be dismissed.

Illinois courts recognize that a party may not tortiously interfere with contracts or relationships to which it is a party.  *See*, *e.g.*, *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 879 (Ill. 1991) (affirming dismissal of claim for tortious interference with prospective economic advantage where city employee brought tortious interference claim against mayor); *Quist v. Board of Trustees of Cmty. College Dist. No. 525*, 629 N.E.2d 807, 811 (Ill. App. Ct. 1994) (affirming dismissal of tortious interference claim, stating, "[i]n order to maintain a cause of action for tortious interference with a contract or prospective contractual relationship, the tortfeasor must be a third party to the contractual relationship").  Here, BCBSIL is a party to the very same relationships with which Plaintiff alleges BCBSIL interfered.  The thrust of Plaintiff's tortious interference allegations is that BCBSIL informed its in-network physicians — parties to BCBSIL provider contracts — and plan member-patients — parties to health benefit contracts — that patients would pay a higher out-of-network rate if they utilized Plaintiff's out-of-network surgical center. This action pursuant to its own contracts, Plaintiff contends, interfered with Plaintiff's business expectancies.  (Am. Compl. ¶¶ 157–63.)  But the Amended Complaint acknowledges that BCBSIL had existing, contractual relationships with both of these groups. (*Id.* ¶¶ 70, 83, 159.)  Because BCBSIL had a preexisting relationship with those parties, Plaintiff's tortious interference claims must be dismissed.  *See*, *e.g.*, *Young v. Conn. Mut. Life Ins. Co.*, No. 90 C 254, 1990 WL 125496 (N.D. Ill. Aug. 17, 1990).

In *Young*, the court dismissed an insurance agent's claim that an insurer had interfered with his business expectancies with certain customers.  *Id.* at *4.  The court dismissed because of the close relationship among the parties:  it found that the relationship that was allegedly

interfered with would have been between the customers, the agent, and the insurer.  *Id.*
Likewise, in the present case, BCBSIL would have been part of the alleged relationship; it would
have made payments on behalf of its plan participants to physicians and service providers,
pursuant to its contracts with each.[11]

Courts outside of Illinois have rejected claims that an insurance provider can tortiously
interfere with a medical provider's relationship with its prospective patients.  *See Ne. Ga. Cancer
Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 676 S.E.2d 428 (Ga. Ct. App. 2009); *Ex
parte Blue Cross and Blue Shield of Ala.*, 773 So. 2d 475 (Ala. 2000).  In *Northeast Georgia
Cancer Center*, a health care provider alleged that Blue Cross had tortiously interfered with the
plaintiff's relationships with its plan participants by excluding it from Blue Cross's insurance
network plans.  676 S.E.2d at 433.  The appellate court concluded that the trial court properly
dismissed the claim because "Blue Cross is an integral part of the business relationships alleged
in [plaintiff's] tortious interference claim."  *Id.*  Likewise, in *Ex Parte Blue Cross and Blue
Shield of Alabama*, the trial court rejected a dentist's claim that Blue Cross tortiously interfered
with his relationships with his patients.  773 So. 2d at 480.  The Alabama Supreme Court

---

[11]  BCBSIL's relationship with the physicians and patients also makes its alleged actions privileged.
Where a party acts to enhance its own business affairs "it has a privilege to act in a way that may
harm the business expectancy of others and that privilege is greater [ ] where . . . no contract exists
between the plaintiff and the entity with which the business relationship is anticipated."  *Fidelity
Nat'l Title Ins. Co. of N.Y. v. Westhaven Properties P'ship*, 898 N.E.2d 1051, 1067–68 (Ill. App. Ct.
2007) (citing *Curt Bullock Builders, Inc. v. H.S.S. Dev., Inc.*, 586 N.E.2d 1284, 1290 (Ill. App. Ct.
1992)).  Courts have routinely rejected tortious interference claims where a party's alleged
interference was privileged.  *See Williams v. Shell Oil Co.*, 18 F.3d 396, 402–03 (7th Cir. 1994)
(rejecting tortious interference claim where defendant acted to protect different contractual interest);
*Connaughton v. Gertz*, 418 N.E.2d 858, 862 (Ill. App. Ct. 1981) (rejecting tortious interference claim
based upon privilege where defendant acted to enforce its own contractual rights).

affirmed, holding that because a party cannot interfere with its own relationships, the tortious interference claim could not proceed.  *Id.*

As in *Northeast Georgia Cancer Center* and *Ex Parte Blue Cross and Blue Shield of Alabama*, BCBSIL is an integral part of any relationship between Plaintiff, its prospective patients who have contracted with BCBSIL for health insurance, and physicians who have a provider contract with BCBSIL, and Plaintiff's tortious interference claim against BCBSIL cannot proceed.  Count XI should be dismissed.

## II.  THE COURT SHOULD DECLINE TO EXERCISE PENDENT JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS.

Where, as here, "it is clearly apparent how the state claim is to be decided," federal courts can and should decide such claims on the merits.  *Williams*, 509 F.3d at 404.  Because the law governing Plaintiff's state-law antitrust claims is identical to the law governing its federal claims, and the disposition of Plaintiff's tortious interference claims is clearly apparent, the Court should dismiss those claims, along with the federal claims against BCBSIL, on the merits.  However, in the event that the Court determines not to decide this motion with respect to Plaintiff's state law claims, it should nevertheless dismiss them.  28 U.S.C. § 1367(c)(3) (district courts "may decline to exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction").

16

## **CONCLUSION**

For the foregoing reasons, Plaintiff cannot plead the required elements of the alleged offenses by BCBSIL and the Court should dismiss all claims against BCBSIL with prejudice.  To the extent that any state claim against BCBSIL somehow is considered after the dismissal of federal claims, the Court should dismiss them and decline to exercise pendent jurisdiction.

Dated:  November 16, 2012                              Respectfully Submitted,

                                        s/ James H. Mutchnik, P.C.
                                        Helen E. Witt, P.C.
                                        James H. Mutchnik, P.C.
                                        Scott M. Edenfield
                                        KIRKLAND & ELLIS LLP
                                        300 North  LaSalle
                                        Chicago, Illinois 60654
                                        Telephone:  (312) 862-2000
                                        Fax:  (312) 862-2200

                                        *Attorneys for Defendant Health Care Service*
                                        *Corporation, a Mutual Legal Reserve*
                                        *Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned HEREBY CERTIFIES that the foregoing document was filed via the Court's electronic filing system and thereby served upon all counsel of record on this 16th day of November, 2012.

<u>s/ James H. Mutchnik, P.C.</u>
James H. Mutchnik, P.C.