# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| Marion HealthCare, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No:  12-CV-00871-DRH-PMF |
| | ) | |
| Southern Illinois Healthcare, and | ) | Chief Judge David R. Herndon |
| Health Care Service Corporation, | ) | |
| d/b/a BlueCross and BlueShield of Illinois, | ) | Magistrate Judge Frazier |
| | ) | |
| Defendants. | ) | |

## HEALTH CARE SERVICE CORPORATION'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Dated:  October 7, 2013

Helen E. Witt, P.C.
James H. Mutchnik, P.C.
Cody D. Rockey
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Fax:  (312) 862-2200

*Attorneys for Defendant*
*Health Care Service Corporation,*
*a Mutual Legal Reserve Company*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 2

FACTS ALLEGED .............................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFF'S EXCLUSIVE DEALING CLAIMS AGAINST BCBSIL
        MUST BE DISMISSED BECAUSE BCBSIL PURCHASES, NOT SELLS,
        THE AT-ISSUE SERVICES. ................................................................................. 5

II.     PLAINTIFF'S EXCLUSIVE DEALING CLAIMS AGAINST BCBSIL
        MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE
        THE ELEMENTS OF AN EXCLUSIVE DEALING CLAIM. .............................. 7

        A.      Plaintiff Improperly Realleges The Previously Rejected Relevant
                Product Market.............................................................................................. 8

        B.      Plaintiff Has Failed To Adequately Plead A Relevant Geographic Market. .......... 9

        C.      Plaintiff Has Failed To Adequately Plead Substantial Foreclosure...................... 11

        D.      Plaintiff's Exclusive Dealing Claim Under the Illinois Antitrust Act Fails
                For The Same Reasons As Its Sherman Act Claim. .............................................. 14

CONCLUSION ................................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>CASES</u>

*Abbott v. Lockheed Martin Corp.*,
  2008 WL 5221096 (S.D. Ill. Dec. 12, 2008) ................................................ 8

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) ........................................................................ 12

*Am. Motor Inns, Inc. v. Holiday Inns, Inc.*,
  521 F.2d 1230 (3d Cir. 1975) ........................................................................ 5

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ........................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) .................................................................. 4, 8, 14

*Atkins v. City of Chicago*,
  631 F.3d 823 (7th Cir. 2011) ...................................................................... 4, 7

*Barry v. Blue Cross of California*,
  805 F.2d 866 (9th Cir. 1986) ........................................................................ 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 4, 8, 14

*Besser Publ'g. Co. v. Pioneer Press, Inc.*,
  571 F. Supp. 640 (N.D. Ill. 1983) ................................................................ 10

*Big River Indus., Inc. v. Headwaters Res., Inc.*,
  2013 WL 4890916 (M.D. La. Sept. 11, 2013) ............................................. 10

*Brillhart v. Mut. Med. Ins., Inc.*,
  768 F.2d 196 (7th Cir. 1985) ........................................................................ 7

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ........................................................................ 4

*Crawford v. Countrywide Home Loans, Inc.*,
  647 F.3d 642 (7th Cir. 2011) ........................................................................ 4

*Discon Inc. v. NYNEX Corp.*,
  86 F. Supp. 2d 154 (W.D.N.Y. 2000) .......................................................... 10

*E-One, Inc. v. Oshkosh Truck Corp.*,
  2006 WL 3320441 (N.D. Ill. Nov. 13, 2006) ........................................................... 11, 12

*Gadda v. State Bar of Cal.*,
  511 F.3d 933 (9th Cir. 2007) ................................................................................... 4

*Genetic Systems Corp. v. Abbott Labs.*,
  691 F. Supp. 407 (D.D.C. 1988) .............................................................................. 6

*Howell v. N. Cent. Coll.*,
  320 F. Supp. 2d 717 (N.D. Ill. 2004) ...................................................................... 4, 5

*Imaging Ctr., Inc. v. W. Maryland Health Sys., Inc.*,
  158 F. App'x 413 (4th Cir. 2005) ............................................................................ 11

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ..................................................................................................... 14

*Jenson Enters. Inc. v. Oldcastle Precast, Inc.*,
  2007 WL 420202 (N.D. Cal. Feb. 5, 2007) ............................................................. 6

*Little Rock Cardiology Clinic PA v. Baptist Health*,
  591 F.3d 591 (8th Cir. 2009) ................................................................................... 9, 10

*Malaker v. Cincinnati Ins. Co.*,
  2011 WL 1337095 (N.D. Ill. Apr. 7, 2011) ............................................................ 4

*Mathias v. Daily News, L.P.*,
  152 F. Supp. 2d 465 (S.D.N.Y. 2001)...................................................................... 10

*McGuire v. Columbia Broad. Sys., Inc.*,
  399 F.2d 902 (9th Cir. 1968) ................................................................................... 5

*Minch v. City of Chicago*,
  486 F.3d 294 (7th Cir. 2007) ................................................................................... 9

*Only v. Ascent Media Grp.*, LLC,
  2006 WL 2865492 (D.N.J. Oct. 5, 2006).................................................................. 10

*PSKS, Inc. v. Leegin Creative Leather Products, Inc.*,
  615 F.3d 412 (5th Cir. 2010) ................................................................................... 10

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
  381 F.3d 717 (7th Cir. 2004) ................................................................................... 8, 9, 11

*Roots P'ship v. Lands' End, Inc.*,
  965 F.2d 1411 (7th Cir. 1992) ................................................................................. 4

iii

*SmithKline Beecham Corp. v. Apotex Corp.*,
    383 F. Supp. 2d 686 (E.D. Pa. 2004) ...................................................................... 14

*State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*,
    935 F.2d 1469 (7th Cir. 1991) ...................................................................... 5, 14

*Sterling Merch., Inc. v. Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011) ...................................................................... 14

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.,*
    373 F.3d 57 (1st Cir. 2004) ...................................................................... 7, 12

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961) ...................................................................... 5, 7, 13

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ...................................................................... 11, 14

*Wallach v. Eaton Corp.*,
    814 F. Supp. 2d 428 (D. Del. 2011) ...................................................................... 5

## **STATUTES**

740 ILCS 10/11 ...................................................................... 5

## <u>INTRODUCTION</u>

This Court dismissed Plaintiff Marion HealthCare, LLC's First Amended Complaint in its entirety on August 26, 2013. Despite this, Plaintiff makes nearly identical allegations in its Second Amended Complaint. Accordingly, Plaintiff's claims against Defendant Blue Cross and Blue Shield of Illinois ("BCBSIL") remain fatally deficient and should be dismissed with prejudice.

Plaintiff continues to maintain that it would provide more outpatient surgical services, and earn greater profits, if it were a BCBSIL "in-network" provider. Plaintiff blames its financial shortcomings on an alleged agreement between BCBSIL and an area hospital, Defendant Southern Illinois Healthcare ("SIH"), which makes SIH an in-network provider of inpatient hospital and outpatient surgical services to BCBSIL members at discounted rates. According to Plaintiff, the agreement makes SIH the exclusive in-network provider of outpatient surgical services. Plaintiff claims this provision constitutes exclusive dealing in violation of federal and state antitrust laws.

Even accepting Plaintiff's allegations as true, Plaintiff has once again failed to plead any viable claim against BCBSIL. As an initial matter, federal and state antitrust laws preclude Plaintiff from asserting exclusive dealing claims against the purchaser of the at-issue services. According to Plaintiff, BCBSIL purchases outpatient surgical services from providers of the same, including SIH. Because BCBSIL is the purchaser, and not supplier, of the at-issue service, Plaintiff's exclusive dealing claims against BCBSIL fail as a matter of law.

Further, even if BCBSIL were a proper defendant, Plaintiff has failed to plead the necessary elements of an exclusive dealing claim. *First*, Plaintiff's Second Amended Complaint includes, as alternative relevant product markets, the exact same product markets this Court found "not plausible" because they fail to include all potential buyers of inpatient or outpatient

services.  As before, this alleged market is insufficient to state a claim.  *Second*, the relevant geographic market posited by Plaintiff is too vague to permit any assessment of substantial foreclosure arising from the alleged exclusive contract.  This, too, requires dismissal.  *Third*, Plaintiff asserts only conclusions in support of its allegations of substantial foreclosure in the relevant market.  And even these conclusory statements do not correspond to the outpatient surgical services market from which Marion alleges it was foreclosed.

Plaintiff's Second Amended Complaint—Marion's third bite at the apple—once again fails to state a claim against BCBSIL, and its deficiencies are incurable.  Marion's claims against BCBSIL should therefore be dismissed with prejudice.

## PROCEDURAL HISTORY

This Court previously dismissed the majority of Plaintiff's claims—Plaintiff's tying, price discrimination, and tortious interference claims—against BCBSIL with prejudice.  (Order at 15-16, 21-22, 26-32 [Dkt. 57].)  This Court also dismissed Plaintiff's exclusive dealing claims against BCBSIL, because "the relevant markets as defined by plaintiff are not plausible as stated."  (*Id*. at 21.)  In particular, "Plaintiff failed to include in the relevant markets all potential buyers of inpatient or outpatient services."  (*Id*.)  This Court granted Plaintiff the chance to replead its exclusive dealing claims under Section 1 of the Sherman Act and the state law analogue, but instructed Plaintiff to "cur[e] the noted deficiencies" in any amended complaint. (*Id*.)

## FACTS ALLEGED[1]

Since 2004, Plaintiff Marion has provided outpatient surgical services.[2] (2d Am. Compl. ¶¶ 1, 75 [Dkt. 58].)  Marion competes with other providers of outpatient surgery

---

[1]   This statement of facts is based on the allegations of Marion's Second Amended Complaint (Dkt. 58), which BCBSIL assumes to be true, as it must, only for purposes of this motion.

2

services in "Williamson County and Jackson County, Illinois and the surrounding area." (*Id.* at ¶ 2.)  Plaintiff does not set forth the geographic boundaries of the "surrounding area" in which it competes.

Defendant BCBSIL provides various forms of health benefit plans—both as a managed-care organization and an administrator for self-funded plans—to citizens of Illinois throughout the state, including in Williamson and Jackson Counties.  (*Id.* at ¶¶ 9, 18.)  Medical facilities and doctors contract with BCBSIL to receive specific reimbursement from BCBSIL for services they provide to BCBSIL plan participants.  (*Id.* at ¶¶ 20, 27, 47, 52.)  BCBSIL does not provide either inpatient hospital or outpatient surgical services.  (*See id.* at ¶ 75.)  Accordingly, BCBSIL is not a competitor of any of the providers, including Marion, in either of the alleged relevant markets.  Rather, BCBSIL acts as the purchaser of these services from various providers in these markets, including SIH.  (*Id.* at ¶¶ 27, 47, 52.)

BCBSIL often negotiates for discounts from providers in exchange for participation in a BCBSIL provider network.  (*See id.* at ¶¶ 47, 52, 86-87.)  Commercial insurers, like BCBSIL, prefer an open network of providers.  (*Id.* at ¶ 87.)  But, they may enter contracts with providers that place some form of limitation on the providers included in the network in exchange for discounts.  (*See id.* at ¶¶ 87-89.)  However, even though some providers may not be in a BCBSIL network, those providers may still sell services to BCBSIL members, to other commercial insurers, to government payors, and to patients who self-pay for services.  (*See id.* at ¶¶ 1, 126.)

---

2   Plaintiff alleges two relevant product markets: the market for inpatient hospital services and the market for outpatient surgical services, both reimbursed by any payor—commercial insurers, government payors, and self-pay.  (2d Am. Compl. ¶ 1.)  In the alternative, Plaintiff alleges that the relevant product markets are the markets for inpatient hospital and outpatient surgical services, only to the extent those services are reimbursed by commercial insurers.  (*Id.*)

Here, Marion alleges that BCBSIL entered into an agreement with SIH that made SIH a BCBSIL in-network provider.  (*Id.* at ¶ 86.)  Marion further alleges that BCBSIL declined to contract with Marion as an in-network provider because of BCBSIL's contract with SIH.  (*Id.*)

## ARGUMENT

To defeat a Rule 12(b)(6) motion, a plaintiff must plead "'sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  (Order at 10 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).)  A court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Merely parroting the statutory language of the claims is insufficient; the complaint must provide "specific facts to ground" each legal claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  A "complaint must [state] sufficient facts to render [its] claims . . . complete."  *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 651 (7th Cir. 2011).

Dismissal of a complaint is proper where it "fails to allege an essential element of plaintiff's claim."  *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992).  "A plaintiff 'can plead himself out of court by pleading facts that show that he has no legal claim.'"  (Order at 10 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)).  When the deficiencies in a claim are incurable, even with amendment, the claim should be dismissed with prejudice.  *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007); *Malaker v. Cincinnati Ins. Co.*, No. 09 C 1140, 2011 WL 1337095, at *9 (N.D. Ill. Apr. 7, 2011) (St. Eve., J.); *Howell v. N. Cent. Coll.*, 320 F. Supp. 2d 717, 719-20 (N.D. Ill. 2004) (Bobrick, M.J.) ("[A] district court may deny a plaintiff leave to amend her complaint if . . . the amendment is futile."); *see also* Order at 15 (denying leave to amend in light of the fact that an amendment "would be

contradictory and/or futile"); *id*. at 31 (denying an amendment because it "would contradict the allegations already set forth, and would be futile").

## I. PLAINTIFF'S EXCLUSIVE DEALING CLAIMS AGAINST BCBSIL MUST BE DISMISSED BECAUSE BCBSIL PURCHASES, NOT SELLS, THE AT-ISSUE SERVICES.

Plaintiff brings its exclusive dealing claims against BCBSIL under Sherman Act Section 1 and Section 3(4) of the Illinois Antitrust Act. (2d Am. Compl. Counts II and IV.) If an exclusive dealing claim "does not fall within the broader proscription of [Section] 3 of the Clayton Act it follows that it is not forbidden by those of [Section 1]." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 335 (1961); *see also Am. Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230, 1250 (3d Cir. 1975) ("[A]n exclusive dealing arrangement which satisfies the test of legality set out in the Clayton Act would *a fortiori* be lawful under the less stringent Sherman Act."). Similarly, if an exclusive dealing claim fails under the Sherman Act, it fails under the Illinois Antitrust Act. *See* Order at 28-29; *State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1479-80 (7th Cir. 1991) ("Sections 3(3) and 3(4) of the Illinois Antitrust Act . . . were modeled after sections 2 and 1 of the Sherman Act, respectively, and Illinois law provides that its courts should use the construction of federal antitrust law by federal courts to guide their construction of those state antitrust laws that are substantially similar to federal antitrust law. Illinois courts therefore look to federal law when construing these provisions.") (citing 740 ILCS 10/11).

Exclusive dealing claims under Section 3 of the Clayton Act—and thus Section 1 of the Sherman Act and Section 3(4) of the Illinois Antitrust Act—may not be brought against the buyer of the at-issue service. *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968) ("The language of the statute defines liability in terms of a person who makes a sale or contracts for sale and nowhere provides for liability of the buyer."); *see also Wallach v.*

*Eaton Corp.*, 814 F. Supp. 2d 428, 443 (D. Del. 2011) (Robinson, J.) (dismissing exclusive dealing claims against buyer-defendants under Section 3); *Jenson Enters. Inc. v. Oldcastle Precast, Inc.*, No. 06-247-SI, 2007 WL 420202, at *2 (N.D. Cal. Feb. 5, 2007) (Illston, J.) (denying leave to amend a complaint to bring an exclusive dealing claim against a buyer).

Here, Plaintiff has alleged throughout its complaint that BCBSIL is a buyer of outpatient surgical services, the at-issue service. (2d Am. Compl. ¶ 27 ("the insurance carriers serve as the de facto buyer of covered outpatient surgical services"), ¶ 52 ("the insurance carriers serve as the buyer of covered outpatient surgical services"), ¶ 64 ("Commercial health insurers contract to purchase inpatient hospital services and outpatient surgical services"), ¶ 129 ("BlueCross would purchase outpatient surgical services"), ¶ 135 (same), ¶ 148 (same), ¶ 141 ("BlueCross would exclusively purchase outpatient surgical services").) Because exclusive dealing claims against buyers fail as a matter of law, Plaintiff's exclusive dealing claims against BCBSIL under both federal and state antitrust laws are incurably deficient and should be dismissed with prejudice.

Directly on point is *Genetic Systems Corp. v. Abbott Labs.*, 691 F. Supp. 407 (D.D.C. 1988) (Green, J.). In *Genetic Systems* the court dismissed exclusive dealing claims against the buyer of blood test equipment under both Sherman Act Section 1 and Clayton Act Section 3. *Id.* at 412-416. The court found that "the plain language of the statute, the relevant legislative history, and the observations of commentators" make clear that "Section 3 does not impose liability on purchasers for exclusive dealing contracts." *Id.* at 414. Given that the defendant was a purchaser of the at-issue product, the court dismissed the claims under Clayton Act Section 3, and found that "[t]his conclusion and the same reasoning also mandates the dismissal of [the claim against the defendant] brought under the broader proscription of Section 1 of the Sherman Act.") *Id.* at 415. As in *Genetic Systems*, Plaintiff here has pled "'himself out of court by

6

pleading facts that show that he has no legal claim.'" (Order at 10 (quoting *Atkins*, 631 F.3d at 832).) Because Plaintiff alleges that BCBSIL is a purchaser of outpatient surgical services, its exclusive dealing claims against BCBSIL fail.

Dismissing the exclusive dealing claims against BCBSIL is consistent with the fact that "it is not in the long-term interest of the company that grants the 'exclusive deal' to drive out of business competitors of the grantee." *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.,* 373 F.3d 57, 66 (1st Cir. 2004). Here, Plaintiff specifically alleges that commercial insurers, like BCBSIL, "prefer . . . an open network of potential healthcare providers." (2d Am. Compl. ¶ 87.) Plaintiff also acknowledges that "BlueCross had a compelling business need to include SIH within its network" and "to do so at discounted rates." (*Id.* at ¶ 86.) Given that low prices are a goal of antitrust law, it makes little sense to use the antitrust laws to condemn a buyer for its desire to purchase at discounted prices. "The antitrust laws do not prohibit a buyer from bargaining for the best deal possible." *Brillhart v. Mut. Med. Ins., Inc.*, 768 F.2d 196, 201 (7th Cir. 1985). Accordingly, this court should dismiss Plaintiff's claims against purchaser BCBSIL.

## II. PLAINTIFF'S EXCLUSIVE DEALING CLAIMS AGAINST BCBSIL MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE THE ELEMENTS OF AN EXCLUSIVE DEALING CLAIM.

Vertical exclusive dealing agreements, like the one alleged here, are subject to rule of reason analysis. Order at 19; *see also Tampa Elec.,* 365 U.S. at 327; *Stop & Shop Supermarket*, 373 F.3d at 62. This treatment results from the fact that exclusive dealing arrangements "can achieve legitimate economic benefits (reduced cost, stable long-term supply, predictable prices)." *Stop & Shop Supermarket*, 373 F.3d at 65. Therefore, in order to establish that an exclusive dealing arrangement is an unreasonable restraint on trade in violation of section 1, a plaintiff must plead a relevant market, including both relevant product and geographic markets,

and that the alleged agreement substantially forecloses its ability to compete in the relevant market.  *Republic Tobacco Co. v. N. Atl. Trading Co.,* 381 F.3d 717, 737-38 (7th Cir. 2004); *see also Apani Sw., Inc. v. Coca-Cola Enters., Inc*., 300 F.3d 620, 625 (5th Cir. 2002) (to succeed in exclusive dealing claim, among other things, "the relevant product market must be identified" and "a plaintiff must show that the 'competition foreclosed by the arrangement constitutes a substantial share of the relevant market.'") (internal citations omitted).  Here, Marion's Second Amended Complaint should be dismissed because it repeats the same flawed relevant product market this Court already rejected and fails to include adequate allegations of a relevant geographic market and of substantial foreclosure.

### A. Plaintiff Improperly Realleges The Previously Rejected Relevant Product Market.

Plaintiff claims to have been substantially foreclosed from the market consisting of "outpatient surgical services, where [those] services may be reimbursed by any payors, including commercial insurance, government payors (*e.g*., Medicare, Medicaid) and self-pay." (2d Am. Compl. ¶ 1.)  In the alternative, Plaintiff claims to have been substantially foreclosed from the market consisting of "outpatient surgical services reimbursed by commercial health insurers."  (*Id*.)  However, the Court has already found Plaintiff's alternative market definition implausible because it fails to include "all potential buyers" of outpatient services.  (Order at 21.) Because Plaintiff provides no new support for its product market definition, this definition remains implausible.[3]   *See   Abbott   v.   Lockheed Martin   Corp.*,   No. 06-CV-701MJR,

---

[3]    Plaintiff's "no government payors" market definition is predicated on the contention that government payors are not a significant source of revenue for outpatient surgical services providers.  (*See* 2d Am. Compl. ¶ 58.)  In its Order, the Court dismissed Plaintiff's market definition in part because Plaintiff failed to plead any facts to support this contention.  (Order at 21.)  Plaintiff has done nothing to remedy this deficiency.  Plaintiff merely repeats the same conclusory allegations: "government payors provide a relatively insignificant source of financial input for providers of outpatient services."

2008 WL 5221096, at *2 (S.D. Ill. Dec. 12, 2008) (Wilkerson, M.J.) ("[A] court ought not to revisit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination.'") (quoting *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir. 2007)).   Plaintiff relies on this alternative market definition as a basis for its exclusive dealing claims against BCBSIL.   (2d Am. Compl. ¶ 137 (alleging that BCBSIL has market power for the reimbursement of outpatient surgical services, "whether the market is defined as revenue for outpatient surgical services reimbursed by any payor (government or commercial) or as revenue for outpatient surgical services reimbursed only by commercial insurers"); *id.* at ¶ 151 (same).)   Accordingly, the Court should dismiss these claims to the extent they are predicated on this already rejected market definition.[4]

### B.      Plaintiff Has Failed To Adequately Plead A Relevant Geographic Market.

Pleading a properly defined geographic market is an essential element of an exclusive dealing claim.   *Republic Tobacco,* 381 F.3d at 737-38.   Identifying a geographic market requires "careful selection of the market area in which the seller operates, and to which the purchaser can practicably turn for supplies."   *Id.* at 738 (internal citations omitted).   "The end goal in this analysis is to delineate a geographic area where, in the medical setting, 'few' patients leave . . . and 'few' patients enter."   *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598 (8th Cir. 2009).

Plaintiff's geographic market definition fails because it is vague and artificially gerrymandered to exclude potential competitors.   Plaintiff defines the relevant market as

---

(2d Am. Compl. at ¶¶ 34, 58, 99, 138(h) & 152(h)).)  Plaintiff's conclusory statements are insufficient, no matter how many times it repeats them.  *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555.

[4]      Simultaneously with this motion to dismiss, BCBSIL has filed a motion to strike portions of Plaintiff's Second Amended Complaint, including the portions of the complaint that refer to the market definition that this Court has already rejected as "implausible."

"Williamson and Jackson Counties, Illinois and portions of the adjacent local geographic areas in close proximity to these two counties."  (2d Am. Compl. ¶ 62.)  Plaintiff concedes that it cannot limit the geographic market to merely Williamson and Jackson Counties because there are no "bright line" boundaries demarcating geographic markets in the field of healthcare, and that as many as 80,000 citizens live in some undefined region outside of Williamson and Jackson Counties, but enter these counties seeking either inpatient hospital or outpatient surgical services. (*See id*. at ¶¶ 62-63.)  Such a "broad and vague" alleged geographic market requires dismissal. *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 418 (5th Cir. 2010).  As many courts have recognized, "failure to define a geographic market with precision makes it impossible to assess the potential harm to competition," and is grounds for dismissal.  *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001) (Marrero, J.); *see also Big River Indus., Inc. v. Headwaters Res., Inc*., No. 13-212-JJB, 2013 WL 4890916, at *4 (M.D. La. Sept. 11, 2013) (Brady, J.) (rejecting geographic market definition where plaintiff failed to "sufficiently define the geographic limitations" of the market); *Only v. Ascent Media Grp.*, LLC, No. 06-2123 FSH, 2006 WL 2865492, at *5 (D.N.J. Oct. 5, 2006) (Hochberg, J.) (dismissing complaint in part because plaintiff "only [made] vague references to . . . the 'New York Metro' area."); *Besser Publ'g. Co. v. Pioneer Press, Inc.*, 571 F. Supp. 640, 641 (N.D. Ill. 1983) (Leighton, J.) ("Generalities such as 'less-than-metropolitan area-wide market' are simply too vague to provide a sufficient definition of the relevant geographic market[].").

Furthermore, Plaintiff limits its analysis of competition to providers of the relevant services located only in Williamson and Jackson Counties.   (*See*  2d Am. Compl. ¶¶ 67-75.) Plaintiff ignores providers located in whatever area those 80,000 citizens outside of Williamson and Jackson Counties reside.  This omission is impermissible.  *See Discon Inc. v. NYNEX Corp.*,

86 F. Supp. 2d 154, 163 (W.D.N.Y. 2000) (Arcara, J.) (rejecting market definition "artificially gerrymandered" to "exclude[e] adjoining communities . . . served by other [competitors]"). Plaintiff's failure to delineate clear boundaries for its geographic market, and failure to identify all potential competitors therein, makes it impossible to assess the harm to competition, if any, from SIH's and BCBSIL's allegedly anticompetitive behavior.  Therefore, Plaintiff's geographic market definition fails as a matter of law.

### C.      Plaintiff Has Failed To Adequately Plead Substantial Foreclosure.

"Exclusive dealing arrangements violate antitrust laws only when they foreclose competition in a substantial share of the line of commerce at issue" in those markets.  *Republic Tobacco*, 381 F.3d at 737–38.  That is, "the plaintiff must show that 'the opportunities for other traders to enter into or remain in that market [are] significantly limited' by the exclusive-dealing arrangement."  *Imaging Ctr., Inc. v. W. Maryland Health Sys., Inc.*, 158 F. App'x 413, 420 (4th Cir. 2005).  Courts frequently look at the percentage of the market foreclosed as a guidepost in making this determination.  *United States v. Microsoft Corp.*, 253 F.3d 34, 69 (D.C. Cir. 2001) ("Following *Tampa Electric*, courts considering antitrust challenges to exclusive contracts have taken care to identify the share of the market foreclosed.").

Plaintiff does not plead any facts that show it has been substantially foreclosed from the market for outpatient surgical services.  *First*, Plaintiff does not allege any facts suggesting that it has been foreclosed from competing for patients enrolled in insurance plans other than BCBSIL's plans, from government payors, or from self-payors.  *See E-One, Inc. v. Oshkosh Truck Corp.*, No. 06CV1391, 2006 WL 3320441, at *3 n.3 (N.D. Ill. Nov. 13, 2006) (Gettleman, J.) (applying federal law to reject an exclusive dealing claim where the plaintiff "has not alleged that defendant's actions excluded it from the market in any capacity; in fact, plaintiff is still a market participant").  *Second*, Plaintiff also does not allege that it is actually foreclosed

11

from serving BCBSIL members.  In fact, Plaintiff admits that BCBSIL may pay for services at out-of-network providers.  (*See* 2d Am. Compl. ¶ 126.)  Although Plaintiff alleges that BCBSIL plan members pay higher out-of-pocket costs to use Marion as opposed to SIH (*see id.* at ¶¶ 94, 110, 115, 125-26), this is irrelevant to foreclosure because when an out-of network provider like Marion offers a compelling enough value—be it through quality medical services or low prices—BCBSIL and BCBSIL members remain free to purchase those services.  *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010) (discount hospitals received because they belonged to a purchasing group with an exclusive contract with one supplier did not foreclosure other suppliers who need "only offer a better product or a better deal" as hospitals "could simply forego the negotiated discounts") (internal citations omitted); *see also Stop & Shop Supermarket*, 373 F.3d at 67 (BCBSRI's 70% market share did not, on its own, prove substantial foreclosure absent taking into account how many BCBSRI insureds used out-of-network facilities); *Barry v. Blue Cross of California*, 805 F.2d 866, 872 (9th Cir. 1986) (noting that although "paying lower benefits for treatment by nonparticipating physicians greatly discourages patients from using such physicians," such arrangements "do not cause impermissible market distortions" as "[t]hey do not prevent patients from seeing nonparticipating physicians").

Additionally, plaintiff attempts to plead two facts regarding BCBSIL, neither of which supports a claim of foreclosure from the relevant product market for outpatient surgery services it alleges.  Plaintiff first states that BCBSIL has "market power in the relevant geographic market for health insurance coverage of inpatient hospital and outpatient surgical services—in excess of 50% of the reimbursements in the relevant markets for services reimbursed by private insurance."  (2d Am. Compl. ¶ 85.)  But this fact, even if true, is wholly inapposite: Plaintiff has

not alleged a relevant market "for health insurance coverage of inpatient hospital and outpatient surgical services." (*See id.* at ¶ 1.)  And Plaintiff makes no effort to tie its allegations regarding this alleged market to foreclosure from the market for outpatient surgical services defined irrespective who pays for the services.  *See Tampa Elec.,* 365 U.S. at 327 ("[T]he threatened foreclosure of competition must be in relation to the market affected.").

Plaintiff then alleges that BCBSIL "in revenue or financial inputs terms as a percentage of all services covered by government payors and commercial insurers, BlueCross has in excess of 30% of the reimbursements in the relevant geographic market[.]"  (2d Am. Compl. ¶ 85.) This allegation also provides no insight into the degree to which Marion was foreclosed, if at all, from the market for outpatient services.  *First,* Plaintiff alleges the specific share of reimbursements BCBSIL has of inpatient hospital, outpatient surgical, and other types of services combined—"of all services."  But this provides insufficient information from which foreclosure in the outpatient surgical services market, the market from which Plaintiff alleges it was foreclosed, can be estimated.  Second, Plaintiff alleges the share of reimbursements BCBSIL has relative to reimbursements made only by commercial insurers and government payors. Plaintiff completely ignores patients who "self-pay", despite the fact that outpatient surgical services paid for by this group of patients is explicitly included in Plaintiff's market definition. (*See id.* at ¶ 1.)  Plaintiff nowhere asserts BCBSIL's share of reimbursements for outpatient surgical services as reimbursed by any payor, the market from which Plaintiff claims to be foreclosed.  *See Tampa Elec.,* 365 U.S. at 327 ("[T]he threatened foreclosure of competition must be in relation to the market affected.").

Even assuming, *arguendo*, that Plaintiff could assert that it is foreclosed access to 30% of the relevant market—which it has not—this is insufficient to show substantial foreclosure.  As

many courts have recognized, "'foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent,' and while high numbers do not guarantee success for an antitrust claim, 'low numbers make dismissal easy.'"   *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 123-24 (1st Cir. 2011) (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45-46 (1984) (O'Connor, J., concurring)); *see also Microsoft Corp*., 253 F.3d at 70 (Section 1 exclusive dealing claim generally requires foreclosure of 40-50% of the relevant line of commerce).

Plaintiffs' conclusory statements that it has been substantially foreclosed from the relevant market do not salvage its claim.   (*See* 2d Am. Compl. ¶¶ 138(h), 139(d), 152(h), 153(d).)   Without more, such conclusory allegations are insufficient to support its exclusive dealing claims. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  At base, Plaintiff is suing for lost profits, not substantial foreclosure.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 697 (E.D. Pa. 2004) (Surrick, J.) (courts generally "dismiss complaints at the pleading stage when the only damages alleged [are] profits lost as a result of increased competition").  Plaintiff's supposed losses from being denied entry into the BCBSIL network do not present a viable predicate for an exclusive dealing claim, and Plaintiff's claims should be dismissed with prejudice.

**D.    Plaintiff's Exclusive Dealing Claim Under the Illinois Antitrust Act Fails For The Same Reasons As Its Sherman Act Claim.**

In addition to its federal antitrust claims, Plaintiff brings companion claims against BCBSIL for purported exclusive dealing under the Illinois Antitrust Act in Count IV.  These claims fail for the same reason as their federal counterparts.  Federal courts analyzing claims under the Illinois Antitrust Act routinely apply federal precedent to those claims.  Order at 28-29; *see also State of Ill., ex rel. Burris*, 935 F.2d at 1479–80.  Therefore, Plaintiff's exclusive dealing

claim brought under the Illinois Antitrust Act in Count IV should also be dismissed for the same reasons set forth above.

## CONCLUSION

For the foregoing reasons, Plaintiff cannot plead the required elements of the alleged offenses by BCBSIL and the Court should dismiss all claims against BCBSIL with prejudice.


Dated:  October 7, 2013                              Respectfully Submitted,


                                                     /s/ James H. Mutchnik, P.C.
                                                     Helen E. Witt, P.C.
                                                     James H. Mutchnik, P.C.
                                                     Cody D. Rockey
                                                     KIRKLAND & ELLIS LLP
                                                     300 North  LaSalle
                                                     Chicago, Illinois 60654
                                                     Telephone:  (312) 862-2000
                                                     Fax:  (312) 862-2200

                                                     *Attorneys for Defendant*
                                                     *Health Care Service Corporation,*
                                                     *a Mutual Legal Reserve Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned HEREBY CERTIFIES that the foregoing document was filed via the Court's electronic filing system and thereby served upon all counsel of record on this 7th day of October, 2013.

/s/ James H. Mutchnik, P.C.
James H. Mutchnik, P.C.