IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARION HEALTHCARE, LLC,<br><br>            Plaintiff,<br><br>    vs.<br><br>SOUTHERN ILLINOIS HEALTHCARE and HEALTH CARE SERVICE CORPORATION *doing business as BlueCross and BlueShield of Illinois*,<br><br>            Defendants. | Case No. 12-cv-871-SMY-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on (1) defendant Health Care Service Corporation, doing business as BlueCross and BlueShield of Illinois' ("BCBSI") Motion to Dismiss Plaintiff Marion HealthCare, LLC's ("MHC") Second Amended Complaint (Doc. 59); (2) BCBSI's Motion to Strike Amended Complaint (Doc. 61); and (3) Defendant Southern Illinois Healthcare's ("SIH") Motion to Dismiss for Failure to State a Claim (Doc. 62).

**Procedural History**

In its First Amended Complaint, Plaintiff raised the following five claims against SIH: (1) Count I – exclusive dealing with BCBSI in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Clayton Act (15 U.S.C. § 14); (2) Count III – exclusive dealing with BCBSI in violation of the Illinois Antitrust Act; (3) Count V – tying arrangement with BCBSI in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Clayton Act (15 U.S.C. § 14); (4) Count Six – tying arrangement with BCBSI in violation of the Illinois Antitrust Act (740 ILCS 10/3); and (5) Count IX – monopolization in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

In its First Amended Complaint, Plaintiff raised the following six claims against BCBSI: (1) Count II – exclusive dealing with SIH in violation of Section 1 of the Sherman Act and Clayton Act (15 U.S.C. § 14; (2) Count IV – exclusive dealing with SIH in violation of the Illinois Antitrust Act; (3) Count VII -  tying arrangement with SIH in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Clayton Act (15 U.S.C. § 14); (4) Count VIII -  tying arrangement with SIH in violation of the Illinois Antitrust Act (740 ILCS 10/3); (5) Count X – price discrimination against MHC in violation of Section 2 of the Clayton Act (15 U.S.C. § 13); and (6) Count XI – tortious interference with a business expectancy.

With respect to MHC's First Amended Complaint, Judge Herndon dismissed with prejudice the following claims: (1) Counts I, II, V, VII, and X to the extent those counts stated claims pursuant to Sections 2 or 3 of the Clayton Act; (2) the tying claim contained in Count VII; (3) the monopolization claim contained in Count IX; (4)  the Illinois Antitrust claims contained in Counts III, IV, VI, and VII to the extent that each is based upon the portion of the Illinois law that is substantially similar to the Clayton Act; (5) the Illinois Antitrust claims contained in Count IV as to BCBSI to the extent it is based on the portion of Illinois law that is substantially similar to the Sherman Act based upon tying;  and (6) the tortious interference with a business expectancy contained in Count XI claim against BCBSI (Doc. 57 ).

Judge Herndon dismissed without prejudice the following claims: (1) Plaintiff's Sherman Act claims as to SIH contained in Counts I, V, and IX; (2) the Sherman Act claim as to BCBSI regarding exclusive dealing contained in Count II; (3) the Illinois Antitrust claims contained  in Counts III and VI as to SIH to the extent that each is based upon the portion of Illinois law that is substantially similar to the Sherman Act; and (4) the Illinois Antitrust claims contained in Count IV as to BCBSI to the extent it is based on the portion of Illinois law that is substantially similar to the Sherman Act based upon exclusive dealing (Doc. 57 ).

Thereafter, MHC filed its Second Amended Complaint raising the following claims: (1) Count I – exclusive dealing against SIH in violation of Section 1 of the Sherman Act (15 U.S.C. § 1); (2) Count II – exclusive dealing against BCBSI in violation of Section 1 of the Sherman Act (15 U.S.C. § 1); (3) Count III – exclusive dealing against SIH in violation of the Illinois Antitrust Act; (4) Count IV – exclusive dealing against BCBSI in violation of the Illinois Antitrust Act; (5) Count V – tying against SIH in violation of Section 1of the Sherman Act (15 U.S.C. § 1); (6) Count VI – tying against SIH in violation of the Illinois Antitrust Act (740 ILCS 10/3); and (7) Count VII – monopolization against SIH in violation of Section 2 of the Sherman Act (15 U.S.C. § 2). Defendants bring their Motions to Dismiss MHC's Second Amended Complaint for failure to state a claim.

**Background**

Plaintiff, MHC, is a multi-specialty freestanding outpatient surgery center which offers outpatient surgical services. Plaintiff does not offer inpatient services. Plaintiff opened for business in 2004, and is located in the relevant geographic area, defined by Plaintiff as the counties of Williamson and Jackson, and the surrounding areas bordering these counties. Defendant SIH is a nonprofit corporation that owns a variety of acute-care hospitals which provide both inpatient and outpatient medical services. Further, SIH owns various freestanding outpatient surgical service providers.

Plaintiff alleges that the relevant product markets consist of two distinct sets, "the first set encompassing the second." The first set consists of "(a) general acute-care inpatient hospital services, including pediatric services and neonatal care services (generally referred to as "hospital services"), and (b) outpatient surgical services, where both (a) and (b) services may be reimbursed by any payors, including commercial insurance, government payors (e.g., Medicare, Medicaid) and self-pay." (Doc. 58 p. 2, par. 1). The second set of relevant product markets are

submarkets of the first set and consist of "(1) general acute-care inpatient hospital services, including pediatric services and neonatal care services (generally referred to as "hospital services") reimbursed by commercial health insurers, and (2) outpatient surgical services reimbursed by commercial health insurers." *Id.*

Plaintiff alleges the relevant geographic markets are comprised of Williamson County, Illinois, Jackson County, Illinois and the surrounding area. *Id.* (par. 3). In the relevant geographic market, Plaintiff maintains SIH is a "must have" hospital system for health plans because it is the largest hospital in the region and the only local provider of certain essential services. Plaintiff alleges that within the relevant geographic area, SIH has a 77% market share for inpatient surgical cases (*Id.*, par 81 (h)) and a 76% market share of outpatient surgical cases. *Id.* (p. 30 par. 82 (a)).

Defendant BCBSI is allegedly the largest health insurance company in Illinois and the dominate health insurer in the relevant geographic area. Thus, BCBSI is the dominant provider of health insurance covering inpatient and outpatient services. Plaintiff claims that it has submitted multiple applications to BCBSI seeking acceptance as an in-network provider and that BCBSI has denied their request each time. Plaintiff alleges BCBSI informed them that BCBSI had an exclusive contract with SIH, which prohibited or precluded BCBSI from contracting with competitors for in-network coverage in the area. Plaintiff further alleges that it, and others, cannot remain competitive as long as this agreement with BCBSI and SIH exists. It is this exclusive agreement that forms the foundation of Plaintiff's claims.

Plaintiff claims that SIH willfully maintained and extended its monopoly power through the use of exclusionary contracts. Particularly, Plaintiff alleges that BCBSI had a compelling business need to include SIH in its network of inpatient service providers. Yet, in consideration of discounts to BCBSI on inpatient services, SIH included exclusionary language in the

agreements with commercial insurers. Plaintiff argues the agreement improperly and illegally tied discounts for coverage of SIH's inpatient hospital services with exclusive contracting for in-network coverage of SIH's outpatient services and illegally coerced BCBSI into entering the agreement. This arrangement prohibits BCBSI from contracting for in-network coverage with competing freestanding outpatient surgery centers in the region. As such, Plaintiff contends the arrangement constitutes exclusive "dealing and tying" in violation of the Sherman Antitrust Act.

Plaintiff maintains that as a result of the agreement between SIH and BCBSI, SIH has been able to retain monopoly power in the two relevant markets in the defined geographical area. Plaintiff contends that it and others cannot effectively compete because SIH and BCBSI have substantially reduced the number of patients who would otherwise use SIH's competitors. Plaintiff claims that patients have been required to pay more at SIH for services, compared to the same procedure in a non-SIH owned facility. Thus, Plaintiff alleges that SIH's contracts have prevented the public from receiving competitive services from other competitors for the cheapest costs.

In sum, Plaintiff maintains that SIH, via its exclusionary contracts with BCBSI, has violated antitrust law through exclusive dealing, tying, and monopolization. Plaintiff alleges that SIH's exclusionary contracts with BCBSI violate antitrust law and have delayed and prevented expansion by competitors in the relevant geographic area, have limited price competition, have reduced quality competition in the area and have reduced healthcare options for patients in need of outpatient surgery, all without a valid business justification.

## Analysis

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) allows for dismissal upon "failure to state a claim upon which relief can be granted." To state a claim, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). Further, the court must review a complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts alleged, and draw all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008). Detailed factual allegations are not required, but the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 500 U.S. 544, 570 (2007)). A plaintiff can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Finally, the court must not apply a heightened pleading standard in antitrust cases. *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000).

**BCBSI's Motion to Dismiss (Doc. 59)**

BCBSI contends Plaintiff's Second Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, BCBSI asserts that as a matter of law, MHC cannot assert exclusive dealing claims against it as a purchaser of the services at issue.  BCBSI further asserts that MHC has failed to plead the essential elements of an exclusive dealing claim against it. BCBSI argues dismissal is appropriate for following reasons:  (1) BCBSI cannot be held liable under Section 1 of the Sherman Act or Section 3(4) of the Illinois Antitrust Act because BCBSI is a "purchaser"; (2) MHC's claims fail to the extent they allege the same relevant product markets that this Court rejected when it dismissed MHC's First Amended Complaint for failure to plead a plausible relevant product market; (3) MHC's  relevant geographic market definition is too vague to permit an assessment of substantial foreclosure; and (4) MHC only makes conclusory allegations of substantial foreclosure and fails to allege facts sufficient to support a plausible claim of substantial foreclosure from the market for outpatient surgery services.  The Court only considers BCBSI's first argument for the following reason.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To plead a violation of § 1 of the Sherman Act, a plaintiff must plead: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Because "[t]he purpose of the Sherman Act is to protect consumers from injury that results from diminished competition," "the plaintiff must allege, not only an injury to himself, but an injury to the market as well." *Agnew*, 683 F.3d at 334-35.

MHC brings its exclusive dealing claims against BCBSI under Section 1 of the Sherman Act and Section 3(4) of the Illinois Antitrust Act. (Doc. 58 Counts II and IV). However, if an exclusive dealing claim "does not fall within the broader prescription of [Section] 3 of the Clayton Act, it follows that it is not forbidden by those of [Section 1]." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 335 (1961). Further, Illinois courts—when interpreting claims under the Illinois Antitrust Act—are tasked with looking to federal courts' construction of antitrust laws that are substantially similar to those of Illinois. *State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1479-80 (7th Cir. 1991).

Courts have held that Section 3 of the Clayton Act defines liability in terms of a person who makes a sale or contracts for sale, but does not provide for liability of the buyer. *McGuire v. Columbia Broad Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968); *see Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985) (finding a buyer liable under Section 1 of the Sherman Act "'would undermine the principles of competition the antitrust laws were designed to secure'")(citing *Dunn& Mavis, Inc. v. Nu-Car Driveway, Inc.*, 691 F. 2d 241, 244 (6th Cir. 1982)).

More on point is *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407 (D.D.C. 1988). In that case, defendant Red Cross entered into a two-year exclusive agreement with defendant Abbott Laboratories to supply equipment used to screen donated blood for transmissible diseases, including hepatitis, and the HTLV antibody (AIDS). *Id*. at 410.  Plaintiff Genetic Systems claimed that this agreement effectively froze the plaintiff out of the market for blood test equipment and jeopardized the company's ability to survive. *Id*. at 412. Plaintiff filed suit against Red Cross and Abbott alleging violations of Section 1 of the Sherman Act and Section 3 of the Clayton Act. *Id*. at 413. The district court dismissed the exclusive dealing claims against the buyer Red Cross. *Id.* at 414. Specifically, the district court derived "from the plain language of the statute, the relevant legislative history, and the observations of commentators" that Section 3 of the Clayton Act does not impose any liability on purchasers or buyers for exclusive dealing contracts. *Id.* at 414 (citing *McGuire v. Columbia Broadcasting Sys., Inc.*, 399 F. 2d 902 (9th Cir. 1968); *see also* J. von Kalinowski, *Antitrust Laws and Trade Regulation*, Section 12.02(3) (1988). Further, the district court determined that this conclusion to not impose liability on the buyer "is consistent with the fundamental antitrust concept that the alleged sins of the sellers should not be visited on buyers because of the risk of chilling competition." *Id.* at 415. Plaintiff nevertheless alleged that the defendant acted as more than solely a purchaser, and entered into "active collaboration" in "knowingly join[ing]" in the exclusionary contract. *Id.* However, the district court determined that the plaintiff's attempt to fit the "square conduct" of the defendant into the "round hole of Section 3 [of the Clayton Act] cannot succeed." *Id.*

Here we find nearly identical facts to those addressed by the Court in *Genetic Sys.* BCBSI contends that exclusive dealing claims under Section 3 of the Clayton Act—and thus section 1 of the Sherman Act and Section 3(4) of the Illinois Antitrust Act—may not be brought against the buyer of the at-issue service (Doc. 60). MHC admits that BCBSI is the buyer/purchaser of these

outpatient surgical services.  Further, MHC does not refute that Section 3 does not impose liability to buyers or purchasers (Doc. 72, p. 4). Instead, Plaintiff argues that "[i]n the exceptional case where the buyer has actively (and aggressively) promoted the exclusive arrangement, in close collaboration with the seller, the buyer has 'partaken of and promoted the sins' and should, therefore, be liable under Section 1." *Id.* (p. 5).

MHC fails, as did the plaintiff in *Genetic Sys.*, to direct the Court's attention to any case that has construed Section 3 of the Clayton Act to cover "the sins of the purchaser or buyer". Instead, like the plaintiff in *Genetic Sys.*, MHC urges the Court to extend liability because BCBSI has "actively (and aggressively) promoted the exclusive arrangement." However, the Court cannot simply ignore the above-referenced case law.

This Court finds that MHC's claims against BCBSI for violations of Section 1 of the Sherman Act—as well as Section 3(4) of the Illinois Antitrust Act—cannot stand. Thus, BCBSI's Motion to Dismiss Counts II and IV of Plaintiff's Second Amended Complaint is **GRANTED** with prejudice. Given that all counts against BCBSI are dismissed, BCBSI's Motion to Strike (Doc. 61) is **DENIED as MOOT.**

### SIH's Motion to Dismiss

MHC alleges three distinct causes of action against SIH in violation of federal and state antitrust law: Count I – exclusive dealing claims against SIH in violation of Section 1 of the Sherman Act (15 U.S.C. § 1); Count III – exclusive dealing against SIH in violation of the Illinois Antitrust Act (740 ILCS 10/3); Count V – tying against SIH in violation of Section 1of the Sherman Act (15 U.S.C. § 1); Count VI – tying against SIH in violation of the Illinois Antitrust Act (740 ILCS 10/3); and Count VII – monopolization against SIH in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

SIH moves to dismiss MHC's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, SIH contends that (1) MHC's tying claim under § 1 One of the Sherman Act and the Illinois Antitrust Act fails to allege facts supporting Plaintiff's claims that SIH forced or coerced BCBSI to contract with SIH for outpatient surgery services as a condition of contract for inpatient hospital services; (2) MHC's exclusive dealing claim under the § 1 of the Sherman Act and the Illinois Antitrust Act fails to allege that the exclusive contract between SIH and BCBSI foreclosed MHC from the alleged market for the sale of inpatient and outpatient surgery services to all potential buyers, including commercial payors, government payors, and patients who self-pay; and (3) MHC fails to allege that SIH acquired or maintained its allegedly dominant position in the alleged relevant markets through anticompetitive conduct. (Doc. 62, p. 2).

In cases involving exclusive dealing, courts have determined that an exclusive-dealing arrangement does not violate antitrust laws unless the court believes that performance of the contract will preclude competition in a "substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). In *Tampa Elec. Co. v. Nashville Coal Co.,* the Supreme Court set forth factors to consider in order to determine what constitutes a "substantial share" including: (1) "the line of commerce involved must be determined, where it is in controversy, on the basis of the facts peculiar to the case"; (2) "the area of effective competition in the known line of commerce must be charted by careful selection of the market area in which the seller operates, and to which the purchaser can practicably turn for supplies"; and (3) the competition foreclosed by the contract must be found to constitute a substantial share of the relevant market." *Id.* at 327-28. Foreclosure exists when there is a significant limitation on other's ability to enter or remain in the market. *Id*. In order to further determine substantiality, courts have weighed the probable effect the contract will have on the

relevant area of effective competition, taking into account the relative strength of the parties, the proportionate volume of commerce in relation to the total volume of commerce in the relevant market area, and the immediate and future effects which pre-emption of the share of the market might have on effective competition. *Id.* at 329. However, a mere showing that the alleged contract itself involves a substantial amount of dollars is "ordinarily of little consequence*." Id.*

SIH does not dispute the existence of the first two factors set forth in *Tampa Elec. Co*. Instead, it argues that MHC fails to allege an exclusive dealing claim because it did not properly plead substantial foreclosure from the relevant market. (Doc. 63, p. 7). In particular, SIH contends that MHC only alleges foreclosure from 30 percent of patients in the relevant geographic market, leaving 70 percent for access by MHC. *Id.* (p. 8). Further, SIH argues that this 30 percent is an overstatement, and even if true, is not substantial enough to constitute foreclosure according to case law. *See id.* MHC counters that it is not the percentage of the patients that is at issue, but the revenue generated. (Doc. 71, p. 5). MHC argues that it is foreclosed from the higher reimbursement rates of commercial insurers and cannot make up the difference with the "non-negotiable, typically at or below cost" reimbursements from Medicare, Medicaid and TRICARE. *Id.* (p. 6).

This Court has previously held that a vertical exclusive dealing arrangement, like the one alleged in the current case, is not presumed illegal. (Doc. 57). Thus, the Court determined that the analysis is subject to the Rule of Reason framework. *Id.* Under Rule of Reason analysis (the standard framework):

> The plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect on a given market within a given geographic area. As a threshold matter, a plaintiff must show that the defendant has market power—that is, the ability to raise prices significantly without going out of business—without which the defendant could not cause anticompetitive effects on market pricing. If the plaintiff meets his burden, the defendant can show that the restraint in question actually has a procompetitive effect on balance, while the plaintiff can

11

>dispute this claim or show that the restraint in question is not reasonably
>necessary to achieve the procompetitive objective.

*Agnew*, 683 F.3d at 335-36 .

Taking this into consideration, MHC has sufficiently pled its claims against SIH. MHC has alleged substantial foreclosure in detail and provided substantiation of those contentions. (Doc. 58, p. 29-31, par.'s 81-82). Specifically, MHC has alleged that it has been foreclosed access to payments for both inpatient and outpatient surgical services from all payors (*Id.,* par. 81 (b)(72.3%) & 82 (e)(77.2%)). Further, MHC alleges the market power that SIH wields in the relevant geographic area is substantial. The Second Amended Complaint states that within the relevant geographic area, SIH has a 77% market share for inpatient surgical cases (*Id*., par 81 (h)) and a 76% market share of outpatient surgical cases. *Id*. (p. 30 par. 82 (a)). The complaint further alleges that, as a result of SIH's market power in the relevant product, and geographic market, competitors have been unable to expand. *Id.* (p. 26, par. 76-79). These amounts are well above the 30-40 percent range. As a result, SIH's market power would seem to be a "substantial share" or "significant fraction" of the relevant market. SIH's substantial share of the market power has prevented entry or maintenance in the in-network surgical services market of BCBSI. Accordingly, SIH's Motion to Dismiss Count I and III of MHC's Second Amended Complaint is **DENIED.**

SIH next argues MHC's claims of an illegal tying arrangement alleged in Counts II and IV must be dismissed. An essential characteristic of an invalid tying claim is the "seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), *abrogated on other grounds by Ill. Tool Works, Inc. v. Indep. Ink, Inc*., 547 U.S. 28 (2006). When there is

"forcing" present, competition on the merits in the market for the tied item is improperly restrained, and there is a violation of the Sherman Act. *Id*. The Supreme Court has condemned tying arrangements where the seller has some "market power" to improperly force a purchaser to do something that he normally would not have done in a competitive market. *Id*. at 13. In order to establish the *per se* illegality of a tying arrangement, a plaintiff must demonstrate that (1) the tying arrangement is between two distinct products or services, (2) the defendant has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product, and (3) a not insubstantial amount of interstate commerce is affected." *Reifert v. South Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 316 (7th Cir. 2006).

MHC alleges that SIH has monopoly power in the inpatient surgical services market. MHC alleged that SIH maintained a 75% share of the market for acute care services and used this power to coerce BCBSI to agree to not provide in-network insurance coverage for outpatient surgical services provided by MHC. (Doc. 58, p. 58-59, par. 157 & par. 158). According to MHC, SIH was able to achieve this agreement by granting BCBSI access to discounted rates from SIH for services in exchange for an "agreement to exclude." *Id*. Lastly, MHC argues that BCBSI would not have agreed to this arrangement had SIH not been a "must have" inpatient surgical services hospital. *Id*. (p. 59, par. 161). SIH maintains that despite the use of "coercion" many times throughout the complaint, BCBSI and SIH negotiated the rates and arrangements of the contract. (Doc. 63, p. 10 (citing Doc. 58, par. 20)). According to the SIH, this negotiation refutes MHC's claims of "coercion." *Id*.

MHC has properly alleged an illegal tying arrangement between SIH and BCBSI in violation of the Sherman Act. MHC asserts that because SIH has significant market power in the in- and out- patient services market (72.3% and 76% respectively), MHC agreed to exclude out-of-network outpatient surgical service providers. MHC further asserts that BCBSI agreed to its

13

arrangement with SIH because SIH is a "must have" surgical services provider hospital. According to MHC, SIH coerced BCBSI, and it was not the exercise reasonable and independent business judgment that led BCBSI to agree to the arrangement. Accordingly, SIH's Motion to Dismiss Count V and Count VI is **DENIED**.

Lastly, SIH seeks to dismiss Count VII of Plaintiff's Second Amended Complaint, arguing MHC fails to plead that SIH acquired or maintained an alleged monopolistic position unlawfully. Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it unlawful for a firm to "monopolize." To prove monopolization under § 2, a plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful . . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

The Supreme Court has defined monopoly power as "the power to control prices or exclude competition*." United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). A plaintiff may establish monopoly power by evidence that a firm has profitably raised prices above the competitive level. *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001). In the absence of direct proof, market power may be derived from circumstantial evidence, including "a firm's possession of a dominant share of a relevant market that is protected by entry barriers." *Id.* Without countervailing evidence of the possibility of competition from new entrants, evidence of a dominant market share is sufficient to show monopoly power. *Id.* However, possessing monopoly power does not by itself constitute monopolization.. *Grinnell Corp.*, 384 U.S. at 570-71. Rather § 2 of the Sherman Act makes it unlawful to maintain monopoly power through exclusionary conduct. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko*, *LLP*, 540 U.S. 398, 407 (2004).

The test for exclusionary conduct is set forth in *United States. v. Microsoft Corp.* First, a plaintiff must prove that a monopolist's conduct has had an "anticompetitive effect." *Microsoft*, 253 F.3d at 58. Second, if a plaintiff is successful in showing an anticompetitive effect, the alleged monopolist may proffer a non-pretextual "procompetitive justification" for its conduct. *Id.* at 59. Lastly, if the alleged monopolist's proffering of procompetitive justification is unrebutted, the plaintiff "must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit." *Id.*

Here, MHC has pled sufficient facts to infer market power due to SIH's charging of "supracompetitve prices" for the sustained period, without consequence. *See* Doc. 58, p. 42, par.'s 116-17. Additionally, market-share data, provided by MHC, allows an inference of SIH's monopoly power. *See id.* (p. 29-30).

MHC also alleges that SIH has willfully maintained its monopoly through its actions of exclusive dealing and tying arrangements in violation of § 2. (Doc. 58, p. 66 par. 178). In order to show an anticompetitive effect, MHC alleges significant foreclosure from the most profitable health-insurance contracts and thus, foreclosure from the ability to compete adequately in the market. *See id.* (par. 107). MHC maintains that as a result of this foreclosure, it and others cannot remain viable and competitive with SIH. *Id.* (par. 179) and that this arrangement has prevented significant competition and has harmed consumers in the relevant geographic market. *See id.* (par. 179, 180); *see also Microsoft Corp.*, 253 F.3d at 58 ("[The anticompetitive effect] must harm the competitive process and thereby harm consumers."). MHC claims consumers have suffered direct harm through increased prices for patients and employers, suppressing price competition, decreasing the number of options available, and decreasing the overall quality of care. *Id.* These alleged facts allow the inference that the exclusive dealing and tying

arrangements had an anticompetitive effect on the relevant markets. Accordingly, SIH's Motion to Dismiss Count VII of MHC's Second Amended Complaint is **DENIED**.

## Conclusion

Defendant BCBSI's Motion to Dismiss Counts II and IV of Plaintiff's Second Amended Complaint (Doc. 59) is **GRANTED with prejudice**. The Court **DENIES** Defendant BCBSI's Motion to Strike (Doc. 61) as **MOOT**.

Defendant SIH's Motion to Dismiss Counts I, III, V, VI, and VII of Plaintiff's Second Amended Complaint (Doc. 62) is **DENIED in its entirety.**

**IT IS SO ORDERED.**

**DATED:** May 29, 2015

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
