### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS
### EAST SAINT LOUIS DIVISION

| | |
|---|---|
| Marion HealthCare, LLC, ) | |
| ) | Case No. 12-CV-00871 |
| Plaintiff, ) | |
| vs. ) | Magistrate Judge Stephen C. Williams |
| ) | |
| Southern Illinois Healthcare, ) | |
| ) | |
| Defendant. ) | |

**SOUTHERN ILLINOIS HEALTHCARE'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Redacted in accordance with Judge Yandle's Order in this matter
dated October 2, 2015 (Dkt. 113)

Terrence J. Dee, P.C.
Stephen Y. Wu
Michelle S. Lowery
Katharine M. O'Connor
Kaitlin P. Sheehan
**McDermott Will & Emery LLP**
444 West Lake Street
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700

James B. Camden
**McDermott Will & Emery LLP**
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: (202) 756-8255
Fax: (202) 478-2986

*Attorneys for Defendant Southern Illinois
Healthcare Services*

The Court should grant Defendant Southern Illinois Healthcare Services' ("SIH") motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff Marion Healthcare, LLC's ("MHC") Third Amended Complaint ("TAC") does not and cannot allege plausible claims for time periods when SIH's agreements with BlueCross BlueShield of Illinois ("BCBSIL") and Health Alliance Medical Plans ("Health Alliance") contained no exclusivity provisions impacting surgery centers. During those time periods, the agreements did not restrict those payors from contracting with any surgery center and therefore could not have injured MHC.[1]

Specifically, SIH did not enter into contracts with BCBSIL that included the allegedly exclusive language until January 1, 2007. Before then, those contracts on their face did not prevent BCBSIL from contracting with any surgery center provider, including MHC. Similarly, SIH entered into a contract with Health Alliance that contained the allegedly exclusive language during only two periods: from December 1, 2003-November 30, 2005, and June 1, 2007-May 31, 2010. Accordingly, that contract did not prevent Health Alliance from contracting MHC before December 1, 2003; between December 1, 2005 and May 31, 2007; and after June 1, 2010. The plain language of SIH's contracts with BCBSIL and Health Alliance defeat MHC's allegations during those time periods.

I. **BACKGROUND**

    A. **The Parties.**

MHC is an ambulatory surgery center located in Marion, Illinois that provides certain outpatient surgery services. (TAC ¶ 76, attached hereto as Exhibit A.) SIH is a nonprofit three-

---

[1] For purposes of this Motion for Partial Judgment on the Pleadings ("Motion") only, SIH accepts as true the allegation that the limited exclusivity language in these agreements could form the basis for MHC's claims. Even during the time periods when the exclusivity language existed, however, the contracts are not actionable as a matter of law, and SIH reserves the right to challenge all claims based on those provisions.

hospital system providing 24-hour medical care, including general acute care, emergency, and specialty services, for patients in Southern Illinois. (TAC ¶¶ 69, 72-73.) The three hospitals in the SIH system are Memorial Hospital of Carbondale, Herrin Hospital, and St. Joseph Memorial Hospital in Murphysboro. (*Id.*)

B. **MHC's Third Amended Complaint.**

The TAC claims that SIH violated Sections 1 and 2 of the Sherman Act "through exclusionary agreements" that allegedly prevented MHC from obtaining commercial payor contracts. (TAC at 1.) Each of the counts against SIH (exclusive dealing, tying, and monopolization) rely on the existence of SIH's allegedly exclusive payor contracts preventing MHC from contracting with certain commercial payors. (TAC at ¶ 6; *see also* TAC ¶¶ 90, 94.) MHC's claims are not limited in time; instead MHC alleges exclusivity—and damages from that exclusivity—going back to "at least as early as 2003" through the present. (TAC ¶¶ 76, 78-79.)

C. **SIH's Allegedly Exclusionary Agreements with BCBSIL and Health Alliance.**

1. SIH's Agreements with BCBSIL.

SIH has two sets of contracts with BCBSIL—Participating Provider Option contracts (the "PPO Agreement(s)") and Plan contracts (the "Plan Agreement(s)")—for each of its three hospitals. Therefore, six agreements govern the relationship between SIH's hospitals and BCBSIL. These agreements were signed in 2003 and became effective as of January 1, 2004 (the "2003 BCBSIL Agreements").[2] They are still in effect today.

---

[2] The 2003 PPO Agreements for Herrin Hospital, Memorial Hospital of Carbondale, and St. Joseph Memorial Hospital are attached as **Exhibits B, C, and D**, respectively. The 2003 Plan Agreements for Herrin Hospital, Memorial Hospital of Carbondale, and St. Joseph Memorial Hospital are attached as **Exhibits E, F, and G**, respectively. SIH had contracts with BCBSIL dating back to 1998. SIH will provide these earlier contracts upon the Court's request.

Under the 2003 BCBSIL Agreements, SIH agreed to specific reimbursement rates for each of its hospitals in exchange for being an in-network provider to BCBSIL members. The 2003 BCBSIL Agreements did not contain any language related to BCBSIL's ability to contract with outpatient surgery centers.

The 2003 PPO Agreements (but not the 2003 Plan Agreements) contain limited exclusivity language with respect to the Community Participating Option or "CPO." A CPO is "a Blue Cross Community Health plan associated by name with the participating community provider(s)." (Exhibits B-D, Art. I.N.) The CPO provision of the 2003 PPO Agreements states:

> Blue Cross agrees not to enter into a CPO agreement, during the term of this Agreement *with another Hospital* in the Southern Illinois counties of Jackson, Williamson, Franklin, Saline, Johnson, Union, Pulaski, Alexander or Perry (with the exception of Pinckneyville Community Hospital) without the express written consent of the Hospital.

(Exhibits B-D, Art. III.G (emphasis added).) By its plain language, this clause applies to hospitals, not MHC or other ambulatory surgery centers, and, therefore, had no effect on MHC.

Effective January 1, 2007, SIH and BCBSIL amended each of the six 2003 agreements (the "2007 BCBSIL Amendments"),[3] by lowering the reimbursement rates[4] and adding the following language:

---

[3] The 2007 PPO Amendments for Herrin Hospital, Memorial Hospital of Carbondale, and St. Joseph Memorial Hospital are attached as **Exhibits H, I, and J**, respectively. The 2007 Plan Amendments for Herrin Hospital, Memorial Hospital of Carbondale, and St. Joseph Memorial Hospital are attached as **Exhibits K, L, and M**, respectively.

[4] Under the 2003 BCBSIL Agreements, SIH was reimbursed for inpatient services ▮▮▮, and for outpatient services at ▮▮▮. (Exhibits B-D, Ex. B.I-II; Exhibits E-G, Art. V.) Under the 2007 BCBSIL Amendments, SIH no longer was reimbursed for inpatient services ▮▮▮. Instead, BCBSIL paid ▮▮▮. (Exhibits H-J, Ex. B.I; Exhibits K-M, Art. V.) The ▮▮▮ (Exhibits H-J, Ex. B.II; Exhibits K-M, Art. V.) Thus, BCBSIL received a larger discount and SIH received a lower reimbursement rate for outpatient services.

4

> Effective January 1, 2007 and during the term of this Agreement, Blue Cross agrees not to enter into any new agreements, either directly or indirectly, for the provision of health services with any institutional provider (non-hospitals) other than SIH-affiliated or approved providers located in or doing business in the service area outlined in Article III Section B [of the PPO Hospital Contract] and defined by SIH except for Covered Services not available through Hospital or through affiliated or owned provider groups. Either party may at any time with at least sixty (60) days written notice, request to renegotiate these terms. SIH and Blue Cross agree that a request to renegotiate will not be refused and both parties will make a good faith effort to reach mutually agreeable terms. In the event an agreement is not reached the current terms and conditions will remain in effect or either party may exercise its discretionary right to terminate this agreement in accordance with Article XII (A).

(Exhibits H-J, Ex. B.IV; *see also* Exhibits K-M, Art. V.2 (the "60-Day Renegotiation Clause").) By its terms, this provision requires BCBSIL to give SIH 60 days written notice of its request to renegotiate contract terms if BCBSIL decides it wants to add a new institutional provider (non-hospital) to its provider network. This provision remains in effect today.[5]

        2.      <u>SIH's Agreements with Health Alliance.</u>

SIH has one hospital agreement with Health Alliance, which applies to all of its facilities ("Health Alliance Agreement," attached as **Exhibit N**). As with the BCBSIL agreements, SIH agreed to accept certain reimbursement rates for Health Alliance enrollees in exchange for being a participating provider in Health Alliance's network. The Health Alliance Agreement had an initial term of July 1, 2001 through June 30, 2002 and automatically renewed each year unless terminated 90 days prior to expiration. (*Id.*, Art. 15.1.) The Health Alliance Agreement does not contain any exclusivity provision.[6]

---

[5] The PPO agreements each were amended six more times after the 2007 BCBSIL Amendments. These amendments do not alter the limited exclusivity language. With one exception, the Plan agreements were not amended after the 2007 BCBSIL Amendments, and have continued to renew automatically on a year-to-year basis. SIH can provide these amendments upon the Court's request.

[6] The Health Alliance Agreement has been amended thirteen times. The parties also executed one ancillary letter agreement. SIH can provide the amendments not attached to this memorandum upon the Court's request.

Between December 1, 2003 and November 30, 2005, SIH amended the agreement with Health Alliance, lowering its reimbursement rates (*Compare* Exhibit N, Schedule A-1, *with* First Amendment to Health Alliance Agreement, attached as **Exhibit O**, Schedule A-1) and adding the following language: "Health Alliance agrees that the Marion Healthcare Surgery Center located in Marion, Illinois will not be offered a Health Alliance Participating Provider Agreement for a two (2) year period beginning December 1, 2003." (Exhibit O, Art. 3; Second Amendment to Health Alliance Agreement, attached as **Exhibit P**, Art. 3.) The limited exclusivity provision expired by its own terms on November 30, 2005 and was not renewed. From December 1, 2005 through May 31, 2007, SIH's agreement with Health Alliance did not contain any exclusivity provisions.

Effective June 1, 2007, the parties added the following language:

> For a three (3) year period beginning June 1, 2007, Health Alliance agrees not to enter into new Participating Provider agreements . . . with any new outpatient surgery centers or new outpatient imaging centers located in or doing business in Jackson County or Williamson County other than SIH-affiliated or approved providers . . . except when such Covered Services are not available through SIH-affiliated or SIH-owned providers.

(Eighth Amendment to Health Alliance Agreement, attached as **Exhibit Q**, Art. 3.) This provision expired by its own terms on May 31, 2010 and was not renewed. From June 1, 2010 to present, SIH's agreement with Health Alliance has not contained any exclusivity provisions.

D.   **The Periods of Limited Exclusivity Language.**

The limited exclusivity language MHC complains of existed during only certain periods of time. Even accepting MHC's allegations as true that the contracts could form the basis for its claims against SIH, no contractual provisions existed that could have injured MHC during the following times:

| Payor(s) | Time Period |
|---|---|
| BCBSIL | Prior to January 1, 2007 |
| Health Alliance | December 1, 2005-May 31, 2007 |
| Health Alliance | June 1, 2010-present |

## II. LEGAL STANDARD

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b).[7] *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). To survive, the factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although a court must accept all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000), it is not obligated to "ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law," *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Contracts that are central to a party's claim routinely are considered as part of Rule 12(c) and Rule 12(b)(6) motions without converting the motion to one for summary judgment. *Gillis v. Meisner*, 525 Fed. App'x 506, 508-09 (7th Cir. 2013); *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993); *Wilkins*

---

[7] This Motion seeks dismissal for lack of Article III standing under the same grounds as a motion pursuant to 12(b)(1), in addition to seeking dismissal for lack of antitrust injury under Section 4 of the Clayton Act and for failure to plead a plausible cause of action.

*Buick, Inc. v. Mazda Motor of Am., Inc.*, Case No. 14-.cv-2908, 2014 WL 4435878, at *1 (N.D. Ill. Sept. 9, 2014) ("Generally, a written instrument attached to or even referred to in a complaint is part of the pleadings for all purposes."). A contract is central to a complaint where the complaint refers to the contract and relies on the contract's terms to determine a party's rights and obligations at issue in the case. *Wright*, 29 F.3d at 1248.

III. **ARGUMENT**

    A. **MHC Cannot Plead Injury or Causation Based on Exclusive Contracts That Were Not Exclusive.**

MHC cannot allege harm from an exclusive contract during times when no such contract existed. Said differently, MHC lacks Article III standing and Clayton Act antitrust injury for the time periods when no exclusivity provisions existed, because there can be no causal link between the contracts and any alleged lost business or inability to compete. And MHC must make plausible allegations of causation and injury-in-fact to survive this Rule 12(c) motion. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Article III requires a plaintiff's complaint to establish three elements: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) causation of that injury by the defendant's conduct; and (3) redressability) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 395 (7th Cir. 1993) (Section 4 of the Clayton Act requires a private plaintiff to demonstrate that "the violation was the cause-in-fact of the injury: that 'but-for' the violation, the injury would not have occurred"); *see also Serfecz v. Jewel Food Stores*, 67 F.3d 591, 595-96 (7th Cir. 1995) (proximate cause is an element of Clayton Act Section 4).

The Seventh Circuit has rejected a case with similar facts. In *Kochert*, the plaintiff, an anesthesiologist, alleged that a hospital system's exclusive contract with a competing anesthesiologist group constituted unlawful tying, an illegal "group boycott," and a conspiracy to monopolize. *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 712-14 (7th Cir. 2006). The hospital entered the exclusive arrangement in 2001. *Id.* at 712. But one year prior, the plaintiff had stopped practicing anesthesiology altogether. *Id.* at 713. The court held that, under these facts, the plaintiff could not allege antitrust injury, because the agreement could not have caused the alleged harm:

> Put another way, was this act [the 2001 agreement] "the cause-in-fact of the injury," or can it be said that "'but for' the violation, the injury would not have occurred"? . . . [T]he answer to all of these questions is "no." [Defendant's] anticompetitive behavior in 2001 did not injure [plaintiff's] anesthesiology practice because it was nonexistent by this point.

*Id.* at 718 (internal citations omitted).

Here, MHC's claims relating to SIH's agreement with BCBSIL are barred as a matter of law before January 1, 2007, when BCBSIL and SIH entered their very first agreement containing the alleged limited exclusivity language on which MHC bases its case.[8] Its pre-2007 claims must fail under the requirements of Article III and Clayton Act Section 4, because MHC has not and cannot plead antitrust injury, causation, or injury-in-fact during that time period based on SIH's contracts with BCBSIL. *Silha*, 807 F.3d at 173-75 (affirming dismissal under *Twombly* standard for failure to plead injury-in-fact element of Article III standing); *Kochert*, 463 F.3d at

---

[8] By its text, the CPO provision in the 2003 PPO Agreements applies only to hospitals, and not to ambulatory surgery centers like MHC. (Exhibits B-D, Art.III.G.) "Hospital" is defined in the Illinois Hospital Licensing Act, 210 ILCS 85/3, and "means any institution . . . devoted primarily to the maintenance and operation of facilities for the diagnosis and treatment or care of 2 or more unrelated persons ***admitted for overnight stay or longer*** in order to obtain medical . . . care of illness, disease, injury, infirmity, or deformity." 210 ILCS 85/3(A) (emphasis added). An "ambulatory surgical treatment center," on the other hand, "shall not provide beds or other accommodations for the overnight stay of patients." 210 ILCS 5/3(A). MHC is an ambulatory surgical treatment center. *See* TAC ¶¶ 75(e)-76, 86.

718 (affirming dismissal for lack of antitrust injury due to plaintiff's failure to demonstrate but-for causation); *Greater Rockford Energy & Tech. Corp.*, 998 F.2d at 404 (same).

For the same reasons, MHC's claims relating to SIH's agreement with Health Alliance are barred as a matter of law between December 1, 2005 and May 31, 2007, and after June 1, 2010. During those times, SIH's agreement with Health Alliance did not contain any limited exclusivity language that could have impacted MHC's ability to seek its own contract with Health Alliance. *Silha*, 807 F.3d at 173-75; *Kochert*, 463 F.3d at 718; *Greater Rockford Energy & Tech. Corp.*, 998 F.2d at 404.

### B. Non-Exclusive Contracts Defeat Each of MHC's Sherman Act Claims During Certain Periods.

MHC also cannot plead prima facie claims for exclusive dealing, tying, or monopolization based on exclusive contracts when those contracts cannot have been exclusive. MHC's claims based on the BCBSIL contracts prior to January 1, 2007 and for the Health Alliance contract between December 1, 2005 and May 31, 2007, and after June 1, 2010, should be dismissed because the language of the contracts (or lack thereof) *contradicts* MHC's allegations and defeats an element of each claim. *See, e.g.*, *Gillis*, 525 Fed. App'x at 508-09 (affirming dismissal of claim under Rule 12(c) where settlement agreement between the parties undermined plaintiff's allegations); *Wilkins Buick, Inc.*, 2104 WL 4435878, at *2-4 (dismissing complaint with prejudice under Rule 12(c) because plain language of agreement defeated plaintiff's claims); *Rudolph v. IBM Corp.*, Case No. 09-cv-428, 2009 WL 2632195, at *4 (N.D. Ill. Aug. 21, 2009) (same); *see also Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754, 759 (7th Cir. 2002) (affirming dismissal where plaintiff relied on document to form basis of claim, but document negated the claim).

First, for exclusive dealing, MHC alleges that exclusive contracts with BCBSIL and Health Alliance foreclosed MHC from competing in the marketplace because it could not contract with those payors. (TAC ¶ 97 ("SIH has, through its exclusionary arrangements, substantially foreclosed Marion HealthCare . . . from commercial health-insurance contracts for outpatient surgical services."); *see also id.* ¶¶ 104, 134-35, 137-38.) The non-exclusive contracts with BCBSIL and Health Alliance make it impossible for MHC to state a claim for exclusive dealing, which, by its very terms, requires MHC to plausibly allege the existence of an exclusive contract. *Gillis*, 525 Fed. App'x at 508-09; *Wilkins Buick, Inc.*, 2104 WL 4435878, at *2-4.

Turning to tying, MHC alleges SIH entered contracts tying inpatient hospital services to outpatient surgical services on an *exclusive* basis. (TAC ¶147.) The BCBSIL and Health Alliance contracts did not contain any exclusivity language that could apply to MHC during the time periods covered by this Motion; therefore, MHC cannot allege the existence of any tie. *Gillis*, 525 Fed. App'x at 508-09; *Wilkins Buick, Inc.*, 2104 WL 4435878, at *2-4.[9]

Finally, MHC's monopolization claim relies on SIH's agreements with payors containing exclusivity language as the means by which SIH enhanced its supposed monopoly power. *E.g.*, TAC ¶ 94; *see also Olympia Equip. Leasing Co. v. W. Union Telegraph Co.*, 797 F.2d 370, 373 (7th Cir. 1986) (plaintiff must show not only that defendant possessed monopoly power, but also that defendant enhanced monopoly power through anticompetitive means). MHC cannot allege plausibly that SIH anticompetitively maintained or acquired monopoly power through exclusive contracts during the periods when the BCBSIL and Health Alliance contracts did not contain exclusive language. *See, e.g.*, *Gillis*, 525 Fed. App'x at 508-09; *Wilkins Buick, Inc.*, 2104 WL 4435878, at *2-4.

---

[9] MHC's claim for exclusive dealing and tying claims under the Illinois Antitrust Act (Counts II and IV) fail for the same reasons as its Sherman Act Section 1 claims. 740 ILCS 10/11; *Collins v. Assoc. Pathologists, Ltd.*, 844 F.2d 473, 480-81 (7th Cir. 1988).

11

None of these claims can stand for the time periods in which there was no exclusivity language because exclusivity language is needed to satisfy the elements of the claims as alleged. Thus, the Court should dismiss these claims under Rule 12(c) to the extent they rely on exclusivity provisions in SIH's agreements with BCBSIL and Health Alliance during the time periods when the exclusivity language it complains of did not exist. *Gillis*, 525 Fed. App'x at 508-09; *Wilkins Buick, Inc.*, 2104 WL 4435878, at *2-4; *Rudolph*, 2009 WL 2632195, at *4; *see also Thompson*, 300 F.3d at 754.

IV. **CONCLUSION**

SIH respectfully requests the following relief:

(1) that the Court bar each of MHC's claims based on SIH's agreements with BCBSIL during the time period when the agreements did not contain any exclusivity language that could apply to MHC, before January 1, 2007; and

(2) that the Court bar each of MHC's claims based on SIH's agreement with Health Alliance during the time periods when the agreement did not contain any exclusivity language: (a) December 31, 2005 through May 31, 2007; and (b) June 1, 2010 to the present.

Dated: May 11, 2017                              /s/ Stephen Y. Wu
                                                 Terrence J. Dee, P.C.
                                                 Stephen Y. Wu
                                                 Michelle S. Lowery
                                                 Katharine M. O'Connor
                                                 Kaitlin P. Sheehan
                                                 **MCDERMOTT WILL & EMERY LLP**
                                                 444 West Lake Street
                                                 Chicago, IL 60606
                                                 Telephone:  (312) 372-2000
                                                 Fax:  (312) 984-7700

                                                 James B. Camden
                                                 **MCDERMOTT WILL & EMERY LLP**
                                                 500 North Capitol Street, N.W.
                                                 Washington, DC 20001
                                                 Telephone: (202) 756-8255
                                                 Fax: (202) 478-2986

                                                 *Attorneys for Defendant Southern Illinois Healthcare Services*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2017, I served this Memorandum in Support of Its Motion for Partial Judgment on the Pleadings on all counsel of record via electronic filing through the Court's CM/ECF system.

      /s/Stephen Y. Wu
Terrence J. Dee, P.C.
Stephen Y. Wu
Michelle S. Lowery
Katharine M. O'Connor
Kaitlin P. Sheehan
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700

James B. Camden
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, N.W.
Washington, DC 20001
Telephone: (202) 756-8255
Fax: (202) 478-2986

*Attorneys for Defendant Southern Illinois Healthcare Services*

DM_US 81766711-1.054956.0031