IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARION HEALTHCARE, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 12-cv-871-SCW |
| ) | |
| **SOUTHERN ILLINOIS HEALTHCARE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

I. INTRODUCTION

Plaintiff Marion Healthcare ("MHC") brought the present antitrust action against Southern Illinois Healthcare ("SIH") pursuant to sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 & 2), as well as, provisions of the Illinois Antitrust Act (740 ILCS 10/1, et seq.). MHC—an outpatient surgery center—alleges that SIH—a large hospital system in southern Illinois—illegally suppressed competition for outpatient surgical services in a specified market in southern Illinois through exclusionary agreements with certain commercial health insurers.

On October 22, 2012, MHC filed its First Amended Complaint, naming SIH and Health Care Service Corporation, d/b/a BlueCross and BlueShield of Illinois ("BCBS") as defendants. (Doc. 13). Some of the claims raised were dismissed with prejudice by Judge Herndon on August 26, 2013. (Doc. 57). Shortly thereafter, MHC filed its

Second Amended Complaint, (Doc. 58), and this matter was subsequently transferred to Judge Yandle. In ruling on motions to dismiss filed by both defendants, Judge Yandle dismissed all claims against BCBS with prejudice, and denied SIH's motion. (Doc. 16). On February 17, 2016, MHC filed its Third Amended Complaint, which is the current, operative complaint, naming only SIH as a defendant. (Doc. 127). Subsequent to the filing of that complaint, the parties consented to the disposition of this matter before the undersigned.

This matter is before the Court on SIH's Motion for Partial Judgment on the Pleadings (Doc. 273). As the basis for the motion, SIH indicates that written contracts containing exclusivity provisions with BCBS and another payor named Health Alliance only existed during certain time periods. SIH argues that MHC cannot recover on its antitrust claims for the time periods in which SIH did not have in effect written contracts with exclusivity provisions. Among its arguments raised in response, MHC asserts that expert discovery has demonstrated evidence that SIH's exclusionary agreements continued on a "constructive" or de facto basis during times in which there were no explicit and written exclusionary agreements in effect. Since there appear to be issues of fact as to whether SIH continued to have de facto exclusionary agreements with BCBS and Health Alliance even when no such written agreements existed, and since the Third Amended Complaint adequately placed SIH on notice of such a claim, SIH's Motion for Partial Judgment on the Pleadings is **DENIED**.

II.     B<small>ACKGROUND AND</small> A<small>LLEGATIONS</small>

    a. **The Third Amended Complaint**

According to the allegations raised in the Third Amended Complaint, MHC is a multi-specialty freestanding outpatient surgery center offering outpatient surgical services to residents of Williamson and Jackson Counties, as well as, the local surrounding area. SIH is a nonprofit hospital system which owns three hospitals in Jackson and Williamson Counties: Memorial Hospital of Carbondale, Herrin Hospital, and St. Joseph Memorial Hospital. MHC alleges that the geographic market relevant to its suit comprises Williamson and Jackson Counties, as well as, the surrounding area.

According to MHC, in this geographic market, SIH has approximately a 77% share of the market for inpatient hospital services reimbursed by commercial insurers and a greater than 85.3% share of the market for outpatient services reimbursed by commercial insurers. MHC also alleges that SIH has roughly a 72.3% share of the market for inpatient hospital admissions and 75% market share for inpatient days reimbursed by all payors. It has a greater than 77.2% share of the market for outpatient services reimbursed by all payors. According to MHC, most all health insurance payors in the relevant market consider SIH a "must-have" hospital system due to the fact that it is easily the largest hospital in the region and the only local provider of essential services.

MHC alleges that SIH has maintained a monopoly power in the relevant geographic market by entering into exclusionary contracts with commercial health

insurers such as BCBS, Health Alliance, and others. MHC has attached some of the exclusivity agreements to the Third Amended Complaint. In referring to an Illinois Department of Insurance report, MHC alleges that in 2010, BCBS received 47.46% of all premiums for insurance companies selling group health insurance plans in the entire state, while the next closest insurer had a market share of 6.46%. MHC also alleges that Health Alliance is the largest health plan in downstate Illinois.

MHC alleges that the exclusionary contracts effectively prevent insurers from contracting with other health-care facilities competing with SIH, including MHC. In the fall of 2003, MHC applied to become a network provider for BCBS. The application, however, was denied. At various times between the fall of 2003 and October 2011, MHC made renewed requests to join BCBS's provider network; however, it was declined. Similar requests to join Health Alliance's network were also declined.

In October 2011, MHC first learned of SIH's exclusive contract with BCBS. Quoting from a contract provision attached to the Third Amended Complaint, MHC alleges that as early as 2003, SIH has entered into an exclusivity agreement with BCBS wherein

> Blue Cross agrees not to enter into a CPO [Community Participating Option] agreement…with another hospital in the Southern Illinois counties of Jackson, Williamson, Franklin, Saline, Johnson, Union, Pulaski, Alexander, or Perry without the express written consent of [SIH].

(Doc. 127, p. 29; Doc. 127-9, p. 2). According to MHC, SIH has also entered into an exclusivity agreement with Health Alliance dating back to 2003.

MHC alleges that due to SIH's exclusionary contracts, most patients must pay

substantially more for its outpatient services as compared to having a procedure performed at an independent, non-SIH, outpatient facility. The exclusionary contracts, according to MHC, effectively prevent members of the public from accessing full service outpatient surgical services in a cost efficient manner. MHC alleges that SIH has (1) delayed and prevented the expansion and entry of SIH's competitors, which has likely lead to higher healthcare costs and higher insurance premiums; (2) limited price competition for price sensitive patients, likely leading to higher healthcare costs for such patients; and (3) reduced quality competition between SIH and its competitors.

MHC alleges SIH has violated both the Sherman Antitrust Act and Illinois state antitrust law. First, MHC alleges that SIH has entered into exclusive dealing contracts that violate section 1 of the Sherman Act, **15 U.S.C. § 1**, and the Illinois Antitrust Act, **740 ILCS § 10/3.** Second, MHC alleges that SIH's exclusive contracts constitute illegal tying arrangements in violation of section 1 of the Sherman Act and the Illinois Antitrust Act. It alleges that SIH illegally coerced BCBS, Health Alliance, and other payors into entering into agreements that tied discounts for coverage of SIH's inpatient hospital services with exclusive contracting for in-network coverage of SIH's outpatient surgical services, which prohibited the payors from contracting for in-network coverage with competing independent outpatient surgery centers in the region.

Finally, SIH is also alleged to have violated section 2 of the Sherman Act, **15 U.S.C. § 2**. MHC alleges that SIH has a monopoly in the market for outpatient surgical services in the relevant geographic market, regardless of whether the market is defined

as being reimbursed by any payors[1], or merely by commercial insurers. It is alleged that SIH acted to willfully maintain and extend its monopoly power in the market for outpatient surgical services by using its market power to coerce payors into accepting exclusivity provisions with respect to outpatient services in contracts, which were not wanted by the payors, in exchange for discounted inpatient services, which the payors required.

### b. SIH's Motion for Judgment on the Pleadings

In the motion at-bar, SIH indicates that it did not have contracts containing the exclusivity provisions at issue for the entirety of the timeframe alleged in the Third Amended Complaint. According to SIH, there were no exclusivity provisions between it and BCBS prior to January 1, 2007, and there were no such provisions between it and Health Alliance between December 1, 2005 and May 31, 2007 and again from June 1, 2010 to the present. SIH argues that MHC cannot demonstrate antitrust injury, causation, or injury-in-fact during the time period which SIH did not have exclusivity contracts.

MHC raises multiple arguments in response. First, it argues that a *partial* judgment on the pleadings is procedurally improper under Federal Rule of Civil Procedure 12(c). Next, generally, MHC argues that the effects of a contract can extend even beyond the time it is in existence, and that the question of damages is a factual issue to be determined by the trier of fact. Finally, MHC asserts that the issue of what agreements were in effect at what times is a question of disputed fact. MHC points to

---

[1] Any and all payors, as opposed to merely commercial insurers, would constitute a market including government payor programs, such as Medicare and Medicaid, as well as, private commercial payors.

evidence that the exclusionary contracts continued on a de facto basis even when the written contracts were not in effect. The Court need not address all of these arguments, as MHC's final argument is dispositive.

### III. JUDGMENT ON THE PLEADINGS STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party, "[a]fter the pleadings are closed—but early enough not to delay trial—[to] move for judgment on the pleadings." A motion for judgment on the pleadings is governed under the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, **850 F.3d 335, 339 (7th Cir. 2017)**. To survive a motion governed under the 12(b)(6) standard, the complaint must "'state a claim for relief that is plausible on its face.'" *Katz-Crank v. Haskett*, **843 F.3d 641, 646 (7th Cir. 2016) (quoting** *Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 570 (2007))**. The Court accepts as true the allegations raised by Plaintiff in its Complaint unless the allegations are "'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank*, **843 F.3d at 646 (quoting** *Ashcroft v. Iqbal*, **556 U.S. 662, 663 (2009))**. A court may grant a motion for judgment on the pleadings only where "the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *Natoinal Fidelity Life Insurance Co. v. Karaganis*, **811 F.2d 357, 358 (7th Cir. 1987)**. If all of the factual disputes are not resolved by the pleadings, a trial, rather than judgment on the pleadings, is more appropriate. *Roberts v. Robert V. Rohrman, Inc.*, **909 F.Supp. 545, 552 (N.D. Il. 1995) (citing Wright & Miller, 5A FEDERAL**

PRACTICE AND PROCEDURE: CIVIL 2D § 1367 pp. 509 – 10 (1990)).

Rule 12(d) provides that when ruling on a 12(c) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." **FED.R.CIV.P. 12(d)**. An exception exists, however, where the moving party attaches a document that is central to the plaintiff's claim and is referred to in the complaint. *188 LLC v. Trinity Industries, Inc.*, **300 F.3d 730, 735 (7th Cir. 2002) (quoting** *Wright v. Assoc. Ins. Cos. Inc.*, **29 F.3d 1244, 1248 (7th Cir. 1994))**. Where such a document is attached to a 12(c) motion, it may be considered by the Court without the motion being converted into a motion for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

IV. ANALYSIS

MHC first argues that a motion for *partial* judgment on the pleadings is procedurally improper. It is true that while summary judgment under Rule 56 may be granted on "the part of each claim or defense," **FED.CIV.P. 56(a) (emphasis added)**, Rule 12(c) makes no explicit mention of a partial judgment on the pleadings. Certainly, one could argue that if the drafters of the rules of civil procedure had wished for Rule 12 to allow for partial judgments, then they would have explicitly indicated as such in the rule's text. *See e.g. Murphy v. Smith*, **No. 16-1067, 583 U.S.\_\_, slip op. at 3 – 4 (2018) ("[R]espect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own.")**. MHC, in fact, cites to a case wherein the Seventh Circuit suggested that a motion for partial

judgment on the pleadings may not be proper. *See BBL, Inc. v. City of Angola*, **809 F.3d 317, 325 (7th Cir. 2015)**. That court noted the difference in the language between Rule 56 and Rule 12(b)(6), which provides the governing standard for a motion brought under Rule 12(c). *Id.* The court noted that a motion brought pursuant to 12(b)(6) does not permit piecemeal dismissal of portions of claims. *Id.* The Seventh Circuit's rumination on this issue, however, in dicta, culminated in nothing more than a suggestion that a partial judgment may be improper, and the court expressly declined to resolve the issue, finding that the case before it could be resolved on other grounds. *See id.* While acknowledging the textual argument for the proscription of a partial judgment on the pleadings under Rule 12(c), as other grounds demonstrate that SIH is not entitled to judgment on the pleadings, this Court refrains from deciding this specific question.

Turning to the merits of the issues before it, the Court next addresses MHC's contention that factual issues exist regarding the times at which the exclusive contracts were in effect. In support, MHC quotes from a portion of its expert report:[2]

> It makes no rational business sense to not contract with Marion HealthCare if Health Alliance was free to contract with any provider in the 7-County Market. If a provider is willing to offer better rates than competitors, a rational insurer would include that provider in a competitive market. Yet the decision not to negotiate a contract with Marion HealthCare resulted in significantly higher cost for outpatient surgical services paid by Health Alliance. This suggests that the exclusionary provisions continued even though they were not formally written into the contracts. It suggests the

---

[2] Because the Court relies only the quoted portion of the report for the proposition that an issue of fact exists, the Court will not require that any portion of the expert report be filed in the record at this time, either sealed or unsealed.

parties were engaging in a "constructive exclusive contract" throughout the timeframe.

(Doc. 282, p. 10).

The Court finds that it can consider this portion of MHC's expert's report without converting SIH's motion to a motion for summary judgment. In a footnote in *Geinosky v. City of Chicago***,** the Seventh Circuit indicated that a party opposing a motion under Rule 12(b)(6) may permissibly submit materials outside the pleadings in order to illustrate facts that the party expects to prove. **675 F.3d 743, 746, n. 1 (7th Cir. 2012) (citing** *Thomas v. Guardsmark, Inc.***, 381 F.3d 701, 704 (7th Cir. 2004))**. There, the court stated that

> [i]n the turmoil concerning civil pleading standards stirred up by *Ashcroft v. Iqbal*…and *Bell Atlantic Corp v. Twombly*…a plaintiff who is opposing a Rule 12(b)(6) or Rule 12(c) motion and who can provide such illustration may find it prudent to do so. (It may also be prudent to explain to the district court that the materials are being submitted for illustrative purposes and should not be used to convert the motion into a Rule 56 motion for summary judgment.)

*Geinosky***, 675 F.3d at 746, n. 1**.

Indeed, MHC specifically states that it provides the portion of its expert report merely for the purpose of demonstrating that the issues raised in SIH's motion are disputed issues of fact. The Court accepts the provided portion of MHC's expert report, and considers it only for the purpose of determining whether factual issues exists, and the Court does not consider or attempt to ascertain the truth of the report or the weight to be given to it.

SIH contends in its Reply that even if the Court were to consider the expert report,

because the gravamen of MHC's complaint is based on injury from the written contracts, the face of the contracts themselves make clear that MHC cannot state a claim for relief during the periods where the contracts did not contain exclusivity provisions. SIH also appears to attempt to cast doubt on the notion that the causes of action raised by MHC may include non-written agreements as a matter of law. If, however, the causes of action pleaded by MHC cover non-written agreements, and if MHC can be said to have adequately pleaded non-written agreements in its Third Amended Complaint, then MHC has likely demonstrated a question of fact. The Court takes each of these issues in turn.

The Court first addresses MHC's exclusive dealing and tying claims. Though those claims are brought pursuant to both federal and state law, the same standard is used to govern both. "Illinois law provides that its courts should use the construction of federal antitrust law by federal courts to guide their construction of those state antitrust laws that are substantially similar to federal antitrust law." *Marion Healthcare, LLC v. Southern Illinois Healthcare*, **2013 WL 4510168, \*14 (S.D. Il. Aug. 26, 2013) (quoting** *State of Ill., ex rel. Burris v. Panhandle Eastern Pipe Line Co.***, 935 F.2d 1469, 1480 (7th Cir. 1991)) (internal quotations omitted).** In ruling on a prior motion to dismiss in this matter, the Court applied federal law to both federal and Illinois claims. *Marion Healthcare*, **2013 WL 4510168 at \*14**. In regards to the motion at-bar, neither party indicates that they are of the position that differing standards apply to MHC's federal versus state claims. The Court treats MHC's federal and Illinois claims as being

governed under the same standard.

MHC's exclusive dealing and tying claims arise under section 1 of the Sherman Act. That section provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." **15 U.S.C. § 1**. Though the statute reads very broadly on its face in prohibiting "[e]very contract, combination…or conspiracy in restraint of trade," the Supreme Court has read the statute only to apply to "unreasonable" restraints of trade. *See e.g. Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, **551 U.S. 877, 885 (2007)**.

An exclusive dealing arrangement exists where a supplier induces a buyer to purchase most or all of the suppliers' goods or services for a certain period of time. **ABA Section of Antitrust Law, ANTITRUST LAW DEVELOPMENTS p. 209 (7th ed. 2012)**. Such arrangements violate antitrust law "when they foreclose competition in a substantial share of the line of commerce at issue." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, **381 F.3d 717, 737 – 38 (7th Cir. 2004)**. In addition, a tying arrangement exists when a sale of one product or service is conditioned on the buyer also taking a second product or service. **Herbert Hovenkamp, FEDERAL ANTITRUST POLICY § 10.1 p. 435 (4th ed. 2011)**. "'The principal evils of tying arrangements are the foreclosure of competitors in the tied product market and the denial to buyers of the advantages of marketplace shopping.'" *Marion Healthcare,* **2013 WL 4510168 at \*11 (quoting** *Photovest Corp. v. Fotomat Corp.***, 606 F.2d 704, 724 (7th Cir. 1979))**.

Courts have found that implied or unwritten agreements may constitute both illegal exclusive dealing arrangements and illegal ties. In *West Penn Allegheny Health System, Inc. v. UPMC,* the Third Circuit provided that to successfully plead a section 1 claim, generally, a "plaintiff may plead an agreement by alleging direct or *circumstantial* evidence, or a combination of the two." **627 F.3d 85, 99 (3d Cir. 2010) (emphasis added)**. In regards to exclusive dealing arrangements specifically, the Third Circuit also has found, in an *en banc* opinion, that a plaintiff can recover on an antitrust claim regarding such arrangements even where the arrangements contained no express exclusivity provision.³ *LePage, Inc. v. 3M*, **324 F.3d 141, 157 – 58 (3d Cir. 2003) (*en banc*)**. In addition, circuit courts have also found that actionable illegal ties need not be explicit. For instance, the Sixth Circuit has stated:

> Unlawful ties need not be explicit contractual provisions preventing buyers from purchasing the tied product from third parties. The existence of a tying arrangement depends on…"the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." [*Jefferson Parish Hosp. v. Dist. No. 2 v. Hyde*, **466 U.S. 2, 12 (1984)**.] When a defendant adopts a policy that makes it unreasonably difficult or costly to buy the tying product…without buying the tied product from the defendant, it 'forces' buyers to buy the tied product from the defendant and not from competitors.

*Collins Inkjet Corp. v. Eastman Kodak Co.*, **781 F.3d 264, 272 (6th Cir. 2015)**. *See also*

---

³ SIH argues that *LePage*, a case involving rebates given by a manufacturer in order to induce exclusive dealing, is "irrelevant to determining if a plaintiff alleging exclusive dealing and tying based on written agreements can state a claim when those written agreements did not exist." (Doc. 291, p. 5, n. 4). SIH, however, assumes that the Third Amended Complaint is confined solely to express written agreements. As already discussed by the Court, whether MHC's causes of action may be maintained through de facto agreements and whether MHC adequately pleaded such agreements are two separate questions. The Court relies on *LePage* in deciding only the former question.

*Aerotec International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171, 1179 (9th Cir. 2016) ("**We readily acknowledge that tying conditions need not be spelled out in express contractual terms to fall within the Sherman Act's prohibitions.**"). The Court adopts these previous circuit court findings and finds that MHC, as a matter of law, may plead illegal exclusive dealing and tying arrangements that are non-explicit.

In addition, illegal monopolization under section 2 clearly need not be the product of explicit contractual provisions. The elements of a section 2 claim make such a notion clear on their face. To prevail on a claim under section 2, a plaintiff must demonstrate that the defendant (1) possesses monopoly power in the relevant market; and (2) "'willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (quoting *U.S. v. Grinell Corp.*, 384 U.S. 563, 570 – 71 (1966)). The first element merely requires a defendant to hold monopoly power, and the second element requires an exercise of that power—i.e. some form of anticompetitive conduct. *See* **Hovenkamp**, *supra*, **at §§ 6.2, 6.3, pp. 292, 296.** Both exclusive dealing and tying arrangements can constitute anticompetitive conduct for purposes of section 2. *See Ticketmaster Corp. v. Tickets.com Inc.*, 127 Fed.Appx. 346, 347 – 48 (9th Cir. 2005) (exclusive dealing); *Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.*, 386 F.3d 485, 501 – 02 (2d Cir. 2004) (exclusive dealing); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc.*, 63 F.3d

1540, 1550 (10th Cir. 1995) ("Illegal tie-ins and predatory pricing under section 1 may also qualify as anticompetitive conduct for section 2 purposes.").

Since the causes of action raised by MHC may be pleaded through de facto agreements or arrangements, the question then turns to whether MHC sufficiently raised such agreements in its Third Amended Complaint. It is true that MHC's complaint generally references and relies on written agreements between SIH and BCBS and SIH and Health Alliance. The Federal Rules require only notice pleading, and the question is whether SIH was placed on notice of alleged violations arising from non-written agreements. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[In a complaint,] [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (quoting *Twombly* 550 U.S. at 555) (internal quotations omitted). Antitrust suits, though often complex, do not demand a more stringent pleading standard. *See Midwest Gas Services, Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 710 (7th Cir. 2003) ("[A]ntitrust plaintiffs need not plead to a heightened level of particularity.")

The Third Amended Complaint fairly placed SIH on notice of non-written agreements. Though MHC references the written agreements and relies heavily upon them, the Third Amended Complaint does not explicitly foreclose the existence of non-written agreements or arrangements. To the contrary, beginning on the first page of the complaint, MHC provides the following basic summation of its claims:

> In short, through exclusionary agreements and *ongoing related conduct*, including exclusive dealing, tying and monopolization, Defendant has

substantially suppressed competition for outpatient surgical services in a specified, relevant market in southern Illinois.

(Doc. 127, p. 1 – 2) (emphasis added). As such, the Court finds that the Third Amended Complaint, though mainly addressing the written agreements, also encompasses unwritten continuing agreements or conduct. Upon reading the complaint, it simply would not be reasonable for SIH to argue that it was not fairly placed on notice of claims alleged to have arisen from ongoing conduct and/or unwritten agreements continuing after the expiration of the written contracts at issue.[4]

Given that it has adequately pleaded non-written agreements and/or ongoing conduct, MHC has also demonstrated a factual dispute as to the issues raised in SIH's motion. Simply put, while SIH contends that MHC cannot state a cause of action for the periods in which SIH did not have written exclusivity agreements with payors, MHC's expert opines that such agreements essentially continued on a constructive basis. Though SIH argues that the expert's opinion is speculative, such an argument is best reserved for an examination of the facts, and is not appropriate for a motion for judgment on the pleadings. The Court is satisfied that a factual issue exists, and that the issue raised by SIH is more appropriate for summary judgment or trial.

V. **CONCLUSION**

The Court finds that MHC has adequately pleaded causes of action arising, in part, from non-written agreements and/or ongoing conduct. As such, an issue of fact

---

[4] Moreover, SIH, who had access to the same discovery as MHC, had the opportunity to rebut Plaintiff's expert's testimony regarding non-written agreements with its own expert's testimony, and, presumably, has done as much.

exists as to whether MHC can recover for the times in which SIH did not have in effect express written exclusive contracts. The Court notes that in making its ruling, it takes no position as to the ultimate merits of MHC's claims. Today, the Court merely finds that the issues raised by SIH in its motion are better left for trial or summary judgment. SIH's Motion for Partial Judgment on the Pleadings (Doc. 273) is **DENIED**.

**IT IS SO ORDERED**.
DATED: 3/14/2018

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge