# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARION HEALTHCARE, LLC,    )
    )
      Plaintiff,    )
    )
vs.    )    Case No. 3:12 -CV-871 -MAB
    )
SOUTHERN ILLINOIS HEALTHCARE,    )
    )
      Defendant.    )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the Report and Recommendation (Docs. 402 (sealed); 421 (public redacted))[1] of Special Master Stephen C. Williams (*see* Doc. 391 appointing the Special Master). The Report and Recommendation[2] recommends the Court grant Defendant Southern Illinois Healthcare's Motion for Summary Judgment on all of Plaintiff Marion Healthcare, LLC's claims and dismiss this case with prejudice (Doc. 421 at 39). Plaintiff Marion Healthcare, LLC ("MHC") filed timely objections (Docs.

---

[1] The Court found that the Report and Recommendation contained certain information that qualified as confidential proprietary information or trade secrets under Seventh Circuit precedent (*See* Doc. 418); *see also Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325 (7th Cir. 1986). The record contains both a sealed version (Doc. 402) and a public redacted version (Doc. 421). Throughout the ensuing Order, in the interest of brevity, the Court will simply cite to the public redacted version of this document rather than both, each time.

[2] Prior to docketing his formal Report and Recommendation, pursuant to the terms of appointment, the Special Master served a draft Report and Recommendation on the parties and allowed informal objections and proposed changes (See Doc. 391). The Special Master Williams refers to this informal objection process in his Report and Recommendation in footnotes 9, 11, 12, 13, 15, and 17. *See* Doc. 421 at 20, 28, 30, 31, 34, and 35.

424 (sealed); 446 (public redacted))[3] on December 5, 2019 to which Defendant Southern

Illinois Healthcare ("SIH") filed a timely response on December 23, 2019 (Doc. 432). SIH

also filed an objection to the Special Master's Report and Recommendation (Doc. 426) to

which MHC responded (Docs. 427 (sealed); 448 (public redacted)).[4] The parties fully

briefed motions and responses to SIH's Motion for Summary Judgment (Docs. 334

(sealed), 333 (public redacted); 337 (public redacted); 353 (sealed), 352 (public redacted))[5],

the Special Master's Report (Doc. 421), and the parties' objections and responses to the

Special Master's Reports (Docs. 446; 426 (public redacted); 427 (sealed), 448 (public

redacted); and 432 (public redacted))[6] are presently before the Court and sufficiently

apprise the Court of the facts and arguments of the case.

Because timely objections have been lodged to the Special Master's

Recommendations, the Court must undertake a *de novo* review of the Report and

Recommendation. *See* FED. R. CIV. P. 53(f).    Having carefully considered both the evidence

and the parties' arguments and for the reasons stated below, the Court **ADOPTS** in part

and **DECLINES TO ADOPT** in part the Report and Recommendation. Specifically, the

---

[3] On February 4, 2020, the Court provided a detailed analysis on the record regarding what information in the parties motions and exhibits qualified as confidential or proprietary information or trade secrets and could be appropriately redacted under Seventh Circuit precedent (Doc. 435); (*see also* Doc. 437 (transcript of Feb. 4, 2020 hearing)); *see also Learning Curve Toys, Inc.*, 342 F.3d 714; *Ball Mem'l Hosp., Inc.*, 784 F.2d 1325. The Court directed the parties to file final public redacted versions of its pleadings and exhibits in accord with the Court's rulings (Docs. 435, 437 (transcript), and 442). Throughout the ensuing Order, the Court will cite to the public redacted version of the pleadings and briefs.

[4] *Supra* note 3.

[5] *Id.*

[6] *Supra* notes 1; 3.

Court adopts the Special Master's recommendation that: (1) summary judgment in favor of SIH is warranted because MHC cannot demonstrate that SIH's exclusionary contracts caused an antitrust injury; (2) MHC cannot prove causation or a link between any of SIH's conduct and its own injuries; and (3) MHC's claims are not tied to the damages theory pled in the Third Amended Complaint. The undersigned **DECLINES TO ADOPT** the Special Master's Report and Recommendation that the anti-trust theories advanced by MHC are sound as they are not dispositive of the decision here. Accordingly, SIH's Motion for Summary Judgment (Docs. 313 (public redacted), 314 (sealed), and 439 (final public redacted))[7] will be granted consistent with this Order.

The Court need not make a determination as to the other findings related to SIH's alleged Sherman Act 1 and 2 violations outlined in Special Master Williams' Report and Recommendation because without injury and causation, an antitrust claim cannot survive the summary judgment stage of litigation; therefore, the Court is declining to adopt the portions of the Report and Recommendation on the definition of the market, including its analysis on exclusive dealing, substantial foreclosure, tying, and coercion (Doc. 421 at 12-29). Accordingly, the outstanding issues in SIH's Motion for Summary Judgment related to the market and whether MHC was foreclosed or excluded from it; whether SIH engaged in tying or exclusive contracts with payers illegally; and whether SIH had a negative impact on the market as a whole are **MOOT** as they are unnecessary for the Court's decision.

---

[7] *Supra* note 3.

MHC filed its original Complaint on August 13, 2012 (Doc. 2). MHC is an ambulatory surgery center ("ASC") that performs outpatient surgical services (Doc. 421 at 2).   The operative Amended Complaint was filed on February 17, 2016 (Doc. 127), in which MHC contends that SIH, a not-for-profit health care system in Southern Illinois that owns three hospitals, violated Sections 1 and 2 of the Sherman Act (and corresponding Illinois State Statutes) by engaging in exclusive contracts with health insurance providers, or "payers,"[8] like Blue Cross Blue Shield ("BCBS") and HealthLink. MHC claims that these exclusive contracts are illegal and violate Section 1 of the Sherman Act. In addition, MHC claims these contracts enabled SIH to maintain and extend its monopoly power in the Southern Illinois market unlawfully in violation of Section 2 of the Sherman Act (Doc. 127 at 4). SIH filed its Answer to the Third Amended Complaint on March 7, 2016 (Doc. 136), denying MHC's claims related to exclusive contracts and other alleged antitrust violations. The parties engaged in an extensive discovery process, with both parties (and interested parties) advocating for various protective orders to file certain documents related to competitively-sensitive information, including rate and reimbursement information, under seal (*See, e.g.*, Docs. 37, 48 (granting protective orders). Additionally, the Court conducted two hearings with the parties and non-parties, where the Court considered, analyzed and ruled on what information could be redacted as confidential, proprietary information and/or trade secrets (*See* Docs. 418, 435, and 437

---

[8] *See* Doc. 421 at 3; For a full accounting of the uncontested facts, *see* Doc 421 at 2-11.

(transcript of Feb. 4, 2020 hearing)). In addition, the Court held status conferences to ensure the case was moving forward.

On October 13, 2017, SIH filed a Motion for Summary Judgment (Doc. 439), arguing it had not engaged in illegal, anticompetitive conduct and that MHC cannot establish SIH's actions caused an injury to the market or damages to MHC. In its Motion for Summary Judgment, SIH relied heavily on a Seventh Circuit case, *Methodist Health Services Corp. v. OSF Healthcare System,* 859 F.3d 408 (7th Cir. 2017) ("*Methodist II*"), to support its argument that MHC cannot survive summary judgment. MHC filed its response on December 15, 2017 (Doc. 337) arguing that *Methodist II* is distinguishable from the present case and that SIH's exclusive contracts not only hurt MHC, but also the Southern Illinois healthcare market (Doc. 337 at 23, 26-28).

At that same time, SIH filed three Motions *in Limine* to Exclude John R. Bowblis's Testimony (Doc. 311), Dennis Knobloch's Testimony (Doc. 309), and John Meindl's Testimony (Doc. 307), all three of which will be addressed in separate Orders.[9] MHC filed its Response to these Motions *in Limine* on November 30, 2017 (Docs. 325 and 326; 328 (sealed) and 327 (public redacted)).[10] SIH filed its Reply to MHC's Response to the Motions in Limine on December 22, 2017 (Docs. 338 (public redacted) and 339 (sealed);

---

[9] Today, the Court is entering three Orders (including this one) on three separate Reports and Recommendations prepared by the Special Master on certain motions filed by SIH. Each of SIH's motions and the accompanying Report and Recommendation warrants its own separate Order (*See* Docs. 451 (Memorandum and Order on Motion in Limine as to John Bowblis); 452 (Memorandum and Order on the Motion in Limine as to John Meindl and Dennis Knobloch)). Nevertheless, the analysis of the issues contained in both this Order and the other two entered by the Court today is intertwined and all of the Orders must be viewed in tandem.

[10] *Supra* note 3.

340 (public redacted) and 341 (sealed); and 342 (public redacted) and 343 (sealed)).[11] The Court responded by setting these matters for hearing on April 10, 2018 with discovery disputes lasting throughout the end of that year.

In January 2019, this case was assigned to the undersigned following the departure of Judge Williams from the bench. A status conference was held on February 13, 2019, at which time the parties discussed the appointment of a Special Master to review the record and issue a Report and Recommendation on Motions to Exclude the Testimony of John Bowblis (Docs. 400 (sealed); 420 (public redacted))[12] and John Meindl and Dennis Knobloch (Doc. 401), and the Motion for Summary Judgment (Doc. 421). Both Plaintiff and Defendant were in favor of appointing former Judge Williams (now Mr. Williams) as Special Master because of his unique familiarity with the case, which was made official on February 19, 2019 (Doc. 391). As Special Master Williams reviewed the record, both MHC and SIH were afforded the opportunity to submit informal objections and comments to him before he finalized his Report and Recommendation on each motion referred to him as Special Master.

## CONCLUSIONS OF THE REPORT AND RECOMMENDATION

In his Report and Recommendation on the Motion for Summary Judgment, Special Master Williams found that MHC was missing a crucial element of proof in its case. MHC could not show that SIH's conduct caused an antitrust injury to the general market or

---

[11] *Id.*

[12] *Supra* note 1.

MHC itself; therefore, he recommended that the Court grant the Defendant's Motion for Summary Judgment (Doc. 421 at 2).

After outlining the uncontested facts in this case, Special Master Williams analyzed each of MHC's Sherman Act §§ 1 and 2 antitrust claims as to whether the parties presented evidence to support triable issues for the necessary elements, including exclusive dealing, monopolization, causation, and injury. To survive summary judgment on any of its claims, MHC must show that SIH's conduct caused an antitrust injury, defined as an injury "on the market" of raising prices or decreasing output, generally (Doc. 421 at 29). *See also Stamatakis Indus. v. King*, 965 F.2d 469, 471 (7th Cir. 1992); *Serfecz v. JewelFood Stores*, 67 F.3d 591, 597 (7th Cir. 1995); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 394 (7th Cir. 1984).

Special Master Williams found MHC's theories of liability related to tying, substantial foreclosure, and coercion to be sound;[13] however, whether MHC could survive summary judgment would be based on whether it could link SIH's actions to these theories of liability. Special Master Williams found that MHC "offered insubstantial proof to create a triable issue on whether SIH's exclusionary contracts caused an antitrust injury" (Doc. 421 at 29, 33). MHC fell short in demonstrating that SIH's conduct and use of exclusive contracts with payers led to an actual injury to MHC or an injury on the

---

[13] Special Master Williams noted there is "enough evidence in the record to create a triable issue of whether MHC was substantially foreclosed from the commercially insured outpatient surgical market." (Doc. 421 at 24; *see also* Doc. 421 at 26, 28-29).

market in the form of "raising prices or decreasing output." (*Id*. at 29).[14]

Special Master Williams could not find any evidence in the record that patients were actually denied access to care. In other words, there is no evidence that patients in the market were injured by SIH's alleged illegal actions. MHC argued that "decreased outpatient surgery services mean[s] decreased choice for patients in the types of providers." (*Id*. at 30; Doc. 337 at 48). This suppressed patient choice, MHC argued, is enough to show an antitrust injury; however, Special Master Williams emphasized that "antitrust law does not require the preservation of maximum choice in providers. The law protects access to care." (Doc. 421 at 31). *See also Nelson v. Monroe Reg. Med. Ctr*., 925 F.2d 1555, 1564 (7th Cir. 1991). With no evidence in the record showing a disruption in access to care, MHC's arguments for causation lacked proof.

Even so, MHC continued, arguing injury to MHC itself in the form of an overall decrease in the volume of patients as the result of SIH's alleged illegal contracts and monopoly power in the Southern Illinois healthcare market. MHC argued that SIH created a monopoly in the area by engaging in exclusive contracts with payers that, essentially, locked MHC out of the patient market since MHC was not "in-network" with these payers. MHC argued that patients were corralled into seeking care at in-network

---

[14]More specifically, Special Master Williams highlights that MHC's main argument is that the exclusive contracts SIH entered into with payers created higher rates for payers in the Southern Illinois market than in other markets throughout the state (Doc 421 at 29). But the Special Master found that the record does not clearly show the time period these numbers come from, so the link between the higher rates and SIH's exclusive contracts is not clear enough to create a triable issue to survive summary judgment. MHC cannot effectively argue that one can infer that SIH's actions caused market price increases (Doc. 421 at 29-30). Similarly, the Special Master notes there is no evidence in the record to show an actual injury to MHC itself.

hospitals and surgery centers simply because of the in-network status, even though they are more expensive than MHC. This led to a decrease in MHC patient volume and an increase in the amount patients paid for surgeries throughout the Southern Illinois market (Doc. 421 at 31).[15] Special Master Williams agreed MHC put forth substantial proof that insured "out-of-network" MHC patients chose to have surgery at regional hospitals at an increasing rate over time; however, he did not find evidence in the record to link this phenomenon to SIH's alleged illegal activity (*Id.* at 29).

In examining whether MHC was forced to be an out-of-network provider because of SIH's exclusive contracts with payers and alleged monopoly power, Special Master Williams sifted through extensive records of evidence, but still could not find a clear connection that SIH's relationship with payers in the region caused MHC's status as an out-of-network surgical facility. In fact, Special Master Williams found the opposite—that MHC had not become an in-network provider because of its own business strategy. MHC feared it would not have the capacity to treat the influx of patients that would result from going in-network with payers, detailed in its board minutes (*Id.* at 35; Doc. 439 at 17-22, 26). Without evidence of a clear link, Special Master Williams could not draw a reasonable inference that MHC's claims and alleged harm were caused by SIH's alleged illegal activity (Doc. 421 at 12). *Omnicare, Inc., v. UnitedHealth Grp.*, 629 F.3d 697, 704 (7th Cir. 2011). Put more simply, MHC failed to properly demonstrate causation or injury, two central antitrust elements.

---

[15] MHC argues SIH's exclusive contracts "forced [patients to] obtain outpatient surgeries at hospitals instead of less expensive ASCs (such as MHC in particular)." (Doc 421 at 33).

Special Master Williams recommended that this Court grant Defendant's Motion for Summary Judgment and dismiss this case with prejudice on the basis of causation and injury, two crucial antitrust elements, because "while the theory is sound, the proof is not in the record." (Doc. 421 at 33-34, 37-38).

## DISCUSSION

Because timely objections were filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B),(C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(B); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also, Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). A *de novo* review requires the district court to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the [special master's] conclusion." *Harper*, 824 F. Supp. at 788 (citation omitted); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). On a motion for summary judgment, all material facts and all inferences are construed in the light most favorable to the non-moving party. *See Serfecz,* 67 F.3d at 596. When a Special Master is appointed in a case and prepares a report on summary judgment, the Court reviews the Special Master's legal conclusions *de novo* and accepts his findings of fact unless they are clearly incorrect. FED. R. CIV. P. 53(f)(3); *Cook v. Niedert,* 142 F.3d 1004, 1010 (7th Cir.1998). The Court "may accept, reject or modify the [Special Master's] recommended decision." *Harper*, 824 F. Supp. at 788.

The Court has reviewed all materials, evidence, and pleadings before the Court in this matter, including both parties' objections to the Special Master's Report and

Recommendation as well as the Report and Recommendation itself. Special Master Williams meticulously combed through voluminous records to determine the uncontested facts. Special Master Williams also lived with this case for many years, acting as the presiding judge starting in 2016 (*see* Doc. 123) until his departure from the bench and then as the appointed Special Master. Ultimately, both parties had the opportunity to object to the Special Master's factual findings and neither did so. The Court **ADOPTS** the Special Master's findings of fact as they are not "clearly incorrect." Indeed, the Special Master's findings of fact are a thorough and detailed recitation of the relevant facts necessary for resolving the instant summary judgment motion and this Order will be in accordance with those findings of fact.[16] FED. R. CIV. P. 53(f)(3); *Cook,* 142 F.3d at 1010.

Additionally, the Court **ADOPTS** the Report and Recommendation's analysis on the dispositive issues of antitrust injury, causation, and damages, and the Special Master's recommendation that summary judgment in favor of SIH is warranted. MHC's objections are therefore **OVERRULED** in part and **MOOT** in part insofar as they relate to the issues the Court declines to adopt**.** The Court **DECLINES TO ADOPT** the Report and Recommendation with respect to the recommendation that there are triable issues on substantial foreclosure and tying.[17] Whether these theories are sound or not does not

---

[16] As noted, neither party lodged a specific objection to the findings of fact made by Special Master Williams and the Court accordingly adopts the facts as stated herein. Even if a party had objected to the Special Master's factual findings, the Report and Recommendation contains a careful and meticulous factual background supported by the record and is not "clearly incorrect." In fact, the Special Master did a commendable job in his Report and Recommendation, distilling down and synthesizing the relevant facts in this highly complex and long running case.

[17] The relevant portions of the Report and Recommendation this Court is analyzing for purposes of its decision are the sections on antitrust injury, causation, and damages (Doc. 421 at 29-40).

change or have any ultimate impact on the Court's analysis on the dispositive issues of injury, causation, and damages and, therefore, the Court need not address them. Although SIH has lodged objections to the Special Master's recommendation that MHC's theories are sound, SIH's objections are deemed **MOOT** since the Court is declining to adopt this section of the Report and Recommendation. SIH's Motion for Summary Judgment will therefore be **GRANTED**, consistent with this Memorandum and Order.

## A. Plaintiff's Objections

MHC objects to several portions of the Special Master's Report and Recommendation on the Motion for Summary Judgment. First, MHC argues that Special Master Williams did not utilize the correct legal standard to determine summary judgment in an antitrust case and that there is "a more sophisticated standard for antitrust claims" he should have employed (Doc. 446 at 1-2). Second, MHC argues the Report and Recommendation "improperly conflates [a]ntitrust injury with [c]ausation." (*Id.* at 1). Third, MHC argues that Special Master Williams found that MHC failed to present enough evidence for causation *sua sponte* as SIH did not address causation in its Motion for Summary Judgment or subsequent briefs. Fourth, MHC argues the Report and Recommendation relies on incorrect evidence to conclude that MHC cannot show an antitrust injury, causation, and damages. Fifth, MHC argues that the Report and Recommendation incorrectly held that Dr. Bowblis's calculations for damages were not reliable. And sixth, MHC argues that the Report and Recommendation incorrectly finds that the monopolization claims fail because there was not a separate analysis of damages apart from the analysis related to tying and exclusive dealing.

As the Court is granting Defendant's Motion for Summary Judgment and adopting the Report and Recommendation as to the dispositive issues of causation, injury and damages (and declining to adopt the portions describing the relevant market), the Court will address objections below relevant to its analysis and related to the antitrust elements of causation, injury, and damages (as far as damages are relevant to and support this Court's analysis of causation and injury).[18]

### 1. Plaintiff MHC's Objection to the Summary Judgment Standard

MHC asserts that Special Master Williams uses an incorrect summary judgment standard in the Report and Recommendation thereby holding MHC "to a higher standard," and acting "as a trier of fact." (Doc. 446 at 4). MHC argues that the Report and Recommendation should not have included the "normal" standard for summary judgment. According to MHC, it should have employed the "more sophisticated standard for antitrust claims" as outlined by the Supreme Court and Seventh Circuit case law, specifically two cases, *Eastman Kodak v. Image Technical Services, Inc.,* 504 U.S. 451 (1992) ("*Kodak*") and *JTC Petroleum Co., v. Plasa Motor Fuels, Inc.,* 190 F.3d 775 (7th Cir. 1999) ("*JTC*"). But MHC is incorrect that these two cases elucidate a separate summary judgment standard and that this "more sophisticated standard should" be applied to the case at hand.

---

[18] Special Master Williams finds in the Report and Recommendation that MHC's damages theory is not tied to its claims, and MHC's expert does not make a reliable damages estimate (Doc. 421 at 37-38). MHC objects to this portion of the Report and Recommendation, arguing that an estimation is the only way to assess damages in the current case and its expert, Dr. Bowblis, made reasonable and reliable damages calculations (Doc. 446 at 17-20). The Court addresses these arguments in its separate Order on the Motion *In Limine* on the Testimony of Dr. Bowblis (Doc. 451).

Summary judgment is standardized across cases of various topics, even in antitrust cases that require a nuanced, fact-specific analysis.[19] Special Master Williams highlights in the Report and Recommendation that "summary judgment is proper where there is no dispute as to a material fact that entitles the movant to judgment as a matter of law." FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The *Matshushita* standard, as SIH correctly notes, is regularly cited and employed by the Seventh Circuit as the standard for summary judgment in antitrust cases (Doc. 432 at 4) (citing *Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 941-42 (7th Cir. 2018); *In re Dairy Farmers of Am., Inc.*, 801 F.3d 758, 763 (7th Cir. 2015); *Omnicare*, 629 F.3d at 720; *United Rentals Highway Techs., Inc. v. Ind. Constructors, Inc.*, 518 F.3d 526, 532 (7th Cir. 2008); *Miles Distribs., Inc. v. Specialty Const. Brands, Inc.*, 476 F.3d 442, 450 (7th Cir. 2007)). Indeed, the *Matshushita* standard that MHC seeks to avoid parrots the language of Rule 56(a). The *Matsushita* Court specifically highlights the importance of causation and injury in the summary judgment phase in antitrust cases, even when there is ambiguous evidence. Ambiguous evidence is defined as evidence of "conduct as consistent with permissible competition as with illegal conspiracy." *Matsushita*, 475 U.S. at 586, 588, *citing*

---

[19] "[A]ntitrust analysis must sensitively recognize and reflect the distinctive economic and legal setting of the regulated industry to which it applies." *Concord v. Boston Edison Co.*, 915 F.2d 17, 22 (C.A.1 1990) (internal quotation marks omitted). SIH argued in its Motion for Summary Judgment that one Seventh Circuit Case, *Methodist II*, is analogous here. As Special Master Williams recommended, SIH's arguments supported by *Methodist II* are compelling because the facts of *Methodist II* and our present case are so similar. This Court's analysis demonstrates that *Methodist II* is highly instructive.

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984). Ambiguous evidence alone does not support an inference of an antitrust conspiracy because the *Matsushita* Court stresses courts should not infer illegal conduct "when such inferences are implausible, because the effect of such practices is often to deter procompetitive conduct." *Matsushita*, 475 U.S. at 593. *See also, Monsanto Comp.*, 465 U.S. at 762-764.

In its objection, MHC argues that a more appropriate standard is outlined by two cases, *JTC* and *Kodak*. MHC argues that *Kodak* states the defendant "bears a substantial burden" and must demonstrate that an inference of unlawful conduct is "unreasonable." MHC further contends that at the summary judgment stage, the balance should only tip in favor of granting summary judgment when the challenged conduct appears always or almost always to enhance competition (Doc. 337 at 1).

As Special Master Williams correctly highlights, MHC is mistaken that *Kodak* outlines a separate, special standard for summary judgment in antitrust cases. A careful examination of *Kodak* reveals that it simply employs the normal summary judgment in the context of the facts of that case—*i.e.* all reasonable inferences are drawn in favor of the non-moving party (Doc. 421 at 12). *See generally Kodak*, 504 U.S. 451.

Similarly, MHC argues that *JTC* outlines a separate summary judgment standard where the Special Master should have asked whether a rational jury, "construing the evidence before it as favorably as the record permits," could find in favor of the plaintiff (Doc. 337 at 2). MHC argues *JTC* provides guidance as to how a court should weigh evidence at the summary judgment stage and that when there is conflicting evidence, the court should not draw conclusions; rather, the court should examine the evidence to

determine if it is "sufficiently plausible." If it is, then the party has survived summary judgment.

Even within the parameters of *JTC*, MHC's arguments fail because *JTC* uses the *Matsushita* standard. In fact, the *Matsushita* standard in the context of the *JTC* facts provides the Court with helpful language for the present matter. *JTC* emphasizes the importance of demonstrating an injury at the summary judgment stage in order to survive summary judgment because "an antitrust claim which makes no economic sense can on that ground be dismissed on summary judgment." *JTC,* 190 F.3d at 778 ("To put it bluntly, you cannot obtain damages without proving injury."); *see also Matsushita,* 475 U.S. at 586. MHC is mistaken—*Kodak* and *JTC* do not hold that there are varying standards for summary judgment; rather, these cases show the parameters of the summary judgment standard applied to cases with varying facts.

At the heart of MHC's case is the inquiry of whether SIH's exclusive contracts with payers caused damages to MHC and the market. MHC argues that SIH's exclusive contracts with payers are evidence of illegal antitrust activity intrinsically; however, the Special Master correctly highlights that exclusive contracts are not, alone, *per se* illegal (Doc. 421 at 12).[20] Exclusive contracts, as pled in this case, are an example of ambiguous evidence (*i.e.,* evidence that could be "consistent with permissible competition as with

_____

[20] The Court is not addressing this issue at length in the body of this Order because it is unnecessary for the analysis, given that it is clear MHC cannot demonstrate key elements of antitrust injury, causation, and damages, which warrants summary judgment.

illegal conspiracy."). *Matsushita,* 475 U.S. at 586, 588. MHC fails at this summary judgment stage because there is insufficient evidence in the record (viewing all reasonable inferences in favor of MHC) to demonstrate the key elements of its case. This Court would have to engage in "'pure speculation'…to find sufficient evidence of antitrust injury, causation, or damages in this case." (*See* Docs. 432 at 3; 421 at 37). These issues of proof will be addressed in the forthcoming sections of this Order;[21] however, it is clear, from the breadth of antitrust case law, the summary judgment standard utilized by Special Master Williams in his Report and Recommendation, and outlined in *Matsushita* as well as numerous other antitrust cases, is correct and applicable here.

## 2. The Antitrust Elements of Causation and Injury and Plaintiff's Objections

Plaintiff MHC objects to the Report and Recommendation in three areas related to injury and causation. MHC's first main objection is that Special Master Williams conflated antitrust injury and causation in his Report and Recommendation. In the next two objections related to causation and injury, MHC argues that Special Master Williams relied on incorrect evidence to come to his conclusions on antitrust injury and then addressed issues of causation *sua sponte*, not relying on arguments or evidence introduced in the record by the parties. MHC is mistaken—Special Master Williams clearly outlines the evidence he relies on to reach his conclusions and uses correct legal standards to come to those conclusions.

---

[21] *See Infra* p.17-28

### a. MHC Argues Special Master Williams Conflated Antitrust Injury and Causation

MHC's first objection is that Special Master Williams improperly conflated injury and causation in his reasoning. MHC argues there is a "substantial record of evidence…from which a jury could reasonably conclude…that the injury it alleges resulted directly from the exclusive contracts; but injury-in-fact—whether the exclusive caused the alleged injury—is a question of causation." (Doc. 446 at 4-5). MHC further argues the Report and Recommendation engages in a "hypothetical, assuming away the violation or ignoring a causal link between the violation and the harm and positing other sources" (*Id*. at 6).

MHC's overall argument is that antitrust injury is an essential component of standing, and that Special Master Williams analyzes causation incorrectly under the antitrust injury standard for standing (*Id*. at 4-5). MHC is imprecise with the case law and standards for each element of an antitrust case to its own failings, and this objection is no different. Special Master Williams analyzed both injury and causation correctly, in accordance with case law and the record.

Antitrust injury is a central element MHC must demonstrate in order to survive on any of its claims. An antitrust injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 881 F. Supp. 1309 (W.D. Wisc. 1994)(quoting *Local Beauty Supply, Inc. v. Lamaur, Inc.*, 787 F.2d 1197, 1201 (7th Cir. 1984) (*quoting Brunswick Co. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1978)). Courts within

the Seventh Circuit have, at times, analyzed antitrust injury as an element of antitrust standing as MHC argues; however, antitrust injury can and should be analyzed outside of standing as it is a *necessary element* to prove an antitrust claim. *Blue Cross & Blue Shield*, 881 F. Supp. at 1315.

To establish causation, a plaintiff must show that the anticompetitive conduct claimed was "the cause in fact of the injury," or that "'but for' the violation, the injury would not have occurred." *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 718 (7th Cir. 2006) (antitrust injury must "reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation"). *See also O.K. Sand & Gravel, Inc., v. Martin Marietta Tech., Inc.*, 36 F.3d 565, 573 (7th Cir. 1994) (holding that antitrust injury requires "not only that the injury is of the type intended to be protected by the antitrust laws, but that the violation was 'the cause-in-fact of the injury: that but for the violation, the injury would not have occurred'") (citing *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993); *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 66 (2d Cir. 2012) ("to prevail on an antitrust claim, a plaintiff must establish that 'the injuries alleged would not have occurred *but for* [the defendant's] antitrust violation' ... adding necessity to the materiality requirement of our antitrust causation analysis.")

In addition, a plaintiff must be able to distinguish between "financial loss from the *lawful* activities of a competitor" from loss "caused by the *unlawful* acts of the defendant." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) (citing *Brunswick Corp.*, 429 U.S. at 489). If the alleged antitrust violation is too

removed from an injury with other intervening factors that could have led to the claimed injury, Seventh Circuit courts have granted motions for summary judgment for the moving party. *See Greater Rockford Energy*, 998 F.2d (7th Cir. 1993). *See also Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 172 F. Supp. 2d 1060 (S.D. Ind. 2001).[22] At the summary judgment stage, if there is no causation, then that is the end of the case as "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Delotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Ultimately, "[i]n order to sustain any of its claims, MHC must prove that SIH's conduct caused an antitrust injury." (Doc. 421 at 29). The parties submitted evidence throughout its briefing to argue issues related to both causation and injury. MHC has been on notice of the arguments surrounding causation and has, in fact, submitted evidence to attempt to link SIH's alleged action to its injury to prove causation.

Although MHC argues that Special Master Williams conflates causation and injury, it is MHC who misstates the record and evidence as related to injury and causation. To create a triable issue in terms of injury for summary judgment, there must be *some evidence* to show that "SIH's conduct had the effect on the market of raising prices or decreasing output." (*Id.* at 29).

---

[22] If lawful competition "fully accounts for" a plaintiff's "claimed injury," the law will "deny any injury" because "the plaintiff's situation would be the same with or without the challenged restraint." Areeda & Hovenkamp, *Antitrust Law* ¶ 338b–c.

To show injury, MHC argues that SIH's exclusive contracts with payers created higher rates in the Southern Illinois market, more so than in other markets throughout the state (*Id.*). MHC argues that the prices continued to rise over time from the exclusive contracts; however, this alleged violation is without support in the record. The Special Master correctly noted that the deposition excerpts MHC relied on to support its position (e.g., Lee Biederman's deposition) do not refer to *actual rate increases* and do not refer to a specific timeframe (*Id.* at 30).

MHC then argued that there was an injury to the market from these exclusive contracts because they had the effect of decreasing choice for patients "in the types of providers" they could choose, as these contracts allegedly caused a decrease in outpatient surgery services overall (*Id.* at 30). Ultimately, though, the Court can find nothing in the record to support the fact patients were denied access to care and "preservation of maximum choice in providers" is not required by the law (*Id.* at 31). Special Master Williams found that MHC "overstates the testimony in the record that it relied upon, and…implies a connection between those prices and SIH's conduct for which there is no proof." (*Id.* at 29). After a careful review of the record, this Court agrees with the Special Master.

Both parties submitted evidence in the record as to causation as well through their briefing and expert testimony (*See* Doc. 432 at 5; Doc. 337 at 49-50). For causation, a plaintiff must establish that "but for" the antitrust violation, their injury would not have occurred. *Greater Rockford Energy,* 998 F.2d at 395. Causation, like injury, is integral to a party surviving summary judgment.

MHC argues that it lost volume of patients and business because MHC was foreclosed from being in-network with the same payers who had exclusive contracts with SIH because of those exclusive contracts. In determining whether a party can survive summary judgment on the issue of causation, Special Master Williams rightfully outlined that the plaintiff must establish the "but for" test, meaning "but for" the alleged antitrust violation, the plaintiff's injury would not have occurred (Doc. 421 at 34). Here, there are too many intervening factors that make the link between MHC's claimed injury and SIH's alleged illegal activity faint. This is not a case of "hypothetical, assuming away the violation or ignoring a causal link between the violation and the harm and positing other sources," as MHC argues. There are real evidence issues in the record that make it impossible for the Court to infer that but for SIH's exclusive contracts with payers, MHC's injury would not have occurred.

MHC alleges that SIH's exclusive contracts caused MHC to lose patient volume because being out-of-network deterred patients from seeking care at an out-of-network facility like MHC. MHC argues this is because patients would have to pay more for the services (*Id.* at 34). If this were the only reason as to why MHC lost patient volume alleged in the record, then perhaps MHC would have created a triable issue of fact to survive summary judgment on causation. However, this is *not* the only reason why MHC remained out-of-network with certain payers, like BCBS. MHC remained out-of-network as a business strategy, at times complaining that the rates being offered by payers were not competitive and at other times, remaining out-of-network because MHC did not believe it could handle the increased patient volume that would flow from an in-network

agreement with certain payers (*See* Doc. 439 at 25-26)("In 2010, MHC's board minutes report that MHC understood that attempting to negotiate a contract with BCBSIL would require more patients than MHC physicians currently treated to be worthwhile…However, going in-network with any of them would require a much larger volume of patients."). In addition, MHC did enter into a contract with HealthLink twice and is still in-network with HealthLink (Docs. 421 at 5, 33, 35; 313-25; 313-10; 313-26).

From the record, it appears that SIH's exclusive contracts with payers had little effect on MHC. MHC was able to contract with some payers, like HealthLink, successfully to go in-network and declined to contract with others as a business strategy, all during a time when SIH had exclusive contracts with these payers in the region (Doc. 421 at 35-36).

MHC is mistaken that Special Master Williams incorrectly conflated injury and causation. He nimbly maneuvered through both tests and extensive facts to correctly determine that MHC did not provide facts to support finding triable issues as to causation and injury necessary for MHC to move past this summary judgment phase.

### b. MHC Argues Special Master Williams Made Recommendations about Causation *Sua Sponte*

Second, MHC argues that Special Master Williams made his recommendations on causation *sua sponte* because he relied on facts not pled by the parties. As opposed to its first objection, where MHC argued that Special Master Williams used incorrect standards for injury and causation, relying on incorrect facts from the record, here, MHC argues that Special Master Williams addressed an issue not introduced by the parties at all.

MHC argues that SIH's Motion for Summary Judgment advanced five theories.[23] MHC argues that SIH addressed issues related to causation only once, when SIH argued that MHC cannot prove causation because MHC's expert, Dr. Bowblis, "ignored intervening causes that are indisputable" and that his damages calculations are flawed (Doc 446 at 8; Doc. 439 at 41-44). MHC argues that instead of just examining this one element of proof for causation (*e.g.*, Dr. Bowblis ignoring intervening factors in his statistical conclusions), Special Master Williams examined causation elsewhere throughout the record, "improperly draw[ing] inference[s] (and erroneous ones at that) as to whether Plaintiff would have contracted with BCBS and HA had it been given the opportunity" (Doc 446 at 10).

MHC is incorrect. SIH argues causation throughout its briefs and Special Master Williams addressed causation arguments brought up by the parties directly. SIH correctly notes in its Response to Plaintiff's Objections that both SIH and Special Master Williams outlined the areas of the record in which SIH makes the argument that MHC

---

[23] MHC outlines the five issues as follows: "a) Under *Methodist II*, Defendant's contracts with BCBS and HA are legal because they were not "exclusive," because (1) their members always could seek treatment at other providers, whether contracted or not, including MHC, and (2) MHC could compete for its own contracts due to the short duration of SIH's; b) MHC was not 'foreclosed' or excluded from competing for outpatient surgery patients; c) MHC's tying claim fails because (1) there was not 'tie' as payers never ask to contract for a hospital's inpatient and outpatient services separately, and (2) payers testified they agreed willingly to the provisions; d) MHC's monopolization claim fails because (1) MHC has not been excluded from referral sources, (2) MHC makes no attempt to define the proper universe of 'market' to know what allegedly was monopolized, (3) MHC offers no damages at all for it monopolization claim; and e) MHC's claims in whole fail because (1) it cannot show higher prices (and thus competition was not harmed), and (2) it cannot establish the essential elements of causation or (3) damages for any of its claims (Doc. 439 at 2-3; Doc 446 at 8).

has not supported its arguments for causation.[24] Special Master Williams addresses this issue directly in his Report and Recommendation:

> In the informal objection process, MHC argued that SIH had not actually raised this issue of causation in its briefing. It argues that the undersigned impermissibly relies on an issue for which it had no opportunity to address. In support of this proposition, MHC cites *Edwards v. Honeywell*, 960 F.2d 673, 675 (7th Cir. 1992) & *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989). While the undersigned takes no issue with the legal proposition, it cannot be said this argument was not raised—raised vigorously in fact—by SIH. The fact that the undersigned has analyzed it under the rubric of causation, and that SIH argued it extensively under a different heading, does not give MHC license to ignore it. It does not take a clairvoyant to know that an argument raised over six pages of SIH's brief should be responded to. MHC ignored it at its peril.

(Doc. 421 at 35).

The Court agrees. MHC has been on notice repeatedly – in fact from the moment it filed this case in 2012 until this point - that it must have evidence related to causation and must respond to arguments made by SIH, otherwise forfeiting those arguments at this stage. As Special Master Williams found, "MHC ignored [this issue] at its peril." (*Id.*).

### c. MHC Argues Special Master William Relied on Incorrect Evidence for Antitrust Injury

Finally, MHC objects to Special Master Williams' Report and Recommendation on the grounds that Special Master Williams relied on incorrect evidence in his reasoning. Specifically, MHC contends the Report and Recommendation "incorrectly concludes that Plaintiff cannot show antitrust injury or causation of damages because it never would

---

[24] Both SIH and the Special Master correctly specify the parts of the record in which SIH repeatedly made this argument (*See* Doc. 432 at 4) (citing Resp. to Mot. To Supp. (Doc. 410) at 8-10 (listing 15 bullet points where this argument appeared)); see also Doc. 421 at 35 n.17 (stating that SIH raised this argument in 'over six pages' of its Motion for Summary Judgment alone).

have contracted with Blue Cross (BC) or Health Alliance (HA) even in the absence of exclusivity." (Doc. 446 at 2, 10-15). MHC further argues that Special Master Williams applied the incorrect reasoning in this section, requiring a "causal link between the exclusivity and MHC's injury to a black-and-white certainty." (*Id.* at 11). MHC contends Special Master Williams should have evaluated injury under a separate standard and asked if the injury was "a material element or, and substantial factor in producing, the injury" because it "need not be the sole cause of the alleged injuries" (*Id.*) *See also Greater Rockford Energy & Tech Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993). MHC claims it had the required "intention and preparedness" to contract as evident by the record (Doc. 446 at 11-13) and that it "repeatedly sought contracts from the restricted carriers and it actually contracted, on two different occasions, through HealthLink with dozens of unrestricted carriers." (*Id.* at 12).

Again, MHC misstates the evidence in the record. Although MHC cites to *Grip-Pak, Inc. v. Ill Tool Works,* 694 F.2d 466, 475 (7th Cir. 1982) ("*Grip-Pak")* to argue that a plaintiff is required to demonstrate only "intention and preparedness to enter the market," in order to show causation, Special Master Williams rightfully found that MHC misstated this test. Intention and preparedness to enter a market is the threshold showing to bring suit for damages (Doc. 421 at 34, n.15). In fact, Special Master Williams correctly highlights that *Grip-Pak* is explicit that this test is a way to *limit* who can bring claims instead of a "how to" guide to establish the element of causation for a claim (*Id.*).

Ultimately, even if MHC had not misstated this test, the evidence does not support that it ever had the intention to enter into contracts with payers like BCBS absent SIH's

exclusive contracts. MHC had opportunities to negotiate contracts with BCBS and chose not to enter into contracts with them because of "the low rates being offered." (Docs. 421 at 35; 313-25). Throughout the evidence related to contract negotiations between MHC and payers like BCBS, there is *nothing* in the record that shows MHC would have contracted with payers *absent exclusive contracts with SIH* (Doc. 421 at 36). Special Master Williams rightfully found that it would be "pure speculation for a trier of fact to conclude that MHC would be in-network with BCBS without the exclusivity provisions." (*Id.* at 37). There is simply no evidence in the record to support that connection. MHC's "intention and preparedness" evidence can only push it so far down the causation path. That evidence alone is simply not enough to create a triable issue in terms of causation.[25]

## B. Plaintiff's Monopolization Claims under Act 2 of the Sherman Act

In addition to its Sherman Act § 1 arguments, MHC also argued that because of SIH's use of exclusive contracts with payers in the Southern Illinois region, SIH created an illegal monopoly, violating § 2 of the Sherman Act. Special Master Williams quickly disposes of MHC's Sherman Act § 2 monopolization claims in the Report and Recommendation because MHC does not provide proof, in the form of an expert opinion or damages calculation, for this claim (Doc. 421 at 39). Special Master Williams

---

[25] The Court has carefully considered all of the arguments raised by the parties and all of the objections to the Report and Recommendation. But this was no easy task. MHC frequently conflated arguments made by SIH and findings made by the Special Master, making it difficult to parse the issues out in an organized fashion. The Court has spent an extensive amount of time analyzing and giving fresh consideration to all of the issues in this case. Nevertheless, if there is any argument or objection raised by MHC that is not specifically addressed by this Memorandum and Order, the Court can confidently say that it considered it and has rejected it.

recommends the Court grant summary judgment as to all of MHC's claims, including monopolization, because MHC has not proven an antitrust injury and causation, and MHC's success rests on those two key claims. MHC objects to his findings, arguing that its proof for its exclusive dealing and tying arguments prove its monopolization claim as well. MHC argues that the Court should hold that these three claims survive summary judgment as the proof overlaps and MHC has included enough in the record to prove all three arguments (Doc. 446 at 20).

The Court has given fresh consideration to MHC's arguments and agrees with the Special Master that the proof is simply not in the record as to MHC's monopolization claims. While the Court is not assessing the validity of MHC's exclusive dealing and tying arguments (as they are not dispositive of this matter), it is clear there is not enough evidence in the record to support MHC's monopolization claims.[26] Even so, the Special Master correctly highlights that without proof of an antitrust injury or causation, MHC cannot prove its Sherman Act § 2 monopolization claims either (Doc. 421 at 39). Because the Court has concluded that MHC cannot survive summary judgment because it lacks sufficient evidence of an antitrust injury and causation, MHC's monopolization claims must also fail.

---

[26] In fact, MHC admits it cannot prevail on its monopolization claims without proof of its exclusive dealing or tying claims (Doc. 421 at 39).

## Conclusion

For the reasons set forth above, the Court **ADOPTS IN PART and DECLINES TO ADOPT IN PART** the Special Master's Report and Recommendation. MHC's objections are **OVERRULED**; SIH's objections are **MOOT**. SIH's motion for summary judgment is **GRANTED** consistent with this Memorandum and Order. MHC's claims will therefore be **DISMISSED with prejudice** and the Clerk of Court will be directed to enter judgment accordingly and close this case on the Court's docket.

IT IS SO ORDERED.

DATED: March 31, 2020

s/ Mark A. Beatty
MARK A. BEATTY
United States Magistrate Judge