IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARION HEALTHCARE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:12-CV-871-MAB |
| | ) |
| SOUTHERN ILLINOIS HEALTHCARE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on (1) a motion filed by the Defendant, Southern Illinois Healthcare ("SIH") to exclude the expert testimony of John Bowblis pursuant to *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702 (Doc. 426); (2) a Report and Recommendation from Special Master Stephen Williams on the Motion to Exclude the Testimony of John Bowblis (Doc. 400 (sealed); Doc. 420 (public redacted));[1] and (3) Objections to the Report and Recommendation from both Defendant SIH and Plaintiff, Marion Healthcare, LLC ("MHC") (*See* Docs. 405, 425, 426, 429, and 448).

---

[1] The Court found that the Report and Recommendation contained certain information that qualified as confidential proprietary information or trade secrets under Seventh Circuit precedent (*See* Doc. 418); *see also Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325 (7th Cir. 1986). The record contains both a sealed version (Doc. 400) and a public redacted version (Doc. 420). Throughout the ensuing Order, in the interest of brevity, the Court will simply cite to the public redacted version of this document rather than both, each time.

For the reasons set forth below, Special Master Williams's Report and Recommendation on the Motion to Exclude the Testimony of John Bowblis is **ADOPTED in part** and the Court **DECLINES TO ADOPT it in part**. Specifically, the Court **ADOPTS** the Special Master's recommendations (1) that the Court exclude Dr. Bowblis's damages opinions because he relies on speculative assumptions in calculating damages he attributes to lost cases with HealthLink and Health Alliance ("HA"); and (2) that the Court exclude Dr. Bowblis's damages opinions because they contravene MHC's theory of liability and are not tied to the facts of the case. Given the Court's ruling on summary judgment and Dr. Bowblis's two damages opinions that must be excluded as outlined herein, the undersigned **DECLINES TO ADOPT** the remaining portions of the Report and Recommendation (pp. 1-12) because they are MOOT and unnecessary for the Court's analysis. MHC's objections (Docs. 425 (sealed) and 447 (public redacted); 427 (sealed) and 448 (public redacted))[2] are therefore **OVERRULED IN PART and MOOT IN PART** (they are moot insofar as they relate to pp. 1-12) and SIH's objections (Docs. 405, 426, 429) are **MOOT**. SIH's Motion *In Limine* to Exclude the Expert Testimony and Report of John Bowblis (Doc. 311 (public redacted); Doc. 312 (sealed exhibits))[3] is **GRANTED** consistent with this Memorandum and Order.

---

[2] On February 4, 2020, the Court provided a detailed analysis on the record regarding what information in the parties motions and exhibits qualified as confidential or proprietary information or trade secrets and could be appropriately redacted under Seventh Circuit precedent (Doc. 435); (*see also* Doc. 437 (transcript of Feb. 4, 2020 hearing)); *see also Learning Curve Toys, Inc.*, 342 F.3d 714; *Ball Mem'l Hosp., Inc.*, 784 F.2d 1325. The Court directed the parties to file final public redacted versions of its pleadings and exhibits in accord with the Court's rulings (Docs. 435, 437 (transcript), and 442). Throughout the ensuing Order, the Court will cite to the public redacted version of the pleadings and briefs.

[3] *Supra* notes 2.

## Procedural Background

In 2017, MHC and SIH deposed MHC's damages and liability expert, Dr. John R. Bowblis, a professor and academic economist at Miami University in Oxford, Ohio (Doc. 440-1). Because of the nature of this case, the parties have engaged in recurring negotiations about redacting portions of the record that qualify as trade secrets or qualified proprietary information, as they did throughout the second half of 2017 regarding Dr. Bowblis's testimony (Docs. 295, 296). On October 13, 2017, SIH filed a Motion *in Limine* to Exclude Dr. Bowblis's Testimony, arguing that his testimony "fail[ed] to meet the relevance and reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)" as his testimony was not tied to the issues of the case and does not link SIH's practices to MHC's injury (Doc. 311 at 2). MHC filed its Response to the Motion *in Limine* on November 30, 2017, arguing Dr. Bowblis's testimony was, in fact, tied to MHC's theory of liability. Furthermore, MHC argued that SIH's Motion *in Limine* was "unnecessary" and "nonsensical," as this case was set to be tried in front of a judge and motions of this sort are inappropriate for cases set for bench trials (*See* Doc. 327 (public redacted) at 2; Doc. 328 (sealed)).[4] Defendants replied to MHC's Response to the Motion *in Limine* on December 22, 2017 (Doc. 342 (public redacted); Doc. 343 (sealed)).[5] Soon after, the Court entertained oral arguments

---

[4] *Supra* note 2.

[5] *Id.*

in a hearing on the Motion *in Limine* and the subsequent briefing, which took place on April 10, 2018 (the judge who presided over the arguments was Magistrate Judge Stephen Williams – now Special Master Williams following his departure from the bench).

Special Master Williams was appointed on February 19, 2019 (Doc. 391) and was tasked with reviewing the evidence in the record to prepare a Report and Recommendation on the Motion for Summary Judgment, Dr. Bowblis's testimony, and the testimony of two of MHC's other experts, John Meindl and Dennis Knobloch. On September 23, 2019, Special Master Williams issued his Report and Recommendation on the Testimony of Dr. Bowblis (filed under seal temporarily pending briefing from the parties) (Doc. 400). On October 3, 2019, SIH filed its Objections to the Report and Recommendation on the Testimony of John Bowblis (Doc. 405) and the Court held a telephonic motion hearing on October 31, 2019 to discuss sealing and unsealing portions of the Report and Recommendation. The redacted Report and Recommendation on Dr. Bowblis's testimony was filed on November 14, 2019 (Doc. 420). Both parties had the opportunity to formally object to the Report and Recommendation (*See* Docs. 447 and 426). Both parties also filed responses to each other's objections on December 19, 2019 (Docs. 448 and 429).

### *Daubert* Motions

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (holding that the *Daubert* analysis applies to *all* expert testimony under Rule 702, not just scientific testimony).

Under Rule 702 and *Daubert*, district courts have a "gatekeeping" obligation to ensure that expert testimony is both relevant and reliable. *Kumho Tire,* 26 U.S. at 147. This requires the district court to ensure the following before admitting expert testimony:

> First, the expert must be qualified by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case.

*Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citing FED. R. EVID. 702 and *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-19 (7th Cir. 2000)). The party offering the expert testimony bears the burden of establishing that it meets these admissibility requirements. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Here, neither party challenges the expert's qualifications or the relevance of the expert's opinions in their respective motions and objections (*see* Docs. 311, 327, 342). Instead, both parties focus on the reliability of the expert's opinions. "A district court enjoys broad latitude both in deciding how to determine reliability and in making the ultimate reliability determination." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) (quoting *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000)). In assessing the reliability of expert testimony, courts can consider the non-exhaustive list of guideposts set forth in *Daubert*: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the relevant scientific, technical, or professional

community. *Am. Honda Motor Co. v. Allen,* 600 F.3d 813, 817 (7th Cir. 2010) (citing *Daubert*, 509 U.S. at 593-94). The 2000 Advisory Committee's Notes to Rule 702 also lists additional factors for gauging expert reliability, including whether: (1) the testimony relates to matters growing naturally and directly out of research that was conducted independently from the instant litigation; (2) the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) the expert has adequately accounted for obvious alternative explanations; (4) the expert is being as careful as she would be in her regular professional work outside of paid litigation consulting; and (5) whether the expert's field of expertise is known to reach reliable results for the type of opinion the expert is giving. *Am. Honda*, 600 F.3d at 817 (quoting FED. R. EVID. 702, Advisory Committee's Notes (2000 Amend.)).

These factors do not, however, constitute a "definitive checklist or test." *Daubert*, 509 U.S. at 593. Rather, "[t]he inquiry envisioned by Rule 702 is…a flexible one," *id.* at 594, and "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150 (internal quotation marks omitted). The focus, at this stage, should be on examining the principles and methodology utilized by the expert and not the conclusions the expert generates. *Daubert,* 509 U.S. at 595; *see also Ford Motor Co.,* 215 F.3d at 718–719 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact."); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 165 (S.D. Ind. 2009). Similarly, if the nature of the parties' disputes and objections are, essentially, factual, that dispute is outside the parameters of *Daubert. See In Re Ready-*

*Mixed Concrete,* 261 F.R.D. 154 at 166; *see also Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 506 (7th Cir. 2003).

### Discussion

The Court conducts a *de novo* review of the Special Master's Report and Recommendation and record, which requires the court to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the [special master's] conclusion." *Harper*, 824 F. Supp. at 788 (citation omitted); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court must "perform[] the gatekeeping function set out by Federal Rule 702 and *Daubert*," reviewing the record, briefs, and the Special Master's Report and Recommendation to analyze the foundation of Dr. Bowblis's testimony, not the outcomes, to determine if it meets the criteria set out in *Daubert* for admissibility. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989).

Dr. Bowblis has offered opinions both on the issue of liability and damages. As outlined in the Court's Memorandum and Order on Summary Judgment (Doc. 450), the Court concludes today that summary judgment must be granted in favor of SIH on the issues of antitrust injury and causation. The Court did not address the issue of whether MHC advanced sound antitrust theories because whether or not the theory is sound still does not prevent the entry of summary judgment if there is no antitrust injury or

causation. A similar approach is necessary here.[6] The Court is adopting the Special Master's recommendation that it (1) exclude Dr. Bowblis's damages opinions related to lost outpatient surgeries tied to HealthLink at any time, or to lost HA patients after its exclusivity provision expired with SIH in 2010 (Doc. 420 at 14); and (2) that it exclude all of Dr. Bowblis's damages opinions and testimony as they rest on an unreliable methodology that is not tied to the facts of the case (*Id.* at 16). The Court need not address Dr. Bowblis's liability opinions because they are moot by the Court's adoption of the aforementioned recommendations. Accordingly, the Court's analysis here will simply focus on these two sections of the Report and Recommendation that pertain to Dr. Bowblis's damages opinions.[7]

## A. Dr. Bowblis Relies on Speculative Assumptions in Calculating Damages He Attributes to Lost Cases with HealthLink and HA

In this section of his Report and Recommendation, Special Master Williams examines whether the evidence supports Dr. Bowblis's damages opinions calculated from MHC's alleged loss of contracts with HA and HealthLink, two payers, as a result of

---

[6] Today, the Court is entering three Orders (including this one) on three separate Reports and Recommendations prepared by the Special Master on certain motions filed by SIH. Each of SIH's motions and the accompanying Report and Recommendation warrants its own separate Order (*See* Docs. 450 (Memorandum and Order on Summary Judgment); 452 (Memorandum and Order on the Motion in Limine as to John Meindl and Dennis Knobloch)). Nevertheless, the analysis of the issues contained in both this Order and the other two entered by the Court today is intertwined and all of the Orders must be viewed in tandem.

[7] Dr. Bowblis's opinion on "Yardstick Methodology" is a damages opinion (Doc. 420 at 11-12), but because this is not the basis for the Court's ultimate decision to exclude Dr. Bowblis's damages opinions, the Court need not address this issue. In other words, because the Court has determined there are two aspects for which Dr. Bowblis's damages opinions must be excluded, the Court need not reach the issues surrounding the liability opinions or the yardstick methodology.

SIH's exclusive contracts with these payers from approximately 2010 to 2012. Dr. Bowblis, who was proffered as MHC's damages expert,[8] testified that MHC suffered damages as a result of an implied or "constructive" exclusivity agreement between SIH and HA that continued beyond the period of exclusive dealing, which concluded in 2010 (Doc. 420 at 12-13). In addition, Dr. Bowblis testified that MHC suffered damages as a result of SIH's exclusive contracts with HealthLink that were ongoing throughout this time period (*Id.* at 13).

First, Special Master Williams examines the evidence in the record that describes the relationship between HA and SIH, including the years when the two had exclusive contracts with one another, and whether these exclusive contracts had any impact on MHC's ability to contract with HA. This analysis is crucial to determine whether MHC suffered damages. Special Master Williams correctly highlights that Dr. Bowblis provided testimony about the relationship between HA and MHC on "information and belief" (*Id.*). In other words, his opinions are not predicated on the facts in the record. Accordingly, the Special Master concluded there is "absolutely no evidence concerning the content of the negotiations between HA and SIH over the exclusivity provision in 2010 and why [the exclusivity provision] was eliminated." (*Id.*).

Similarly, the evidence about MHC and HA's contract negotiations from 2011 is lacking. The only evidence related to their negotiations is a comment from HA to MHC

---

[8] MHC argues that both John Meindl and Dennis Knobloch were not retained to provide testimony as to liability (Doc. 326 at 6-7). Dr. Bowblis is plaintiff's retained expert as to causation and "will provide the link between Plaintiff's injury and the unlawful conduct of Defendant." (Doc. 326 at 6).

that the "existing network of providers met the needs of the membership" (*Id.*). After 2011, there is no additional evidence in the record of MHC's attempts to negotiate with HA or what those attempts entailed (Docs. 420 at 13; 440-5, pp. 94-95). There is simply no evidence to demonstrate that SIH's exclusive contracts with HA interfered with MHC's relationship with HA. Without evidence to support *why* MHC and HA did not contract together after 2010, Special Master Williams properly found that Dr. Bowblis's damages calculations relating to MHC's alleged loss of contracts with HA from 2010 were not based in facts or data present in the record (Doc. 420 at 13).

Special Master Williams also properly found that there is no evidence in the record to support MHC's claim that it lost surgical cases with HealthLink because of SIH's exclusive contracts with HealthLink (*Id.* at 13-14). Dr. Bowblis claimed MHC lost surgical cases with HealthLink based on his analysis of surgery schedules. Dr. Bowblis claims that surgeons prefer to schedule surgeries back-to-back, which implies they schedule surgeries at the same surgical center or hospital. If they are unable to do so, Dr. Bowblis testified that physicians will incur increased costs as they move between multiple surgical centers instead of staying at one. Dr. Bowblis concludes that physicians gravitate towards surgical centers where most insured patients are accepted and schedule back-to-back surgeries at these centers (*e.g.*, SIH) as opposed to scheduling surgeries at MHC (*Id.* at 14).

Special Master Williams found that even if the assertion that surgeons prefer back-to-back scheduled surgeries is true, Dr. Bowblis could not tie this claim to MHC's alleged injury or show that a physician's preference for scheduling surgeries in one location

(presumably not MHC) was tied to SIH's exclusive contracts. The link of evidence from this type of scheduling to MHC's alleged injury is not in the record. In fact, during the time period in question, MHC was able to contract with HealthLink and the volume of HealthLink cases at MHC *increased* (Docs. 420 at 14; 313-32; 314-2 at 20).

As a result of examining the evidence in the record, Special Master Williams recommended that the Court exclude Dr. Bowblis's damages opinions related to lost outpatient surgery tied to HealthLink at any time, and to lost HA patients after its exclusivity provision expired with SIH in 2010. The Special Master reasoned that there is no support in the record to allow the Court to infer that these were caused by or related to SIH's exclusive contracts with payers.

Although SIH provided comment on and objections to the Special Master's Report and Recommendation on Dr. Bowblis's Testimony as a whole, SIH agreed with this portion of the Report. MHC, on the other hand, provided objections related to this section. MHC argues that the nature of SIH's exclusive contract with payers like HA and HealthLink is enough evidence, in and of itself, to infer illegality because when a "purchaser's exclusive arrangement [makes] no economic sense, there [is] sufficient evidence to infer coercion." (Doc. 452 at 5, citing *Cascade Health Solutions v. PeaceHealth,* 515 F.3d 883, 915 (9th Cir. 2008)). MHC argues that "there is no rational business reason why HA would opt to purchase outpatient surgical services exclusively from SIH at higher cost to it and its subscribers absent a written or *de facto* agreement to deal with SIH exclusively." (Doc. 447 at 5). Finally, MHC objects to this portion of the Report and Recommendation because it claims there is evidence that HA was "dishonest" in its claim

that it did not want to contract with MHC because it did not need another provider in the market. Therefore, MHC argues a "reasonable jury could conclude that it was being similarly dishonest from 2011 on but had wisened up after the filing of this lawsuit to the legal difficulties posed by a written exclusivity agreement." (*Id.* at 6).

Each of MHC's objections require the Court to make assumptions about the parties' intentions that are *not* supported by evidence in the record. Special Master Williams is correct. There is no evidence in the record to support Dr. Bowblis's damages conclusions that MHC was injured because of SIH's contracts with Healthlink and HA. It is important to note that the Court is incorporating, herein, the Special Master's findings of fact as outlined in the Report and Recommendation on the Motion for Summary Judgment and which the Court adopted in its Order on summary judgment (Doc. 450 at 9-11). Neither party lodged specific objections to the Special Master's findings of fact and the Court relied on them in its decision on summary judgment. In addition, the findings of fact are not "clearly incorrect" after the Court's review of the record. *See* FED. R. CIV. P. 53(f)(3); *Cook v. Niedert,* 142 F.3d 1004, 1010 (7th Cir.1998). Rather, they are careful and detailed recitation of the facts of this case and it is clear that there is simply no evidence in the record to underlie or support Dr. Bowblis's damages opinions that MHC was injured *because* of SIH's contracts with Healthlink and HA.

Moreover, the Court's decision here does not necessarily hinge on a factual debate about whether certain facts are correct or incorrect. Rather, the *Daubert* analysis at this stage is focused on whether the expert's testimony is based on *sufficient facts* and reliable principles and methods. *Lees v. Carthage Coll.*, 714 F.3d at 521-22 (citing FED. R. EVID. 702

and *Ford Motor Co.*, 215 F.3d at 717-19).

The Court reaches this conclusion here today because there is a causal break in the facts, making Dr. Bowblis's testimony purely speculative. *Daubert* addresses this very issue. When expert testimony is based on "subjective belief or unsupported speculation," that testimony is unreliable and inadmissible. *Daubert*, 509 U.S. at 590; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). To ensure that testimony is relevant, it must be based on "sufficient facts" so that it is "deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152). Since the *Daubert* standard is fluid and analyzed on a case-by-case basis, "[a]*ny* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, 3, 8 (N.D. Ill. Mar. 31, 2017) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146) (If the "'gap between the data and the opinion proffered' is connected only by the expert's say-so…it [is] insurmountable."). Here, Dr. Bowblis's damages opinions related to lost cases with both HealthLink and HA are purely speculative, not supported by the evidence in the record, and are therefore inadmissible.

## B. <u>Dr. Bowblis's Damages Opinions Contravene MHC's Theory of Liability</u>

Special Master Williams also examined Dr. Bowblis's damages model and whether it is supported by the evidence in the record.

SIH provided comment on and objections to the Special Master's Report and Recommendation on Dr. Bowblis's Testimony and explicitly briefed these issues in its Objections to the Reports and Recommendations on Summary Judgment and the Motion to Exclude the Testimony of Dr. John Bowblis (Doc. 426), agreeing with the Special Master that Dr. Bowblis's damages opinions were not tied to the claims or damages theories in the Complaint (Doc. 420 at 14-15). MHC, on the other hand, provided objections and argued the opposite—that Dr. Bowblis's damages calculations are reliable, conservative, and supported by the evidence. MHC argues that the Report and Recommendation "improperly assumes away the exclusives and the market realities of how…SIH's conduct negatively affected MHC." MHC argues that 1) the block scheduling used by surgeons and described by Dr. Bowblis meets the *Daubert* and Rule 703 threshold and is a fact unrefuted in the evidence; and 2) the Special Master incorrectly characterizes the relationship between MHC and HealthLink, particularly the impact of MHC's ability to contract with HealthLink, because he did not take into account how SIH's exclusive contracts with HealthLink and other payers in the region impacted the market. MHC argues SIH's exclusive contracts forced MHC in a weakened negotiating position (Doc. 447 at 7-8). Finally, MHC argues that Dr. Bowblis's damages calculations are reliable because "we cannot know what in-network rates MHC would have received but for the exclusives because the defendant's conduct prevented MHC from obtaining network agreements." Essentially, an estimation was the only possible way of determining damages, according to MHC (Doc. 447 at 8).

MHC's objections seem to hinge on its interpretation of the facts, but the Court's role here is not to settle factual disagreements.[9] The focus, at this stage, is to examine the principles and methodology utilized by the expert and not the conclusions the expert generates. *Daubert,* 509 U.S. at 595; *see also Ford Motor Co.,* 215 F.3d at 718–719 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact."); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 165. If the nature of the parties' disputes and objections are, essentially, factual, that dispute is outside the parameters of the *Daubert* analysis. *Id. See also Deputy*, 345 F.3d at 506.

MHC's objections are without support from the record. In his testimony, Dr. Bowblis outlined that the appropriate measure of damages to prove "but for causation" is based on "rates that were either comparable or slightly potentially lower than rates that other ambulatory surgery centers were receiving of those types of procedures." (Doc. 420 at 15. *See also* Docs. 313-7; 440-1). Instead of following his own advice, Dr. Bowblis based his damages calculation on *out-of-network* payments received by MHC (Docs. 420 at 15; 313-7 at 149-150). He justified going against his own advice on a series of assumptions that include 1) if MHC had the opportunity, it would have contracted to be in-network with BCBS and HA, and 2) using MHC's actual out-of-network payments is a conservative estimate of damages because he assumes the rates for out-of-network

---

[9] As the Court previously noted, neither party lodged specific objections to the Special Master's findings of fact. And even if they did, the Court has concluded that the facts are a thorough breakdown of the relevant facts. The Special Master did a commendable job synthesizing and distilling down the relevant facts in this long running and complex case.

payments to be less than in-network payments (Doc. 420 at 15). However, as the Special Master correctly notes these assumptions are *not* based on evidence in the record and are purely speculative.

Special Master Williams also found that Dr. Bowblis not only used a model for damages he himself said was *not* the standard model, but he also compounded the error in his calculations by taking an average of the out-of-network rates paid to MHC between 2005 to 2015. Included in this average are some years when MHC was not allegedly damaged and years MHC decided to not enter into contracts with payers as a business strategy, which break the causal link between SIH's exclusive contracts and MHC's alleged injury (Doc. 420 at 16).

In addition, Dr. Bowblis argued that using out-of-network rates paid to MHC was an appropriate second choice to determine damages because in-network rates received by places like MHC are "from my understanding…generally higher than [the rates] they are currently getting or receiving" (Docs. 420 at 15; 313-7 at 149-150). This assumption is flawed in a variety of ways that Special Master Williams correctly outlines in the Report and Recommendation. The most alarming flaw is that while there are times when out-of-network rates are lower than in-network rates, there is nothing in the record to determine when this is true and when it is not (Doc. 420 at 15; Doc. 313-13 at 136) ("Sometimes…the reimbursement may actually be higher than in-network.")). Ultimately, by not following his own advice as to the standard measure of damages, as well as calculating damages with these various intervening factors, Dr. Bowblis's damages calculations could be

grossly inflated, are unreliable, and should be excluded on the basis of an unreliable methodology.

The Court's *Daubert* admissibility analysis consists of a non-exhaustive list of guideposts outlined previously; however, central to the Court's analysis is whether the expert's methodology is sound and "if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."[10] *In re Fluidmaster*, 2017 WL 1196990 at 9, citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). In addition, the Court can consider "[w]hether the expert has adequately accounted for obvious alternative explanations." *Schultz v. Akzo Nobel Paints, LLC,* 721 F. 3d 426, 434 (7th Cir. 2013). Here, Dr. Bowblis's damages theory is unhinged from the facts and theory of the case. His damages analysis is likely grossly inflated because it is based on a series of his own assumptions. In addition, he does not employ a standardized and reliable methodology for determining damages. While the *Daubert* analysis does not require perfection, it does demand the expert's testimony is reliable. *In re Fluidmaster*, 2017 WL 1196990 at 19. For the reasons set out here, the Court cannot conclude that Dr. Bowblis's damages analysis is reliable.[11]

---

[10] Special Master Williams addressed MHC's objection that this case would not be tried in front of a jury, so the Court could deny Defendant's Motion to Exclude without addressing the specifics of the parties' objections (*See* Doc. 420 at 2); *In re Salem,* 465 F.3d 767, 776-77 (7th Cir. 2006). Special Master Williams correctly highlighted the relationship between this Motion and the Motion for Summary Judgment, and the need for these two points in the Report and Recommendation to be decided on the merits as they support one another and determine the issues of causation and injury in the Memorandum and Order on the Motion for Summary Judgment (Doc. 450).

[11] The Court has carefully considered all of the arguments raised by the parties and all of the objections to the Report and Recommendation. Again here, this was no easy task. The Court was careful to give fresh consideration to all of the issues and conduct a detailed analysis of the issues. Nevertheless, if there is any

## Conclusion

Special Master Williams's Report and Recommendation on the Motion to Exclude the Testimony of John Bowblis is **ADOPTED in part** and the Court **DECLINES TO ADOPT it in part**. Specifically, the Court **ADOPTS** the Special Master's recommendations (1) that the Court exclude Dr. Bowblis's damages opinions because he relies on speculative assumptions in calculating damages he attributes to lost cases with HealthLink and Health Alliance ("HA"); (2) that the Court exclude Dr. Bowblis's damages opinions because they contravene MHC's theory of liability and are not tied to the facts of the case. Given the Court's ruling on summary judgment and Dr. Bowblis's two damages opinions that must be excluded, the undersigned **DECLINES TO ADOPT** the remaining portions of the Report and Recommendation (pp. 1-12) because they are **MOOT** and unnecessary for the Court's analysis. MHC's objections (Docs. 447; 448) are therefore **OVERRULED IN PART and MOOT IN PART** (they are moot insofar as they relate to pp. 1-12) and SIH's objections (Doc. 405; 426; 429) are **MOOT**. SIH's Motion *In Limine* to Exclude the Expert Testimony and Report of John Bowblis (Doc. 311) is **GRANTED** consistent with this Memorandum and Order.

IT IS SO ORDERED.

DATED: March 31, 2020

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

argument or objection raised by MHC that is not specifically addressed by this Memorandum and Order, the Court certainly considered it and has rejected it.